# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DION BERRYMAN, et al.,         :

        Plaintiffs,        :      Case No. 3:05CV169

  vs.                  :      District Judge Walter Herbert Rice
                            Magistrate Judge Sharon L. Ovington

                         :

SUPERVALU HOLDINGS, INC., *et al*.,         :

        Defendants.      :

---

# REPORT AND RECOMMENDATIONS

---

## I.     INTRODUCTION

Plaintiffs are eleven African-American male employees of Defendant SuperValu Holdings, Inc. ["SuperValu"] at its Ohio Valley Distribution Center.  Plaintiffs brought this action under Title VII, 42 U.S.C. §2000e, *et seq.*, and other federal and state laws, alleging that Defendant Supervalu and its supervisory employees named as individual Defendants have subjected Plaintiff to race discrimination and other unlawful treatment in the workplace.  (Doc. #3).

This case is presently before the Court upon Plaintiffs' Motion to Compel Discovery (Doc. #36), Defendants' opposing memorandum (Doc. #41), the parties'

arguments presented at a hearing before the Court on September 12, 2008 (*see* Doc. #43); the parties' respective hearing memoranda (Docs. ##42, 44), and the record as a whole.

## II. PROCEDURAL HISTORY/THE PARTIES' CLAIMS

Plaintiffs initiated this case by a complaint filed in this Court on May 15, 2005. (Doc. #1). In an amended complaint styled as a class action, Plaintiffs set forth various claims for race discrimination, hostile work environment and retaliation under Title VII, 42 U.S.C. § 1981, and Ohio Rev. Code §4112, *et al.* (Doc. #3). Plaintiffs later stipulated to dismissal of the class action claims and allegations. (Doc. #23).

By Order dated March 31, 2008, United States District Judge Walter H. Rice granted in part Defendants' motion to dismiss portions of Plaintiffs' complaint, holding that Plaintiffs could not sustain their Title VII claims for race-based harassment, for any retaliation preceding the filing of their charge with the Equal Employment Opportunity Commission ["EEOC"], or against the individual Defendants. (Doc. #31).

On July 21, 2008, Plaintiffs' filed their first motion to compel discovery. (Doc. #36). By Order dated July 24, 2008, Judge Rice referred the case to the undersigned for a Report and Recommendations as to that motion. (Doc. #37).

Plaintiffs claim that Defendants have provided incomplete and inadequate responses to both Plaintiffs' first request for production of documents (served on August 13, 2007 and consisting of 30 separate document requests) (*see* Doc. #36, pp. 15-25), and Plaintiffs' interrogatories and second request for production of documents (served on June 18, 2008 and consisting of one interrogatory with seven sub-parts and one document

request).  (*See id.*, pp. 11-14).  Conceding that on September 12, 2007, Defendants produced "several thousand documents" in response to Plaintiffs' first set of document requests, Plaintiffs nonetheless contend that "not all documents requested were provided." (*Id.*, p. 2).  They then detail the additional documents that they believe should be produced in response to their Request Nos. 4, 6, 7, 8, 10, 11, 14, 17, 18, 19, 21, 24, 25, 26 and 28.  (*Id.*, pp. 5-7).

As to the second set of requests,[1] Plaintiffs contend that Defendants' objections and claim of privilege are not justified as to the interrogatory and document request, as the requested information purportedly would "have been kept in the ordinary course of business and not unduly burdensome for the Defendants to produce," and "would directly provide substantial relevant evidence on the issue of disparate treatment in the assignment of overtime to black employees," the crux of Plaintiff's case.  (*Id.*, p. 4).  They also argue that Defendants have waived any claim of privilege by failing to provide a privilege log. (*See id.*, p. 2).

In opposing Plaintiffs' motion to compel filed "just one day before the discovery deadline" (*see* Doc. #32, p. 2, setting an extended discovery cutoff date of July 22, 2008), Defendants urge that Plaintiffs sought the Court's intervention "without a good faith attempt to discuss the requested discovery."  (Doc. #41, p. 1).  They state that in timely

---

[1]The sole document request accompanying the single interrogatory in Plaintiffs' second set of discovery requests in essence asks only for all documents used in answering the preceding interrogatory. (*See* Doc. #41, Exh. F, p. 4).  As such, that document request is encompassed adequately by the Court's discussion, *infra*, of the appropriate response to Plaintiffs' interrogatory.

responding to Plaintiffs' first set of discovery requests, they "raised several objections but nonetheless produced over 13,200 documents and offered to further respond" to narrowed requests with a protective order. (*Id.*, p. 2). They purport to have made a similar offer in responding to Plaintiffs' second set of requests. (*Id.*, p. 3). Urging that Plaintiffs have made no good faith effort to resolve this dispute informally; detailing why their responses already given to Plaintiffs' requests should be deemed sufficient (*see id*, pp. 9-20); and arguing that they have not waived privilege (*id.*, p. 20), Defendants ask that Plaintiffs' motion to compel be denied, and that Defendants be awarded attorneys' fees and costs. (*Id.*).

The matter was scheduled for oral argument and heard on September 12, 2008. (*See* Doc. #43). In a memorandum prepared for that hearing, Plaintiffs urge that the requested discovery materials are needed "in order to conduct a disparate impact analysis with regard to the allocation of overtime hours." (Doc. #42, p.1). In general, they suggest that Defendants have "inundat[ed] Plaintiffs with paper" (*id.*, p. 2) in an effort to avoid providing the more specific information Plaintiffs seek. Defendants' hearing memorandum, conversely, suggests that "many of the documents that Plaintiffs seek to 'compel' have already been produced" (Doc. #44, p. 1), and that Plaintiffs' last minute and overbroad discovery requests are motivated by a strategic change to a "disparate impact" theory of recovery not pled in their complaint.

### III. DISCUSSION

#### a. <u>Applicable Law</u>

In order to be discoverable in federal civil cases, information "need not be admissible at the trial" – rather, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," so long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Under Fed. R. Civ. P. 33, which governs interrogatories to parties, "a party may serve on any other party no more than 25 written interrogatories," which "may relate to any matter that may be inquired into under Rule 26(b)." Under Fed. R. Civ. P. 34 , parties are authorized to request that any other party "produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated documents." Fed. R. Civ. P. 34(a)(1)(A).

In accordance with the discovery rules, a court "must limit the frequency or extent of discovery otherwise allowed" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added). As to privileged information, the rules specify as follows:

> *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (I)     expressly make the claim; and
> (ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

Regarding failures to comply with discovery requests, the applicable rules provide

as follows:

> **(1)  *In General***.  On notice to parties and all affected persons,
> a party may move for an order compelling disclosure or
> discovery.  The motion must include a certification that the
> movant has in good faith conferred or attempted to confer
> with the person or party failing to make disclosure or
> discovery in an effort to obtain it without court action.
>
> * * *
>
> **(3)  *Specific Motions***.
> * * *
> (B)     *To Compel a Discovery Response.*  A party
>          seeking discovery may move for an order
>          compelling an answer, designation, production
>          or inspection.  This motion may be made if:
> * * *
> (iii)    a party fails to answer an interrogatory
>          submitted under Rule 33; or
> (iv)     a party fails to respond that inspection will be
>          permitted – or fails to permit inspection – as
>          requested under Rule 34.

Fed. R. Civ. P. 37(a).  Further elaborating on Rule 37(a)(1)'s requirements, S.D. Ohio

Civ. R. 37.1 states that

> [o]bjections, motions, applications, and requests relating to
> discovery shall not be filed in this Court, under any provision
> in Fed. R. Civ. P. 26 or 37[,] unless counsel have first
> exhausted among themselves all extrajudicial means for
> resolving the differences.

**b.**     <u>**Analysis**</u>

i.      *Discovery re Other SuperValue Employee Information*

Notwithstanding the descriptions of a wide range of documents set forth in Plaintiffs' original discovery requests (*see* Doc. #41, Exh. A) and in their motion to compel (*see* Doc. #36, pp. 3-7), Plaintiffs' latest memorandum in essence acknowledges that the scope of information most critical to their case actually is captured in their first set of interrogatories, a request limited to:

> the name; race; date of hire; date of termination; dates of promotions and position promoted to; regular hours worked each year; overtime hours worked each year[;] and relative seniority of all union employees employed by Defendant at the facility in question since 1974.

(Doc. #42, pp. 1-2; *see also* Doc. #41, Exh. F).  Indeed, Plaintiffs concede that if they can obtain that information "for the period since 1996," they "should be able to establish the disparate impact."  (*Id.*, p. 2).  In light of this implicit voluntary reduction in the scope of the discovery Plaintiffs seek, the Court will limit its analysis of Plaintiffs' discovery requests accordingly, restricted primarily to this issue.

While this apparent narrowing of the reach of Plaintiffs' requests addresses some of the concerns underlying Defendants' objections, the position taken in Plaintiffs' hearing memorandum also evokes a new concern.  Noting that the race discrimination allegations of Plaintiffs' complaint refer only to "discriminatory treatment of the Plaintiffs" (*see* Doc. #3, ¶¶ 39-48), Defendants urge that Plaintiffs' latest "disparate impact" argument introduces "a new theory of liability that was never pled in their Amended Complaint," and as to which Plaintiffs therefore "should not be permitted to conduct discovery."  (Doc. #44, pp. 2-3).

Defendants' argument to that effect is supported by applicable law. Pursuant to Rule 26(b)(1), discovery focuses "on the actual claims and defenses at issue in the case." *Hill v. Motel 6*, 205 F.R.D. 490, 492 (S.D. Ohio 2001) (Sherman, M.J.). "When, as in the instant case, a plaintiff has raised only a discriminatory-treatment claim, Rule 26(b)(1) . . . requires the parties and the Court to carefully distinguish this claim from discriminatory-impact claims," because "the evidence relevant to proving each claim is quite different." *Id.* at 493. "[N]o reasonable inference of discriminatory treatment can be based solely on the existence of a policy or practice that falls more harshly on [protected] employees," so discriminatory impact evidence is <u>not</u> relevant to a discriminatory treatment claim. *Id.* Indeed, reliance on a discriminatory impact analysis to prove a discriminatory treatment claim may require that judgment for a plaintiff be vacated. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-55 (2003).

As of the time that they filed their motion to compel discovery, even Plaintiffs themselves apparently did not consider their case to be about disparate impact. (*See, e.g.,* Doc. #36, p. 5) ("[T]his is a discrimination and disparate treatment case . . ."). The assertion in their discovery hearing motion that they seek the requested information "in order to conduct a disparate impact analysis" (*see* Doc. 42, p. 1), then, represents a dramatic shift in Plaintiffs' theory of recovery, and one not discernible from the face of their complaint. (*See* Doc. #3). Accordingly, as Defendants correctly surmise, that theory does not pose a proper basis for Plaintiffs' discovery requests. *See Motel 6*, 205 F.R.D. at 493-95. Plaintiffs' discovery requests must be restricted to only those

nonprivileged matters relevant to their discriminatory treatment and other viable claims. *See* Fed. R. Civ. P. 26(b)(1).

Nevertheless, Plaintiffs still are entitled to discovery regarding many of the materials encompassed by their original requests. Even following Judge Rice's partial dismissal order (*see* Doc. #31), Plaintiffs' remaining claims include allegations that they were given less favorable job assignments (*see* Doc. #3, ¶¶ 32, 50); subjected to more drug testing (*id.*, ¶ 33); given shorter breaks (*id.,* ¶ 34); more stringently disciplined (*id.*, ¶ 37); and denied promotions, training and overtime (*id.*, ¶¶ 35-36, 38), as compared to white employees. Such allegations, if proven, might support either discriminatory treatment or retaliation claims. Unquestionably, most of the information requested in Plaintiffs' single interrogatory – *i.e.*, the name; race; date of hire; date of termination; dates of promotions and positions promoted to; regular and overtime hours worked each year; and relative seniority of Defendants' similarly-situated union employees – may be relevant to one or more of those allegations.

Apparently realizing that such materials are potentially relevant, Defendants next choose to focus their objections on an assertion that the production of non-party personnel files "would be unduly intrusive to the privacy of" such individuals. (Doc. #44, pp. 4-5). Federal courts indeed have recognized that employers have "a valid interest in the privacy of nonparty personnel files." *See Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 365 (6th Cir. 1999). The remedy appropriate to address such privacy concerns, however, generally is a protective order, s*ee id.* ("protective orders are commonly granted . . . as a

means of protecting the privacy interests of nonparties while yet serving the needs of litigation"), not outright refusal to comply with the discovery request. *See also Motel 6*, 205 F.R.D. at 496 (personnel files ordered produced, subject to confidentiality agreement and order); *Moody v. Honda of American Mfg., Inc.*, No. 2:05-cv-0880, 2006 WL 1785464, at *6 (S.D. Ohio June 26, 2006) (Kemp, M.J.) (records withheld from discovery to be produced "for counsel's-eyes-only inspection" or for *in camera* review by court); *Smith v. City of Chicago*, No. 04 C 2710, 2005 WL 3215572 (N.D. Ill. Oct. 31, 2005) ("a court may authorize the parties to restrict public access to properly demarcated categories of legitimately confidential information").

The responsibility for seeking such an order as a means of protecting individuals "from annoyance, embarrassment, oppression, or undue burden or expense" normally falls to the party "from whom discovery is sought." Fed. R. Civ. P. 26(c)(1); *see also* Fed. R. Civ. P. 37(a)(5)(B). Although Defendants urge that Plaintiffs "ignored" their "express offers to . . . enter a protective order" (Doc. #41, pp. 1, 3), nothing in the record indicates that Defendants ever approached Plaintiffs with proposed terms for any such protective order. Indeed, contrary to the clear implication of Defendants' opposing memorandum,[2] Defendants' written responses to the individual document requests contained in Plaintiffs' first set of discovery requests make no mention of the prospect of a protective order. (*See* Doc. #41, Exh. B, Request Nos. 4, 6-9, 11-12, 14, 18-20). Only

---

[2](*See* Doc. #41, p. 2, stating that "[i]n their responses [to Plaintiffs' initial discovery requests], Defendants . . . offered to further respond if plaintiffs narrowed and or clarified their requests and entered a protective order" (emphasis added)).

in later responses, served on July 21, 2008, as to Plaintiffs' subsequent requests, did Defendants explicitly reference "a stipulated protective order or court order" as a possible solution allowing Plaintiffs to receive the discovery information sought.  (*See* Doc. #41, Exh. G, pp. 4, 5).

Accepting *arguendo* that a mere five-day span between Plaintiffs first terming Defendants' responses "incomplete" and Plaintiffs' filing of their motion to compel (*see* Doc. #41, pp. 2-3) limited Defendants' opportunity to resolve this issue, the burden for securing an appropriate protective order nonetheless remained Defendants'.  *See* Fed. R. Civ. P. 26(c)(1).  There is no indication in the record  that Defendants drafted any proposed protective order for Plaintiffs' consideration in the seven-plus weeks between the filing of Plaintiffs' motion to compel and this Court's hearing thereon, or in the weeks since.  Neither have Defendants filed any motion for protective order with this Court at any time.  In order for Defendants to avert discovery of non-party records properly requested by Plaintiffs, however, it was incumbent upon Defendants to diligently pursue a protective order designed to minimize the supposedly intrusive effect of Plaintiffs' requests.  Defendants' failure to do so requires this Court independently to "balance the interests of the parties in obtaining relevant discovery against the privacy interests of individual non-parties" at this time.  *See Poseidon Oil Pipeline Co. v. Transocean Sedco Forex, Inc.*, No. Civ. A. 00-760, 2002 WL 31098543, at *1 (E.D. La. Sept. 18, 2002).

Having already concluded, *supra*, that the information requested in Plaintiffs' interrogatory (Doc. #41, Exh. F) may be relevant to Plaintiffs' disparate treatment and

retaliation claims, the Court further determines that Plaintiffs' interest in obtaining such information is significant.  In arguing that Plaintiffs should not be given access to non-party information, Defendants urge that during Plaintiffs' depositions, the individual Plaintiffs "were often unable to identify any white employee allegedly treated more favorably, the alleged nature of their more favorable treatment, or the supervisor allegedly involved in the employment decision."  (Doc. #44, p. 4).  Ironically, Plaintiffs' inability to do so merely underscores their need for information in Defendants' sole possession.  Personnel files maintained by Defendants presumably will include details regarding on what dates employees were considered for or received promotions, their relative seniority, the identity of their supervisors, etc.  Those very details, to which Plaintiffs could not be reasonably expected to have access, are the facts critical to Plaintiffs' claims.

While non-party employees do have a legitimate interest in the privacy of their personnel records, the latest, narrowed version of Plaintiffs' requests (*see* Doc. #42) does not seek wholesale access to any employee's personnel file.  Rather, again, Plaintiffs now seek only "the name; race; date of hire; date of termination; dates of promotions and position promoted to; regular hours worked each year; overtime hours worked each year[;] and relative seniority of all union employees employed by Defendant at the facility in question since 1974."  (*Id.*, pp. 1-2).  The Court nonetheless agrees with Defendants that the request remains overly broad in some respects.  For example, discovery should be permitted only as to employees who were members of the same collective bargaining unit or units as Plaintiffs, and whose employment thus was subject to the terms of the same

12

collective bargaining agreement(s), as well as to employees who at some time shared a supervisor and/or position in common with at least one Plaintiff. (*See* Doc. #44, p. 6, n.4). *See Motel 6*, 205 F.R.D. at 495-97.

Additionally, Defendants persuasively argue that Plaintiffs' claims are subject to "various statutes of limitation, the earliest of which dates back to May 1999." (Doc. #44, p. 2). Having previously determined that Plaintiffs are not entitled to discovery in order to conduct a disparate impact analysis, the Court determines that Plaintiffs are limited to discovery regarding instances of alleged disparate treatment which fell within the applicable limitations periods, and thus are actionable. Accordingly, Plaintiffs are entitled to the requested information only from May 1999 forward.

Finally, beyond their objections to Plaintiffs' requests on the basis of intrusiveness or overbreadth, Defendants also object to Plaintiffs' interrogatory as "unduly burdensome." (Doc. #41, Exh. G, p. 3). In essence, the interrogatory asks that Defendants glean all relevant personnel files in order to cull out the specific information that Plaintiffs seek, and provide that information in concise form as an interrogatory answer. Plaintiffs suggest that Defendants' mere production of documents containing the information sought would be insufficient, as "[i]t is significantly less complicated for Defendant [SuperValu] to review its records and locate the pieces of information at issue than for Plaintiffs to do so, due to Defendants' familiarity with the location, layout and contents of these documents." (Doc. #42, p. 4). Defendants, conversely, aver that "although Defendants may keep some information in the regular course of business, the

multiple inquiries would require Defendants to pull thousands of different files to compile the requested information."  (Doc. #41, p. 19).  They also claim already to have provided documents containing the requested information.  (*Id.*, p. 20; Exh. G, pp. 4-5).

Anticipating just such situations, Fed. R. Civ. P. 33(d) specifically provides that "if the burden of deriving or ascertaining the answer [to a discovery request] will be substantially the same for either party," a responding party need not conduct a labor intensive review of all documents itself, but may answer by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," and by "giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."  Plaintiffs offer no support for their blanket assertion that the task of distilling the information they seek would be less onerous for Defendants than for Plaintiffs.  (*See* Doc. #42, p. 4).  Given the nature of the materials sought, the Court is inclined to accept Defendants' contrary assertion that the task of compiling such information for Plaintiffs would require <u>whomever</u> were to undertake the assignment "to pull thousands of different files" (*see* Doc. #41, p. 19), irrespective of any presumed familiarity with Defendants' record-keeping system.

Nevertheless, Defendants have not complied with Rule 33(d)'s dictate that Defendants "specify[ ] the records that must be reviewed, in sufficient detail to enable [Plaintiffs] to locate and identify them as readily as [Defendants] could."  If Defendants continue to maintain that all information responsive to Plaintiffs' requests, to the extent

deemed discoverable herein, may be derived from documents already produced to Plaintiffs, Defendants <u>must</u> provide Plaintiffs, in writing, with Defendants' best available intelligence regarding the likely location of such information among the documents produced, in accordance with Fed. R. Civ. P. 33(d)(1). If Plaintiffs' thorough review of the materials already produced fails to uncover all such information, despite any guidance provided by Defendants, Defendants then must make available to Plaintiffs any and all additional documents necessary to allow Plaintiffs to discern such additional information, in accordance with Fed. R. Civ. P. 33(d)(2).

In light of the extended period of time during which Plaintiffs' discovery requests have been pending, the lapsed discovery and dispositive motions deadlines, and looming trial date of December 8, 2008 (*see* Doc. #32), and in accordance with Fed. R. Civ. P. 33(b)(2), Defendants' responses also should be provided in an expedited manner.

### ii. *Discovery re Other Lawsuit*

In addition to their comprehensive response to Plaintiffs' requests for disparate impact evidence and for non-party employment information (*see* Doc. #44, pp. 1-6), Defendants' hearing memorandum also included a section devoted specifically to Plaintiffs' request for discovery regarding what apparently was a prior lawsuit against Defendant SuperValu by different plaintiffs. (*See id*., pp. 6-7). In light of Defendants' separate focus on that issue, the Court also will address such requests separately.

Requests No. 7 and No. 8 of Plaintiff's first Request for Production of Documents ask Defendants to produce any and all personal statements obtained by Defendants, as

well as any and all discovery documents available to Defendants, related to the case of

*Daniel E. Jackson Sr., et al., v. SuperValu Holdings, Inc., et al.* (*See* Doc. #41, Exh. A).

Defendants responded to the request for statements related to that case as follows:

> Defendants object to this Request to the extent that it is vague
> and ambiguous, overbroad, and unduly burdensome and to the
> extent that it requests information that is irrelevant and not
> reasonably calculated to lead to the discovery of admissible
> evidence. Subject to and without waiving these objections,
> Defendants will produce any statements pertaining to
> Plaintiffs' allegations in this case that are believed to be
> responsive to this Request. If Plaintiffs appropriately clarify
> and narrow this Request, Defendants will make a good faith
> effort to further respond.

(Doc. #41, Exh. B). As to the request for discovery documents related to that case,

Defendants further responded as follows:

> Defendants object to this Request to the extent that it is
> overbroad and unduly burdensome. Defendants further object
> to this Request to the extent that it seeks documents of public
> record that are equally available to Plaintiffs, as well as to the
> extent that its seeks documents subject to restricted access
> under the terms of a duly executed Confidentiality
> Agreement. Finally, Defendants object to this Request to the
> extent that it requests information that is irrelevant and not
> reasonably calculated to lead to the discovery of admissible
> evidence. Subject to and without waiving these objections, if
> Plaintiffs appropriately narrow this Request, Defendants will
> make a good faith effort to respond.

(*Id.*).

In their motion to compel, Plaintiffs claim that Defendants in fact produced

nothing in response to either Request No. 6 or No. 7 (Doc. #36, p. 5), despite Defendants'

allusion in response to No. 6 to producing any pertinent responsive statements. (*See* Doc.

16

#41, Exh. B., p. 6).  Beyond identifying *Jackson* as "a prior lawsuit against Defendants regarding racial discrimination," though, the only argument Plaintiffs assert in support of their motion to compel as justifying these particular requests is their contention that the requests are not vague, overly broad, or unduly burdensome.  (*Id.*).  Their subsequent hearing memorandum makes no reference to the *Jackson* requests, focusing solely on their later interrogatory.  (*See* Doc. #42).  Implicitly, then, Plaintiffs appear to have abandoned their pursuit of this particular information.

Even assuming that Plaintiffs did not intend to abandon their quest for discovery about *Jackson*, however, they have not provided this Court with sufficient information to warrant compelling Defendants to produce the requested documents.  "At least when the relevance of a discovery request has been challenged, the burden is on the requester to show the relevance of the requested information."  *Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552 n.1 (S.D. Ind. 1999) (citing *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 742 (Fed. Cir. 1987)).  Moreover, when a discovery request seeks confidential information, "the burden is on the requester to show that the requested information is sufficiently relevant and necessary to its case to outweigh the harm from disclosure of the confidential information."  *Id*. at 552 (citing *Knoll*, 176 F.3d at 365-66; 8 CHARLES ALAN WRIGHT & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2043 (2d ed. 1994)).  In the context of settlement agreements, some courts even have required the requester "to make a particularized and/or heightened showing that the settlement information sought is relevant and likely to lead to admissible evidence."  *Id.*

at 552 n.1 (citations omitted). Indeed, the Sixth Circuit has recognized a general "settlement privilege" which protects from discovery any communications related to settlement. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir.2003).

In this instance, Plaintiffs completely failed to address Defendants' contention that some of the documents Plaintiffs seek (which presumably relate to efforts to settle the *Jackson* case) are subject to the terms of a confidentiality agreement. Given the constraints placed on the use of settlement agreements by Federal Rule of Evidence 408, any settlement agreement would be inadmissible regarding liability or damages, and is of questionable relevance for any other purpose in this action. Communications regarding negotiations toward a settlement also would be privileged pursuant to *Chiles Power, supra*. Having declined to explain the purpose for which such evidence is sought or how it might "lead to the discovery of admissible evidence," *see* Fed. R. Civ. P. 26(b)(1), Plaintiffs not only have failed to establish its relevance, but also have offered nothing to allow this Court to conclude that their need for such information outweighs Defendants' interest in maintaining its confidentiality.

Plaintiffs also apparently failed to follow up on Defendants' offer to respond further if Plaintiffs would "clarify and narrow" such requests. (*See* Doc. #41, Exh. B, p. 6). Fed. R. Civ. P. 37(a)(1)'s and S.D. Ohio Civ. R. 37.1's requirements were intended to encourage just such negotiation of discovery disputes. Plaintiffs appear not to have taken full advantage of the prospect for contouring their requests in an effort to allay

Defendants' concerns about producing materials on this subject, much as they have failed to articulate any particularized need for or likely relevancy of such materials. In light of the record before the Court, Plaintiffs' motion to compel is not well taken as to the requested discovery relative to the *Jackson* case.

### iii.    *Effect of Failure to Produce Privilege Log*

In responding to Plaintiffs' discovery requests, Defendants set forth a general objection to any request for materials subject to common law or statutory privilege, including those constituting privileged attorney-client communications or attorney work product. (Doc. #41, Exh. B, p. 1; Exh. G, pp. 1-2). More specifically, as to Plaintiffs' initial Request for Production of Documents, Defendants asserted "the attorney-client privilege and/or the work-product doctrine" as a basis for not producing materials responsive to Request Nos. 3-4, 8, 11, 13-15, 20-21, 24, 26, and 28-29. (Doc. #41, Exh. B). Defendants did commit to producing "nonprivileged documents" responsive to Request Nos. 1, 3, 4, 13-17, 19-21, 23, 25, and 27-29. (*Id.*). Defendants did not enumerate, however, the particular documents to which they claim any privilege attaches. (*See id.*).

In accordance with Fed. R. Civ. P. 26(b)(5)(A), parties who withhold discovery materials on the basis of privilege "<u>must</u> describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . .will enable other parties to assess the claim." (Emphasis added). "Failure to assert the privilege objection correctly can mean that the privilege is waived." 8 CHARLES ALAN

WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2016.1, pp. 228-29 (2d ed. 1994). Given that such a result "could impose substantial and unjustified burdens on litigants," *see id.* (Supp. 2008), however, most decisions regarding waiver due to failure to provide an adequate privilege log tend to be very case specific. While some courts have held the failure to provide a privilege log within the applicable time to constitute a waiver of the asserted privilege, *see, e.g., Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984), *cert. dismissed*, 469 U.S. 1199 (1995), other courts have specifically "reject[ed] a *per se* waiver rule that deems a privilege waived if a privilege log is not produced." *See Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct. for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir.), 546 U.S. 939 (2005). Indeed, in light of "the harshness of a waiver sanction," many courts "have reserved the sanction for those cases where the offending party committed unjustified delay in responding to discovery." *See Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001). Additionally, "[m]inor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver." *Id.*

Because Defendants' assertions of privilege were not accompanied by a privilege log comporting with Fed. R. Civ. 25(b)(5)(A), Plaintiffs urge that any purported privilege claimed by Defendants should be deemed waived in this case. (*See* Doc. #42, p. 3). In support of that proposition, they cite *JLJ Inc. v. Santa's Best Craft, LLC,* No. 3:02-CV513 (S.D. Ohio May 28, 2004) (Rose, J.). The Sixth Circuit apparently has not addressed the

issue, and that single decision out of this Court is readily distinguishable on its facts. In *Santa's Best*, Judge Rose specifically noted that the non-compliant defendants "did not deny that they were required to provide the privilege log," or that "they repeatedly promised to provide the privilege log and failed to due so." *Id.*, p. 2.

To the contrary, in this matter, Defendants did <u>not</u> concede that they were under an obligation to provide a privilege log, but rather suggested in numerous responses that they would "make a good faith effort to further respond" if Plaintiffs would "clarify" and/or "narrow" the request as to which privilege was asserted. (*See* Doc. #41, Exh. B, responses to Request Nos. 8, 11, 14-15, 20, 24, 26 & 28). Accordingly, there is no indication, as in *Santa's Best*, that Defendants "repeatedly" – or ever – "promised to provide [a] privilege log and failed to due so."

Moreover, as to nearly all of Plaintiffs' requests to which Defendant objected on the basis of privilege, that objection also was accompanied by objections based upon at least one other ground.[3] Impermissibly broad discovery requests that would place an

---

[3](*See* Doc. #41, Exh. B, Request Nos. 3 ["overbroad, unduly burdensome . . . irrelevant and not reasonably calculated to lead to the discovery of admissible evidence"]; 4 ["vague and ambiguous"]; 8 ["vague, ambiguous . . . overbroad . . . unduly burdensome . . . irrelevant and not reasonably calculated to lead to the discovery of admissible evidence"]; 11 ["vague and ambiguous, overbroad . . . unduly burdensome . . . irrelevant and not reasonably calculated to lead to the discovery of admissible evidence . . . unduly intrusive to the privacy interests of nonparties"]; 14 ["overbroad . . . unduly burdensome . . . irrelevant and not reasonably calculated to lead to the discovery of admissible evidence . . . unduly intrusive to the privacy interests of nonparties"]; 15 ["vague and ambiguous, overbroad . . . unduly burdensome . . . irrelevant and not reasonably calculated to lead to the discovery of admissible evidence . . . unduly intrusive to the privacy interests of nonparties"]; 20 ["vague and ambiguous . . . overbroad . . . irrelevant and not reasonably calculated to lead to the discovery of admissible evidence"]; 21 ["vague and ambiguous . . . overbroad . . . irrelevant and not reasonably calculated to lead to the discovery of admissible evidence . . . unduly intrusive to the privacy interests of nonparties"]; 24 ["vague and ambiguous . . . overbroad . . . unduly burdensome . . . irrelevant and not reasonably calculated to lead to the discovery of admissible evidence . . . unduly intrusive to the privacy interests of nonparties"]; 26

undue burden on respondents attempting to compile a privilege log may excuse their failure to do so.  *See DelCampo v. American Corrective Counseling Servs., Inc.*, No. C-01-21151 JW, 2007 WL 4287335, at *4 (N.D. Cal. Dec. 5, 2007).  Additionally, other viable objections may serve as a basis other than privilege for withholding discovery materials sought, and thus may obviate the need to produce a privilege log.  *See* 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2016.1, pp. 235-36. As stated in the Advisory Committee Notes to the 1993 Amendments to Fed. R. Civ. P. 25(b):

> The obligation to provide pertinent information concerning withheld privileged materials applies only to items "otherwise discoverable."  If a broad discovery request is made – for example, for all documents of a particular type during a twenty year period – and the responding party believes in good faith that the production of documents for more than the past three years would be unduly burdensome, it should make its objection to the breadth of the request and, with respect to the documents generated in that three year period, produce the unprivileged documents and describe those withheld under the claim of privilege.

146 F.R.D. 401, 639-40.

In light of the foregoing, the Court determines that Defendants' failure to produce a privilege log does <u>not</u> warrant the harsh sanction of waiver of privilege in this particular case, for a variety of reasons.  In the first instance, Plaintiffs' original requests for records

["vague and ambiguous . . . overbroad . . . unduly burdensome . . . irrelevant and not reasonably calculated to lead to the discovery of admissible evidence"]; 28 ["vague and ambiguous, overbroad . . . unduly burdensome . . . irrelevant and not reasonably calculated to lead to the discovery of admissible evidence . . . unduly intrusive to the privacy interests of nonparties"] & 29 ["vague and ambiguous . . . unduly intrusive to the privacy interests of nonparties"] ).

covering a span of up to 33 years (*see, e.g.*, Doc. #41, Request Nos. 11, 12, requesting documents "from 1974 to the present") exceed even the 20 year request period used for illustrative purposes in the Advisory Committee Notes. *See* 146 F.R.D. at 640. As such, Defendants' "unduly burdensome" objections had an objectively reasonable basis, and relieved Defendants of the obligation to provide a privilege log as to any purportedly privileged materials that fell outside the scope of "otherwise discoverable" documents, as defined by the civil rules. *See id.*

In addition, the record amply demonstrates that despite their assertion of multiple objections to nearly all of Plaintiffs' original document requests, Defendants nonetheless <u>did</u> make "good faith attempts at compliance" with Plaintiffs' discovery requests. *See Ritacca*, 203 F.R.D. at 335. By Plaintiffs' own admission, Defendants produced "several thousand documents" (*see* Doc. #36); Defendants put the number at "over 13,200" (Doc. #41, p. 2), including "thousands more documents than Plaintiffs elected to copy." (Doc. #44, p. 1). Defendants also accompanied many of their written objections with offers to respond more fully if Plaintiffs would "clarify" and/or "narrow" the specific requests. (*See* Doc. #41, Exh. B, responses to Request Nos. 8, 11, 14-15, 20, 24, 26 & 28) . Plaintiffs' apparent failure to thereafter submit any modified discovery requests tends to counteract any inference that Defendants were acting uncooperatively.

Finally, although Plaintiffs' counsel did file the requisite certificate outlining the means undertaken to resolve the parties' discovery dispute prior to seeking the Court's intervention (*see* Doc. #36, pp. 8-9), that certificate does not contradict Defendants'

assertion that "Defendants heard nothing regarding their discovery responses [to Plaintiffs' original requests for production] for almost ten months," from their timely response on September 12, 2007, until a June 24, 2008 email from Plaintiffs' counsel, suggesting that "the production of documents by [Defendants in response to Plaintiffs' first request] is incomplete." (Doc. #41, p. 2 & Exh. D). By Plaintiffs' own account, Plaintiffs did not formally complain to Defendants about the absence of a privilege log until July 16, 2008. (*See* Doc. #36, p. 8). The motion to compel was filed five days later, after only cursory exchanges with Defendants' counsel, and only one day before the established discovery cutoff date of July 22, 2008. (*Id.*, pp. 8-9).

In *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 274 (E.D. Va. 2004)*,* the district court "decline[d] to impose the exceedingly harsh sanction of deeming [a party's] asserted privileges waived" due to failure to provide an inadequate privilege log – even though that party "ha[d] engaged in dilatory discovery practices in the past," *id.* at 273 – because the party seeking that sanction had not complied with a local rule requiring extrajudicial attempts to resolve discovery disputes before filing discovery motions. *See id.* at 274. Similarly, this Court finds that waiver of any privilege would be too harsh a sanction to impose under the circumstances present in this case, where Plaintiffs' own inaction may well have contributed to Defendants' complacency about producing a privilege log.

The finding that Defendants shall not be deemed to have waived privilege to date, however, does not relieve Defendants of their obligation to now provide a privilege log as

to any purportedly privileged documents within the scope of Plaintiffs' remaining requests for "otherwise discoverable" materials. Should Defendants claim privilege as to any documents that fall within the narrowed range of Plaintiffs' outstanding discovery requests that the Court has determined, *supra*, to warrant further response, then Defendants <u>must</u> identify such documents in conformance with Fed. R. Civ. P. 26(b)(5)(A).

**IT THEREFORE IS RECOMMENDED THAT:**

1. Plaintiffs' Motion to Compel Discovery (Doc. #36) be GRANTED in part, as to Interrogatory #1 and Document Request #31 (Doc. #41, Exh. F) ONLY;

2. Defendants be DIRECTED to produce and make available for inspection by Plaintiffs' counsel or their designated representative, within ten (10) days of the date of the Court's final Order, all documents necessary in order for Plaintiffs to discern **the name; race; date of hire; date of termination; dates of any promotion(s) and position(s) promoted to; regular and overtime hours worked each year; and seniority relative to other employees each year**; of **each member of Plaintiffs' collective bargaining units**, with the **same supervisor** and/or **same job** as any Plaintiff, employed by Defendant SuperValu at its Xenia warehouse facility **from May 1999 to present** ONLY, in accordance with Fed. R. Civ. P. 33(d);

3. Plaintiffs' Motion to Compel be DENIED in all other respects;

4. Defendants be DIRECTED to provide, along with its response, a privilege log in accordance with Fed. R. Civ. P. 26(b)(5)(A), as to any information within the scope of this Order withheld by Defendants as privileged or subject to protection as trial-preparation material; and

5.      The parties submit for the Court's consideration any proposed protective order pursuant to Fed. R. Civ. P. 26(c)(1) deemed necessary in order to protect the privacy interests of non-parties.


October 29, 2008                               _____s/ Sharon L. Ovington_____
                                                    Sharon L. Ovington
                                       United States Magistrate Judge