IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DION BERRYMAN, et al.                    :

    Plaintiffs,                          :
                                  Case No. 3:05cv169

        vs.                              :
                                  JUDGE WALTER HERBERT RICE

SUPERVALU HOLDINGS, INC., et al.,        :

    Defendants.                          :


---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AS TO PLAINTIFF ROBERT BUSH (DOC.
#78); JUDGMENT TO ULTIMATELY ENTER IN FAVOR OF
DEFENDANTS AGAINST PLAINTIFF ROBERT BUSH

---


The Plaintiffs in this litigation are African-American employees of SuperValu

Holdings, Inc. ("SuperValu"). Doc. #3 (Am. Compl.) ¶¶ 3-13. The Plaintiffs

originally brought suit as a class action, but subsequently stipulated to the

dismissal, with prejudice, of all class action claims set forth in the Amended

Complaint, leaving only the eleven individually named Plaintiffs.[1] Doc. #23. The

---

[1]The Amended Complaints lists the Plaintiffs as follows: Dion Berryman,
Robert Bush, Lemenzo Clegg, Andre Hightower, Kevin Huff, Ricardo Hughly,
Ronald Lanton, Roosevelt Leverett, Albert Robinson, Jesse Smith and Leroy
Thompson. Doc. #3 (Am. Compl.). The Deposition of Ricardo "Hughley", which
has been signed by Mr. Hughley, contains a different spelling for that Plaintiff's
name. The Court will, therefore, use the spelling as indicated in Mr. Hughley's
Deposition.

Defendants are SuperValu and several individually named SuperValu employees, all of whom serve in a supervisory capacity.[2] Id. ¶¶ 14-22. The Amended Complaint sets forth six causes of action, to wit: (1) race discrimination, under 42 U.S.C. §§ 2000e - 2000e-17 ("Title VII"); (2) hostile environment and disparate treatment, under 42 U.S.C. § 1981; (3) race discrimination, under Ohio Revised Code §§ 4112.02, 4112.99; (4) retaliation, in violation of Title VII and/or Ohio law; (5) hostile environment, under federal and Ohio law; and (6) respondeat superior. Id. ¶¶ 39-77. The Complaint appears to allege all claims, except the sixth, against all Defendants.[3] The sixth is brought against SuperValu alone.

The Defendants previously moved for dismissal on some of the Plaintiffs' claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. #14. In ruling on that Motion, the Court dismissed the following Title VII claims: (1) race-based harassment; (2) retaliation occurring prior to the filing of the Plaintiffs' EEOC charges, and (3) all claims against the individual Defendants. Doc. #31.

---

[2]The Amended Complaint lists the individual Defendants as follows: Peter Gunderson, Rick Zoll, Fred Dunwoodie, Cindy Keyes, John Schultz, Tim Doran, Sue Zimmerman and Carol Gibson. Doc. #3 (Am. Compl.). The Deposition of John "Schulcz", which has been signed by Mr. Schulcz, contains a different spelling for that Defendant's name. The Court will, therefore, use the spelling as indicated in Mr. Schulcz's Deposition.

[3]The Amended Complaint does not specify against which Defendant(s) each claim is brought, but each cause of action uses the plural word "Defendants." See Doc. #3 (Am. Compl.).

Presently before the Court is a Motion for Summary Judgment, as to the remaining claims brought by Robert Bush ("Plaintiff"). Doc. #78. In his response to said Motion, the Plaintiff clarifies that he is not bringing a § 1981 claim against the individual Defendants. Doc. #92 at 4. Thus, at this stage of the litigation, the following claims remain: (1) race discrimination (disparate treatment), under Title VII (against SuperValu) (Count I); (2) hostile environment and disparate treatment, under 42 U.S.C. § 1981 (against SuperValu) (Count II); (3) race discrimination, under Ohio Revised Code §§ 4112.02, 4112.99 (against all Defendants) (Count III); (4) retaliation, in violation of Title VII and/or Ohio law (against SuperValu, as to Title VII, and against all Defendants as to Ohio claim) (Count IV); (5) hostile environment, under Ohio law[4] (against all Defendants) (Count V); and (6) respondeat superior (against SuperValu) (Count VI). The Defendants have moved for summary judgment on all of Bush's claims. Doc. #78.

The Court will begin its analysis of the Defendants' Motion with an overview of the pertinent facts. It will then turn to a review of the standard that guides its summary judgment decisions, followed by an analysis of the merits of the Defendants' Motion.

---

[4]As to the Plaintiff's federal hostile environment claim, the Court's earlier opinion (Doc. #31) clarified that the surviving Title VII claim is limited to disparate treatment. Further, the Plaintiff has indicated that it is bringing a hostile environment claim, under 42 U.S.C. § 1981, as Count II. Therefore, in order to reduce redundancy of claims, the Court has removed the reference to federal claims, in Count V.

I.      <u>Facts</u>[5]

SuperValu hired Bush in 1986. Doc. #73-1 (Bush Dep. at 15).  Since that

time, Bush has worked in various jobs, including order selector, loader, sanitation

worker and forklift operator. <u>Id.</u> at 16-17.


        A.      <u>Collective Bargaining Agreement and Anti Harassment/Discrimination</u>
                <u>Policy</u>

As a member of the local union, Bush's employment terms are covered by

the collective bargaining agreement ("CBA") between SuperValu and the union.

Doc. #73-1 (Bush Dep. at 17); Docs. #73-8, #73-9, #73-10 (CBA).  Some of the

specifics covered by the CBA include the following:

•       <u>Job Bidding</u>.  Bargaining unit jobs are awarded by seniority.  Job
        openings are posted for five days and are then filled with the

_____

[5]Since this case comes before the Court on the Defendants' Motion for
Summary Judgment, the Court sets forth the facts and circumstances giving rise to
such Motion in the manner most favorable to the Plaintiff, as the party against
whom the Motion is directed. <u>Servo Kinetics, Inc. v. Tokyo Precision Instruments</u>,
475 F.3d 783, 790 (6th Cir. 2007).
        The Court has spent an inordinate amount of time organizing the facts, in
this case.  Not only did the Defendants file an excessively long memorandum in
support of their Motion for Summary Judgment (37 pages, not including table of
contents or summary of arguments) (Doc. #78), but they also set forth the majority
of their lengthy factual assertions in single-spaced footnotes, in small font.  In
doing so, the Defendants have set forth far more facts than the Plaintiff.  In
drafting the present Opinion, the Court has relied upon those facts pointed to by
the Plaintiff, in opposition to the Defendants' Motion (Doc. #92), as well as facts
generally set forth in the Amended Complaint (Doc. #3), which have been
expounded upon by the Defendants.  As to the facts raised by the Defendants, but
not relied upon by the Plaintiff in either the Amended Complaint or memorandum in
opposition to the Motion for Summary Judgment, the Court considers those facts
inapplicable to the present case.

4

qualified employee with the most seniority. Doc. #73-9 (CBA) at 12.

- <u>Overtime Assignments</u>.  Overtime assignments are made to the most senior employee who volunteers and is qualified.  If an insufficient number of employees volunteer, then the most junior qualified employees are required to work the overtime. Doc. #73-9 (CBA) at 1-2.

- <u>Nondiscrimination</u>. The CBA protects members against discrimination on the basis of race, as well as other protected characteristics. Doc. #73-10 at 4.

- <u>Grievance and Arbitration Procedure</u>. The CBA provides grievance and arbitration procedures, which allow members to file a grievance for complaints arising over the interpretation or application of Agreement." Doc. #73-8 at 17-19.

Besides the CBA's nondiscrimination provision, SuperValu has an Anti Harassment and Discrimination Policy, with reporting requirements for employees who experience harassing or discriminatory behavior. Doc. #78-9.  SuperValu also has conducted training for all employees and distributes periodic memoranda and notices to remind employees that workplace harassment will not be tolerated. Doc. #78-7 (Schulcz Aff.) ¶ 4, Attachs. C-D.

B. <u>Facts Specific to the Plaintiff's Disparate Treatment Claim</u>

The parties set forth the following facts pertinent to Bush's disparate treatment claim:

- <u>Alleged Disparate Treatment with Regard to Discipline</u>
  - In 1989, SuperValu fired black co-worker Berryman for "building a bad board" and then rehired him.  Bush objected to this, because he felt a lot of people built bad boards. Doc. #73-2 (Bush Dep. at 131-32); Doc. #74-3

(Berryman Dep. at 206-07) (date).

- On one occasion in 2004, supervisor Gibson told Bush that he could "add a couple of different minutes to help me make up my time on the paper that we had," in order to come into compliance with new production standards. Doc. #73-2 (Bush Dep. at 121-22). Bush alleges that he received a verbal reprimand for counting time in accordance with Gibson's instruction. Id. at 124-25. SuperValu contends that Bush was not disciplined for the same, but was simply instructed how to correctly complete his time log. Doc. #78-3 (Gibson Aff.) ¶¶ 3-5; Doc. #78-7 (Schulcz Aff.) ¶ 6.

- In the fall of 2005, supervisor Doran gave Bush a verbal reprimand for putting items in the wrong slot. Doc. #73-2 (Bush Dep. at 95-96). Although Bush admits that he did put things in the wrong slot, he argues that white employee Prechtl did not receive discipline for putting things in the wrong slot. Id. at 96-98. Prechtl worked on a different shift than Bush and had a different supervisor. Id. Bush complained about this incident to Doran. Id.

- Supervisors disciplined black co-worker Huff for cussing at supervisors, while they did not discipline white co-workers Shaw and Seedle for the same misconduct. Doc. #73-1 (Bush Dep. at 48-58).

- <u>Alleged Disparate Treatment with Regard to Break Time and Socializing</u>
  - Once in approximately 2002, supervisor Dunwoodie told Bush and three black co-workers to get back to work when they were talking after their shift had started. Doc. #73-1 (Bush Dep. at 32-35). Dunwoodie did not tell white co-worker Gardner to get back to work, however. Id. at 36-37. Bush does not know what Gardner's job was, at that time, nor the name of his supervisor. Id. He did not file a grievance about the incident. Id. at 37.
  - On an unknown date, supervisor Dunwoodie told Bush and other black co-workers to get back to work, but ignored unnamed white co-workers. Doc. #73-1 (Bush Dep. at 37-39).
  - In 2007, Bush witnessed black co-worker Berryman getting disciplined for being in the breakroom past his allocated break time, while unnamed white co-workers did not get disciplined for the same. Doc. #73-3 (Bush Dep. at 173-75).
  - On an unknown date, supervisor Brown told Bush and other black employees to get back to work, after a break, while ignoring white employees, including co-worker Carr. Doc. #73-1 (Bush Dep. at 40-47).

- <u>Alleged Disparate Treatment with Regard to Job Assignments</u>
  - On an unknown date, supervisor Brown asked Bush to help another employee with a job, rather than asking white co-worker Carr, who had less seniority than Bush and who was not otherwise employed. Doc. #73-1

6

(Bush Dep. at 61-65).

- In 2007, supervisor Dunwoodie help open a temporary job assignment, in contravention of company policy, for white co-worker Seedle, who was not present during the job assignment meeting at the beginning of the shift, rather than offering the job to Bush, who was next in line for the assignment. Doc. #73-2 (Bush Dep. at 138-40). Although Bush asserts that this conduct violated the union contract, he did not grieve it or otherwise complain. Id. at 140.[6]

- Alleged Disparate Treatment with Regard to Training. When moved to the freezer section, in approximately 1988, SuperValu did not offer freezer training to Bush. Doc. #73-3 (Bush Dep. at 150-53).


C. Facts Specific to the Plaintiff's Hostile Work Environment Claim

The parties set forth the following facts pertinent to Bush's hostile work

environment claim:

- In approximately 1985, co-worker Jordan told Bush that his (Bush's) nickname was going to be "Buckwheat." Doc. #73-1 (Bush Dep. at 24-28). Bush reported this to supervisor Kessler, who laughed. Id. at 27. Neither Jordan nor any other employee ever called Bush "Buckwheat" after this initial conversation. Id. at 27-29.
- In approximately 1985, white co-worker Walker told Bush that "Tom Bird is a nigger but you are not a nigger." Bush reported this to supervisor Kessler.

_____

[6]The Court assumes that the job assignment to which Bush is referring is the temporary assignment of jobs (as opposed to a permanent assignment of jobs), which happens on a day-to-day basis, when employees are temporarily reassigned for the day, depending on work load and absenteeism. See Doc. #65-3 (Robinson Dep. at 211-13) (wherein Robinson explains that positions that are open due to daily absences are assigned by seniority at the start of each shift, in the breakroom); see also Doc. #73-2 at 138-40 (wherein Bush speaks of the assignment as occurring in the breakroom at the start of a shift). In their memorandum in support of their Motion for Summary Judgment, the Defendants refer to the job assignment in question, as an "occasional reassignment[] and fluctuation[] of job responsibilities that [is] temporary in nature" and the Plaintiff does not correct this perception, in his memorandum in opposition. Doc. #78 at 27; see also Doc. #92.

Doc. #73-1 (Bush Dep. at 28-30).  Bush does not know whether Walker was disciplined for the comment. Id. at 30-31.

- In approximately 1988 or 1989, Bush saw the words "nigger go back" written on a wooden skid.  He does not know who was responsible for the graffiti and did not report it. Doc. #73-2 (Bush Dep. at 78-81).

- In approximately 2002-2003, union steward Minton told Bush that, if hypothetically an employee called another employee "nigger", the union would defend the name-caller. Doc. #73-3 (Bush Dep. at 188-90).  Bush mentioned the comment to another union steward, but did not file a grievance about the same. Id.

- In 2003, Bush approached manager Gunderson regarding a requested leave of absence, but Gunderson raised his voice to Bush and told him to get out of his office. Doc. #73-3 (Bush Dep. at 157-61).  Bush also approached manager Zimmerman about the same issue, but was told she did not have time to talk to him. Doc. #73-2 (Bush Dep. at 113-19).  Bush believes Zimmerman's behavior was motivated by racism, because he could "feel" it.[7] Id. at 118-19.

- In 2006, Bush saw the word "nigger" written on a bathroom wall. Doc. #73-2 (Bush Dep. at 81-82).  Bush did not report the graffiti. Id. at 83.  The graffiti was cleaned off the wall soon after Bush saw it. Id.

- At an unknown time, co-worker Uhrig told Bush that some employees "consider it a gang" when three or four black employees are together. Doc. #73-2 (Bush Dep. at 105-07).  Bush did not report this incident. Id. at 107.

- On an unknown date, Bush saw a drawing of O.J. Simpson running from a police car on the freezer wall. Doc. #73-2 (Bush Dep. at 73-75).  Bush did not report the graffiti. Id. at 77.

---

[7]Bush explained his "feeling" that Zimmerman's conduct had a racial animus, as follows:

> To me, it was just the way - - it was just the way that - - you can feel things.  You can see things.  I mean, it doesn't take something to know when someone don't like you.  It doesn't take a lot.  And if you ain't going to like me for - - if I never did nothing to you, never said nothing to you, and you going to dislike me, what's the reason why you going to dislike me?  [sic]

Doc. #73-2 (Bush Dep. at 118-19).

II.  Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such

that a jury could reasonably find for the plaintiff." <u>Mich. Prot. & Advocacy Serv.,</u>

<u>Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be

resolved in favor of either party.'" <u>Hancock v. Dodson</u>, 958 F.2d 1367, 1374 (6th

Cir. 1992) (citation omitted). In determining whether a genuine issue of material

fact exists, a court must assume as true the evidence of the nonmoving party and

draw all reasonable inferences in favor of that party. <u>Anderson</u>, 477 U.S. at 255.

If the parties present conflicting evidence, a court may not decide which evidence

to believe, by determining which parties' affiants are more credible; rather,

credibility determinations must be left to the fact-finder. 10A Wright, Miller &

Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining

whether there is a genuine issue of material fact), "[a] district court is not . . .

obligated to wade through and search the entire record for some specific facts that

might support the nonmoving party's claim." <u>InterRoyal Corp. v. Sponseller</u>, 889

F.2d 108, 111 (6th Cir. 1989), <u>cert. denied</u>, 494 U.S. 1091 (1990); <u>see also</u> <u>L.S.</u>

<u>Heath & Son, Inc. v. AT&T Info. Sys., Inc.</u>, 9 F.3d 561 (7th Cir. 1993); <u>Skotak v. Tenneco Resins, Inc.</u>, 953 F.2d 909, 915 n.7 (5th Cir. 1992), <u>cert. denied</u>, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

III. <u>Legal Analysis</u>

    A. <u>Disparate Treatment, under Title VII (Count I), under 42 U.S.C. § 1981 (part of Count II) and under Ohio Law (Count III)</u>

Bush brings race discrimination claims against SuperValu, based on the theory of disparate treatment, under Title VII (Count I), § 1981 (part of Count II) and Ohio law (Count III). Doc. #3 (Am. Compl.). He also alleges disparate treatment against the individual Defendants, under Ohio law (Count III). <u>Id.</u>

At the onset, the Court notes that both parties have relied upon certain factual allegations, in support of their arguments for and against Bush's disparate treatment claim, which pertain to the alleged disparate treatment of other employees, rather than to the alleged disparate treatment of Bush. Because a disparate treatment claim, in a non-class action suit, is an individual claim wherein

11

an employee is alleging that his employer discriminated against <u>him</u> because of his race, rather than that the employer discriminated against <u>another employee</u> because of his or her race, see <u>Upshaw v. Ford Motor Co.</u>, 576 F.3d 576, 584 (6th Cir. 2009) (setting forth *prima facie* case of race discrimination claim, which focuses entirely on alleged disparate treatment of plaintiff), the Court will not consider the following factual allegations, in analyzing Bush's disparate treatment claim:

- Termination and rehiring of co-worker Berryman for "building a bad board"

- Disciplining of co-worker Huff for cussing at supervisors

- Disciplining of co-worker Berryman for being in the breakroom past his allocated break time

The Court will now proceed with an analysis of the Defendants' Motion, as it pertains to the alleged disparate treatment of Bush, with the remaining applicable factual assertions.

### 1. <u>Whether Certain Claims are Time Barred</u>

SuperValu initially argues that certain of the Plaintiff's disparate treatment claims are time barred. Initially, the Court notes that the proper starting point for this analysis is the date that each discrete discriminatory act occurred. <u>See</u> <u>AMTRAK v. Morgan</u>, 536 U.S. 101, 110-11, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). In other words, in a disparate treatment context (as opposed to a hostile

work environment context),[8] a plaintiff may not "convert[] related discrete acts into a single unlawful practice for the purposes of timely filing." Id. at 111.  As to the extent that discrete acts of discrimination that fall outside the applicable statute of limitations are helpful or harmful to a plaintiff's case, the Supreme Court instructs as follows:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act. . . .  The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.  Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

Id. at 113.  Relying on the final sentence quoted above, the Plaintiff correctly argues that this Court may consider, even if untimely, "prior acts as background evidence in support of a timely claim." Id.  In sum, therefore, although the Court

---

[8]In contrast, plaintiffs may convert related discrete acts into an unlawful practice, for purposes of timely filing in the hostile work environment context.  As explained by the Supreme Court,

> Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.  The "unlawful employment practice" therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

Morgan, 536 U.S. at 115 (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-349 (3d ed. 1996); Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)).

will not take outdated acts into consideration for purposes of determining whether

those acts constitute disparate treatment, it will take them into consideration as

background evidence in considering timely acts of alleged discrimination. Having

established that the starting point for its statute of limitations analysis is each

discrete act of discrimination, the Court will proceed with its analysis of the proper

time periods within which to examine the allegedly discriminatory conduct.

As to the Title VII claim, the Defendants correctly point out that Title VII

requires complainants to file a claim with the Equal Opportunity Employment

Commission ("EEOC") within 300 days after each discrete act of alleged

discrimination. 42 U.S.C. § 2000e-5(e)(1); see also Russell v. Ohio, 2008 U.S.

App. LEXIS 24531, *9, 302 Fed. Appx. 386 (6th Cir. Dec. 3, 2008) (noting that in

a "'deferral' state such as Ohio, any instance giving rise to a Title VII claim must

have occurred within 300 days of [the filing of the EEOC claim]") (citing Amini v.

Oberlin College, 259 F.3d 493, 498 (6th Cir. 2001)). In the present case, the

Plaintiff filed his EEOC claim on or about June, 21, 2004.[9] See Doc. #3-2 (Bush

EEOC Charge). Therefore, as to the Plaintiff's Title VII claim, the Court will not

consider allegations of discrete acts of disparate treatment that occurred prior to

August 27, 2003 (300 days prior to the filing of the EEOC claim on June, 21,

---

[9]Bush's EEOC Charge of Discrimination is undated. Doc. #3-2 (Bush EEOC
Charge) at 2. In their memorandum in support of its Motion for Summary
Judgment, the Defendants estimate that Bush filed the same on or about June 21,
2004, based on the date of his pre-charge investigation checklist form. Doc. #78
at 1, 2 n.1. Since Bush does not correct the Defendants' date estimate, in his
memorandum in opposition, the Court will assume the estimate is correct.

2004).

As to the Plaintiff's § 1981 claim, such has a four year statute of limitations.[10] 28 U.S.C. § 1658(a); see also Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004). Thus, for purposes of the Plaintiff's § 1981 claim, the Court will not consider allegations of discrete acts of disparate treatment that occurred prior to May 17, 2001 (four years prior to the filing date of May 16, 2005).

Finally, with regard to the Plaintiff's claim under Ohio Revised Code §§ 4112.02, 4112.99, "the statute of limitations for bringing a lawsuit under

_____

[10]The Defendants argue that claims arising in Ohio, under § 1981, are subject to a two year statute of limitations. Doc. #78 at 14. Such was the law prior to 2004. See Bd. of Regents v. Tomanio, 446 U.S. 478, 483, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980) (noting that when Congress does not establish a statute of limitations, courts typically "borrow" the state law statute of limitations governing analogous causes of action); Nelson v. GE, 2001 U.S. App. LEXIS 1145, **7-8, 2 Fed. Appx. 425 (6th Cir. Jan. 17, 2001) (recognizing two year statute of limitations for such claims). However, in 2004, the Supreme Court decided Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004), which recognized that Congress had enacted 28 U.S.C. § 1658(a), establishing a four year statute of limitations period for "civil action[s] arising under an Act of Congress enacted after the date of the enactment of this section [enacted Dec. 1, 1990]." Id. at 375. The Court further concluded that the plaintiff's claims for hostile work environment, wrongful termination, and failure-to-transfer "'ar[ose] under' the 1991 Act in the sense that petitioners' causes of action were made possible by that Act," given that the 1991 Act overturned case law precedent that previously held that "racial harassment relating to the conditions of employment is not actionable under § 1981." Id. at 383 (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 171, 105 L Ed 2d 132, 109 S Ct 2363 (1989)). Thus, the current Plaintiff's § 1981 claim for race discrimination (as well as hostile work environment) is covered by the § 1658 four year statute of limitations. See also Dandy v. UPS, 388 F.3d 263, 269 (7th Cir. Wis. 2004) (applying § 1658's four year statute of limitations period to disparate treatment and hostile work environment claims, based on Jones).

§ 4112 is six years." <u>Harrison v. City of Akron</u>, 2002 U.S. App. LEXIS 16263, *5,

43 Fed. Appx. 903, 905 (6th Cir. Aug. 8, 2002) (citing Ohio Rev. Code

§§ 2305.07, 4112.99; <u>Cosgrove v. Williamsburg of Cincinnati Mgmt. Co.</u>, 70 Ohio

St. 3d 281, 638 N.E.2d 991, 992 (Ohio 1994)).  Thus, for purposes of the

Plaintiff's Ohio claim, the Court will not consider allegations of discrete acts of

disparate treatment that occurred prior to May 17, 1999 (six years prior to the

filing date of May 16, 2005).

   With regard to the claims that are undated, the Defendants urge the Court to

consider the same as time barred.  In support of this argument, they point to a

Southern District of Indiana case, which holds as follows:

> [The plaintiff] cannot avoid the 300 day statute of limitations merely
> by failing to provide the dates on which the alleged acts occurred.
> Baker's obligation as the plaintiff is to "set forth specific facts
> showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).
> To create a "genuine issue" Baker must present evidence such that a
> reasonable jury could find in his favor.  We find that Baker has failed
> to present such evidence.

<u>Baker v. Ind. Family & Soc. Servs. Admin.</u>, 2004 U.S. Dist. LEXIS 25838, *13

n.10 (S.D. Ind. Dec. 10, 2004) (one citation omitted); <u>see also</u> <u>French v. Potter</u>,

2005 U.S. Dist. LEXIS 44605, *7 (S.D. Ohio July 12, 2005) (pointing out that a

court "is unable to determine whether plaintiff has complied with the statutory

prerequisites to bringing suit under Title VII" if the plaintiff does not provide dates

on which the alleged violations occurred).  Although the Court agrees with the

ultimate conclusion urged by the Defendants, it finds the approach used by the

Southern District of Indiana to be inconsistent with Sixth Circuit case law, as to the burdens the parties carry in cases such as the one presently before this Court.

In speaking of which party carries the burden of establishing an affirmative defense, such as the statute of limitations, the Sixth Circuit instructs as follows:

> A party who moves for summary judgment "bears the initial burden of showing the absence of a genuine issue of material fact." Furthermore, [the defendant] has the burden of proof on all affirmative defenses, such as the statute of limitations. Thus, if [the defendant] failed to meet its burden of proof, [the plaintiff] had no obligation to proffer any additional evidence in order to rebut the statute of limitations defense.

Fonseca v. CONRAIL, 246 F.3d 585, 590-91 (6th Cir. 2001) (citing, among others, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). Further, in Arnett v. Myers, 281 F.2d 552 (6th Cir. 2002), the Sixth Circuit discussed what the moving party must show to be entitled to summary judgment on an issue upon which it will bear the burden of persuasion at trial. "[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" Id. at 561 (quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000)).

In the present case, the Court concludes that the Defendants have set forth sufficient evidence to satisfy their burden as to their statute of limitations defense

in the instances where they questioned the Plaintiff as to the time period of his various allegations and the Plaintiff provided nothing in response. Once a defendant takes the initiative to satisfy its affirmative defense burden, by asking the proper question regarding the timing of the alleged wrongdoing, a plaintiff should not be able to impede the application of a statutory time bar simply by refusing to provide the answer. Thus, to the extent the Defendants questioned the Plaintiff about the timing of the alleged discriminatory acts and the Plaintiff provided no indication of a time period in response, the Court concludes that the Defendants have satisfied their burden, as to this affirmative defense.

In sum, therefore, for purposes of analyzing the Plaintiff's Title VII claim, the Court will only consider allegations of discrete acts of disparate treatment that occurred from and after August 27, 2003. With regard to the § 1981 claim, the Court will only consider allegations of discrete acts of disparate treatment that occurred from and after May 17, 2001, and with regard to the state law claim, from and after May 17, 1999. Thus, the following alleged incident of disparate treatment is time barred, for purposes of all disparate treatment claims:

- When moved to the freezer section, in approximately 1988, SuperValu did not offer freezer training to Bush

Furthermore, the Court will not consider the following alleged facts, given that the Defendants questioned the Plaintiff about the timing of the same and the Plaintiff provided no indication of a time period, in response:

- Supervisor Dunwoodie telling Bush and other black co-workers to

18

get back to work, but ignoring unnamed white co-workers

- Supervisor Brown telling Bush and other black employees to get back to work, after a break, while ignoring white employees, including co-worker Carr

- Supervisor Brown asking Bush to help another employee with a job, rather than asking white co-worker Carr, who had less seniority than Bush and who was not otherwise employed

Based on the remaining factual allegations, all of which are timely, the Court will now turn to a consideration of whether the Plaintiff has pointed to sufficient evidence to create a genuine issue of material fact, as to the various elements of his disparate treatment claim.


### 2. Disparate Treatment - Burden Shifting Analysis

Absent direct evidence of discrimination, the Court initially notes that courts analyze all three of the Plaintiff's disparate treatment claims (under Title VII, § 1981 and Ohio law) using the burden shifting framework, as set forth by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). E.g., Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009) (race discrimination claim under Title VII); Amini v. Oberlin College, 440 F.3d 350, 358 (6th Cir. 2006) (race discrimination claim under § 1981); Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm., 66 Ohio St. 2d 192, 197 (Ohio 1981) (race discrimination

claim under Ohio Revised Code Chapter 4112). The Sixth Circuit provides the

following summary of that analytical framework:

> First, the plaintiff must make out a prima facie case of race
> discrimination, after which the burden shifts to the employer to proffer
> a legitimate, nondiscriminatory reason for its decision. If the employer
> carries its burden, the plaintiff must then prove by a preponderance of
> the evidence that the reasons offered by the employer were
> pretextual. Throughout this burden-shifting process, "the ultimate
> burden of persuading the trier of fact that the defendant intentionally
> discriminated against the plaintiff remains at all times with the
> plaintiff."

Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009) (quoting and citing

DiCarlo v. Potter, 358 F.3d 408, 414-15 (6th Cir. 2004) and citing Dews v. A.B.

Dick Co., 231 F.3d 1016, 1020-21 (6th Cir. 2000)).

In employment discrimination cases, "[t]he prima facie showing is not

intended to be onerous." Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d

405, 412 (6th Cir. 2008) (citation omitted). The Sixth Circuit instructs that in

order to establish a *prima facie* case of disparate treatment, a plaintiff must show

that 1) she is a member of a protected class; 2) she was qualified for the position;

3) she was subjected to an adverse employment decision; and 4) she was replaced

by a person outside the protected class, or treated differently than similarly

situated non-protected employees. Vaughn v. Louisville Water Co., 2008 U.S. App.

LEXIS 24224, **16-17, 302 Fed. Appx. 337 (6th Cir. Nov. 24, 2008) (citing

Vincent v. Brewer Co., 514 F.3d 489, 494 (6th Cir. 2007)).

In the present case, the Defendants do not argue that the Plaintiff fails

either the first or second prong of his *prima facie* test; rather, they claim that he has not set forth sufficient proof to create a genuine issue of material fact as to the third and fourth prongs. The Court will begin with a consideration of the fourth prong (whether the Plaintiff was treated differently than similarly situated non-protected employees) and then turn to the third prong.

a.    <u>Whether Plaintiff was Treated Differently than Similarly Situated Non-Protected Employees</u>

The Sixth Circuit states that in order for a plaintiff to demonstrate that a non-protected employee is "similarly situated", he must "prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-protected employee's] employment situation." <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 352 (6th Cir. 1998) (quoting <u>Pierce v. Commonwealth Life Ins. Co.</u>, 40 F.3d 796, 802 (6th Cir. 1994)) (alteration in original). Further-more, in order to be deemed similarly situated, "the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." <u>Id.</u> (quoting <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 583 (6th Cir. 1992)).

The following sets forth the ways in which the Plaintiff contends that SuperValu discriminated against him, as well as the individuals with whom he

seeks to compare his treatment (if any), for each alleged instance of discrimination

- Supervisor Gibson reprimanding Bush for keeping time records in accordance with Gibson's previous directions. *The Plaintiff points to no similarly situated employees, as to this alleged incident.*

- Supervisor Doran giving Bush a verbal reprimand for putting items in the wrong slot, while white co-worker Prechtl was not disciplined for putting things in the wrong slot. *The Plaintiff attempts to compare his situation with that of white co-worker Prechtl, who worked on a different shift and had a different supervisor than Bush.*

- Supervisor Dunwoodie telling Bush and three black co-workers to get back to work when they were talking after their shift had started, but not telling white co-worker Gardner to get back to work. *The Plaintiff attempts to compare his situation with that of white co-worker Gardner, but does not know what Gardner's job was nor the name of his supervisor.*

- Supervisor Dunwoodie holding open a temporary job assignment, in contravention of company policy, for white co-worker Seedle, who was not present during the job assignment meeting, rather than offering the job to Bush, who was next in line for the assignment. *The Plaintiff attempts to compare his situation with that of white co-worker Seedle, who was apparently also supervised by Dunwoodie.*

The Court concludes that the Plaintiff has not set forth sufficient evidence to create a genuine issue of material fact, as to whether the individuals with whom he seeks to compare his treatment were similarly situated, with regard to any of his claims except the claim regarding Dunwoodie holding open a temporary job assignment for white co-worker Seedle, rather than offering the assignment to Bush. The Court will, therefore, proceed to an analysis of the third prong of the *prima facie* case (whether the alleged action constituted an adverse employment

action), with regard to this remaining disparate treatment claim.

b.  Whether the Alleged Misconduct Constituted an Adverse Employment Action

The third prong of the *prima facie* case of disparate treatment requires a plaintiff to establish that he suffered an adverse employment action.  "An adverse employment action is an action by the employer that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" White v. Baxter Healthcare Corp., 533 F.3d 381, 402 (6th Cir. 2008) (quoting Burlington Industries v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257 (1998)), cert. denied, 129 S. Ct. 2380 (2009).  Stated another way, an adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002) (quotation omitted). Thus, the Court must discern whether the Plaintiff's remaining alleged adverse employment action constitutes a materially adverse change in the terms or conditions of his employment.

As to the Plaintiff's claim pertaining to the supervisor giving the temporarily vacant job to a less senior employee than the Plaintiff, the Court concludes that the Plaintiff has not pointed to sufficient evidence to demonstrate that this was an adverse employment action.  The Plaintiff has pointed to no evidence to indicate

that the reassignment would have included a salary or work hour change and the Sixth Circuit has held that "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." Kocsis v. Multi-Care Mgmt., 97 F.3d 876, 885 (6th Cir. 1996) (citing Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir. 1987)).

In sum, the Plaintiff has not set forth sufficient facts to create a genuine issue of material fact as to any part of his disparate treatment claims. Thus, the Court SUSTAINS the Defendants' Motion for Summary Judgment (Doc. #78), with regard to the disparate treatment claims, under Title VII (Count I), § 1981 (part of Count II) and Ohio law (Count III).

      B.    <u>Hostile Environment, under 42 U.S.C. § 1981 (remaining part of Count II) and under Ohio Law (Count V)</u>

Bush brings hostile work environment claims against all Defendants, under § 1981 (remaining part of Count II) and Ohio law (Count V). Doc. #3 (Am. Compl.). He submits that he suffered a hostile work environment based on his race, at the hands of supervisors, co-workers and unknown perpetrators, to wit: in approximately 1985, co-worker Jordan telling Bush that his nickname was "Buckwheat"; in approximately 1985, co-worker Walker telling Bush that "Tom Bird is a nigger but you are not a nigger"; in approximately 1988-1989, seeing the words "nigger go back" written on a wooden skid; in approximately 2002-2003,

union steward Minton telling Bush that if, hypothetically, an employee called another employee "nigger", the union would defend the name-caller; while attempting to get information regarding a leave of absence, in 2003, manager Gunderson raised his voice at Bush and told him to get out of his office and manager Zimmerman told Bush she did not have time to talk to him; in 2006, seeing the word "nigger" written on a bathroom wall; at an unknown time, co-worker Uhrig telling Bush that some employees "consider it a gang" when three or four black employees are together; and on an unknown date, seeing a drawing of O.J. Simpson running from a police car.[11]

---

[11]The Court relies only on the acts of harassment that allegedly happened to the Plaintiff or of which the Plaintiff was otherwise aware, and, as to the latter, only for those which one or the other of the parties has pointed to admissible evidence in support thereof.  The Court is aware that the Sixth Circuit has instructed that courts must consider the "totality of circumstances" when deciding cases such as the present. Jackson v. Quanex Corp., 191 F.3d 647, 660 (6th Cir. 1999).

In Jackson v. Quanex Corp., the Appellate Court directed that the "totality of circumstances" approach necessitates aggregating alleged acts of harassment towards minority employees, in cases such as the present one. Id.  In so doing, the Appellate Court pointed to the Supreme Court's decision in Meritor Savings Bank v. Vinson, in stating that "an employer may create a hostile environment for an employee even where it directs its discriminatory acts or practices at the protected group of which the plaintiff is a member, and not just at the plaintiff herself." Jackson, 191 F.3d at 661 (citing Meritor, 477 U.S. 57, 65-66, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)).  Implicit in such a consideration, however, is that the plaintiff in question was aware of the incidents of harassment that were allegedly directed toward other minority employees.  "Evidence of racist conduct affecting African-American employees certainly mattered as to whether the work environment at Quanex was objectively hostile to African Americans, and evidence that Jackson learned of these incidents clearly demonstrated that, as an African American, she subjectively perceived that her work environment was one hostile to her." Id. (emphasis added); see also id. ("We have also credited evidence of racial harassment directed at someone other than the plaintiff when the plaintiff knew a

The Sixth Circuit instructs that courts are to use the same standard when evaluating hostile work environment claims under Title VII, § 1981 and Ohio Revised Code Chapter 4112. <u>Noble v. Brinker Int'l, Inc.</u>, 391 F.3d 715, 720 (6th Cir. 2004). To establish a *prima facie* case of hostile work environment, racial harassment, a plaintiff must point to evidence demonstrating the following:

> (1) [He] is a member of a protected class . . . ; (2) [he] was subjected to harassment, either through words or actions, based on [his protected class]; (3) the harassment had the effect of unreasonably interfering with [his] work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

<u>Gallagher v. C.H. Robinson Worldwide, Inc.</u>, 567 F.3d 263, 270 (6th Cir. 2009) (quoting <u>Grace v. USCAR</u>, 521 F.3d 655, 678 (6th Cir. 2008)).[12] As to the final

---

derogatory term had been used." (emphasis added)).

In the present case, the Plaintiff points to nothing to indicate that he was aware of any of the acts of harassment alleged by the other Plaintiffs in this litigation, other than those set forth above. Nor can the Court infer that this Plaintiff worked in such close proximity with some or all of the other Plaintiffs that he necessarily would have been aware of the acts of harassment alleged to have happened to one or more of them. The Plaintiff states only that the Plaintiffs were "employed, in different capacities, as warehouse workers in SuperValu's Xenia, Ohio facility" (Doc. #92 at 1), yet the Defendants point out that employees at the Xenia facility are assigned to either the "grocery warehouse" or the "perishable warehouse", with different supervisors and on different shifts. Doc. #70 (Gunderson Dep. at 17); Doc. #77-4 (Doran Aff.) ¶ 3. Given that the Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim," <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989), the Court is constricted to considering only those facts pertinent to the present Plaintiff, which are set forth above.

[12]<u>Gallagher</u> was a hostile work environment case, based on sexual harassment, as opposed to racial harassment. The Sixth Circuit applies the same legal standard to both sorts of claims, however. <u>See</u> <u>Ladd v. Grand Trunk Western R.R.</u>, 552 F.3d 495, 500 (6th Cir. 2009).

prong, whether there is a basis for employer liability, such depends on whether the

plaintiff is alleging harassment by supervisors or co-workers.  Quoting from a

Second Circuit case, the Sixth Circuit recently summarized the appropriate analyses

as follows:

> The Supreme Court has ruled that employers are not automatically
> liable for [] harassment perpetrated by their employees. See Burlington
> Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L. Ed.2d
> 633 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct.
> 2275, 141 L. Ed.2d 662 (1998).  Where an employee is the victim of
> [] harassment, including harassment in the form of a hostile work
> environment, by non-supervisory co-workers, an employer's vicarious
> liability depends on the plaintiff showing that the employer knew (or
> reasonably should have known) about the harassment but failed to
> take appropriate remedial action. See Faragher v. City of Boca Raton,
> 524 U.S. at 789; accord Whidbee v. Garzarelli Food Specialties, Inc.,
> 223 F.3d 62, 72 (2d Cir.2000).  Where the harassment is attributed
> to a supervisor with immediate or successively higher authority over
> the employee, a court looks first to whether the supervisor's behavior
> "culminate[d] in a tangible employment action" against the employee,
> Burlington Indus., Inc. v. Ellerth, 524 U.S. at 765, 118 S. Ct. 2257; if
> it did, "the employer will, ipso facto, be vicariously liable," Mack v.
> Otis Elevator Co., 326 F.3d at 124 [(2d Cir. 2003)].  In the absence
> of such tangible action, an employer will still be liable for a hostile
> work environment created by its supervisors unless it successfully
> establishes as an affirmative defense that (a) it "exercised reasonable
> care to prevent and correct promptly any sexually harassing behavior,"
> and (b) "the plaintiff employee unreasonably failed to take advantage
> of any preventive or corrective opportunities provided by the employer
> or to avoid harm otherwise." Burlington Indus., Inc. v. Ellerth, 524
> U.S. at 765, 118 S. Ct. 2257; accord Faragher v. City of Boca Raton,
> 524 U.S. at 807, 118 S. Ct. 2275; Mack v. Otis Elevator Co., 326
> F.3d at 125.

Gallagher, 567 F.3d at 275 (quoting Petrosino v. Bell Atl., 385 F.3d 210, 225 (2d

Cir. 2004)).

   The Defendants, in the present action, do not contest the first prong of the

*prima facie* case.  They do, however, assert that Bush has failed to set forth

sufficient proof as to the second prong, for certain of his assertions of harassment,

and for the third and fourth prongs for all of his assertions.[13]


      1.    <u>Whether the Plaintiff was Subjected to Harassment Based on Race</u>

In order to be actionable as a racial harassment claim, a plaintiff must

demonstrate that he was harassed because of his race. <u>Booker v. Budget

Rent-A-Car Sys.</u>, 17 F. Supp. 2d 735, 743 (M.D. Tenn. 1998).  SuperValu argues

that the following four incidents were not based on race:  (1) union steward

Minton telling Bush that, if hypothetically an employee called another employee

"nigger", the union would defend the name-caller; (2) while attempting to get

information regarding a leave of absence, in 2003, manager Gunderson raising his

voice at Bush and told him to get out of his office and manager Zimmerman telling

Bush she did not have time to talk to him; (3) co-worker Uhrig telling Bush that

some employees "consider it a gang" when three or four black employees are

together; and (4) seeing a drawing of O.J. Simpson running from a police car.  The

---

[13]The Defendants also argue that some of the Plaintiff's allegations of harassment were not "sufficiently related" to the allegations of harassment occurring within the limitations period so as to form one continuous hostile work environment claim. Doc. #78 at 33 n.18.  The Court having concluded that the Plaintiff has not set forth sufficient evidence to create a genuine issue of material fact on his *prima facie* case of harassment, assuming all of the alleged incidents did form one continuous hostile work environment, need not consider the Defendants' argument, on this point.  Thus, the Court does not reach the statute of limitations issue on the allegations constituting the hostile work environment claims.

Court agrees with one of SuperValu's contentions, but disagrees with the others.

Other than Bush's unsubstantiated "feelings" about the same, the facts do not indicate any racial connotation associated with the Gunderson/Zimmerman leave of absence incidents. Given that the Plaintiff has pointed to no facts to show that these incidents were racially based nor any law to suggest such a relationship, the Defendants' arguments pertaining to the same (which the Court notes is the only alleged incident of harassment by a supervisor) are well taken. As to the other allegations, however, the Court notes that other courts have concluded that decidedly racial epithets (such as use of the word "nigger") and suggestions of racial animosity (such as insinuating that a group of black persons necessarily comprised a gang and the potentially racial overtones of the O.J. Simpson drawing) were sufficient to at least create a genuine issue of material fact on the question of whether these incidents were based on race. See e.g., Booker, 17 F. Supp. 2d at 743 (alleging that supervisor referred to black employees as "niggers" and to one black employee as his "whipping boy"). Therefore, the Court will proceed with an analysis of the remaining prongs of the Plaintiff's *prima facie* case.

      2.      <u>Whether Harassment Had Effect of Unreasonably Interfering with Plaintiff's Work Performance and Creating an Objectively Intimidating, Hostile, or Offensive Work Environment</u>

The Sixth Circuit has identified the governing standard for the third prong of a plaintiff's *prima facie* case of harassment as follows:

Conduct that is not severe or pervasive enough to create an
objectively hostile or abusive work environment--an environment that
a reasonable person would find hostile or abusive--is beyond Title VII's
purview.  Likewise, if the victim does not subjectively perceive the
environment to be abusive, the conduct has not actually altered the
conditions of the victim's employment, and there is no Title VII
violation.

Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 273 (6th Cir. 2009)

(quoting Williams v. GMC, 187 F.3d 553, 566 (6th Cir. 1999) (which quoted

Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22, 114 S. Ct. 367, 126 L. Ed.

2d 295 (1993)).  The Supreme Court states that, in making these assessments,

courts must consider "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's work performance."

Harris, 510 U.S. at 23.  Further, in order to constitute a "change in the terms and

conditions of employment", conduct must be "extreme".  Faragher v. City of Boca

Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

     In the present case, SuperValu contends that the incidents that arguably

reflect racial animus were not severe and pervasive enough to alter the terms and

conditions of Bush's employment.  As to the objective view of the facts, SuperValu

argues that the alleged incidents of harassment occurred over a span of greater

than twenty years, most were not directed at Bush and none of them was

physically threatening.  As to the subjective view of the facts, SuperValu argues

that although Bush vaguely claims that he was unable to meet his own personal

performance goals, "he admits that he always met company expectations, as defined by his job description." Doc. #78 at 39 (citing Doc. #73-3 (Bush Dep. at 181-85)).[14]  Further, SuperValu asserts that, although Bush claims to have suffered "anxiety" and "low self-esteem," he concedes that this was due to the incident involving Gunderson and the leave of absence, which was not "based on race." Id. at 39-40 (citing Doc. #73-3 (Bush Dep. at 179-80)).  In response, Bush argues that it is the decades-long history of regular harassment that defines his treatment as severe and pervasive.  Further, Bush argues that his filing of the present lawsuit, along with the fact that he recalls the incidents in question years after they happened, is evidence that he subjectively considered his mistreatment to be severe and pervasive.

In resolving the question presently before it, the Court will turn to factually similar cases decided by the Sixth Circuit.  In Smith v. Leggett Wire Co., the Appellate Court found that the following facts were not "severe or pervasive enough" to create an objectively hostile work environment:  "a racial slur in 1974 by an unknown co-worker, a racially offensive and obscene cartoon passed around in the late 1980's or early 1990's by one who was not involved in Smith's

_____

[14]Here and in the following sentence, the Court merely paraphrases the Defendants' argument and does not necessarily note agreement that the argument is supported by the cited Deposition materials.  Given its ultimate conclusion that the Plaintiff has not set forth sufficient evidence to create a genuine issue of material fact as to the objective requirements of his *prima facie* case, however, the Court need not analyze the accuracy of the parties' arguments pertaining to the subjective part of that test.

termination decision, Bobby Guy's racist joke sometime after 1993, and supervisor Ronnie Curry's reference to a black employee as a 'gorilla'." Smith, 220 F.3d 752, 760 (6th Cir. 2000) ("Racial animus cannot be inferred from a handful of discriminatory comments by low-level employees, most of which were not directed at Smith, over a twenty-year span of time.").

Conversely, in Jackson v. Quanex Corp., the Appellate Court found the following facts probative of a severe and pervasively hostile work environment: the "persistent use" of racial slurs, by supervisors (including supervisors regularly referring to black employees as "colored" or "boys", a supervisor stating that the company "did not want blacks inside of the electric shop", another supervisor telling a new hire "you're working for a nigger now, boy did you get screwed" and a supervisor opening a meeting with the comment "we are up to our asses in nigger sludge"), the pervasive presence of graffiti in the workplace (including graffiti in the women's restroom "depicting a male and a female and accompanied by comments comparing the penis sizes of white and black males," graffiti in the men's restroom "depicting lynchings accompanied by the phrase, 'KKK is back'," graffiti on the back door that said "blacks out back," graffiti in the seam grinding area that "depicted the lynching of African-American men," graffiti in the restrooms on 25-30 occasions and graffiti on worker's lockers); and incidents of extreme racial misconduct (including calling a new hire "nigger" and "motherfucker", and after he reported these comments, telling him, "Nigger, we

want you to quit your job . . . ."; defacing a work shirt with the words "Nigger Sucker"; hanging "Black O'Lantern" and "Sambo" drawings near a worker's machine; tampering with acid valves in an attempt to create a safety hazard that would appear to be attributable to a minority worker, and a co-worker calling another co-worker a "nigger bitch" and physically assaulting her). <u>Jackson</u>,191 F.3d 647, 651-55, 62 (6th Cir. 1999).

SuperValu also points the Court to the Sixth Circuit's unpublished opinion in <u>Kelly v. Senior Centers, Inc.</u>, wherein the Court found that the following incidents of misconduct, which occurred over four months, did not amount to actionable harassment: "two staff members' use of the pejorative slur word 'nigger' referring to the foster grandparents; Dangelo's description of a Board Member as a 'token black' and her comments that the foster grandparents were slovenly or were 'pigs' at meals, and her alleged tolerance of others' conduct; Gee's three racist 'jokes'; and comments about an African-American staff member's bathroom habits." <u>Kelly</u>, 2006 U.S. App. LEXIS 3139, **16, 32, 169 Fed. Appx. 423 (6th Cir. Feb. 8, 2006).  In concluding its findings, the Court stated, "[w]hile we believe that a single utterance of a deeply offensive word is, as a matter of social conscience, a single time too many, it is clear from the record that such conduct in front of Kelly was not a daily or even a weekly event." <u>Id.</u> at *17.

SuperValu also cites <u>Bourini v. Bridgestone/Firestone North American Tire, L.L.C.</u>, 2005 U.S. App. LEXIS 5194, 136 Fed. Appx. 747 (6th Cir. Mar. 30,

2005), in support of its position. In <u>Bourini</u>, a Muslim employee alleged that the following incidents of national origin and religious harassment took place at his place of employment: (1) a co-worker said, "I don't want to … see your camel tied to my wheels;" (2) a co-worker called him a "camel jockey;" (3) soon after the September 11 attacks, a co-worker attempted to back over him while reversing a forklift; (4) a co-worker said, "If it were up to [me], they would . . . put [plaintiff] in a box and send [him] back to [his] country;" (5) a co-worker said, "If you'd get the sand out of your ears you'll hear me better;" (6) a co-worker mocked plaintiff's voice over the intercom system; (7) someone painted Islamic slurs on the restroom wall; (8) someone left a Christian pamphlet at plaintiff's work station entitled, "For my Muslim Friend;" and (9) the human resources department sent an email relating to plaintiff's immigration status to all employees. <u>Id.</u> at **2-5. The Appellate Court concluded that these incidents "were not sufficiently pervasive to establish an abusive working environment." <u>Id.</u> at *10. Because the incidents were spread out over a five year period, the Court found them to be "relatively infrequent and isolated incidents" that were "insufficient to constitute discriminatory changes in the terms and conditions of employment." <u>Id.</u>

In the present case, Bush alleges seven instances of harassment over a period that spanned greater than twenty years--three of which (Jordan telling Bush that his nickname was "Buckwheat", Walker telling Bush that "Tom Bird is a nigger but you are not a nigger" and seeing the words "nigger go back" written on a

wooden skid) happened more than 18 years prior to the taking of Bush's deposition, two of which (Minton telling Bush that if, hypothetically, an employee called another employee "nigger", the union would defend the name-caller and seeing the word "nigger" written on a bathroom wall) happened within five years of Bush's deposition and two of which (Uhrig telling Bush that some employees "consider it a gang" when three or four black employees are together and Bush seeing the O.J. Simpson drawing) happened at unknown times. While this conduct is reprehensible, the Court cannot conclude that it is sufficiently severe and pervasive, as a matter of law, to be said to have altered the conditions of Bush's employment. The incidents are closest in severity and pervasiveness to those in Bourini v. Bridgestone/Firestone North American Tire, L.L.C., *supra*, which the Sixth Circuit found to be insufficient to constitute discriminatory changes in the terms and conditions of employment, as explained above. Thus, regardless of whether he subjectively found that the alleged incidents created a hostile work environment, Bush has failed to set forth sufficient facts to create a genuine issue of material fact as to the objective component of the third prong of his *prima facie* case of race-based harassment. Nevertheless, in an abundance of deference to the Plaintiff, as the non-moving party in this case, the Court will proceed to an analysis of the fourth prong of the *prima facie* case, whether there exists some basis for liability on the part of the employer.

3. <u>Whether There Exists Some Basis for Liability on the Part of the Employer</u>

As noted above, in order to satisfy the fourth prong of a *prima facie* case of hostile work environment, a plaintiff must point to evidence demonstrating that there exists some basis for liability on the part of the employer. <u>Gallagher v. C.H. Robinson Worldwide, Inc.</u>, 567 F.3d 263, 270 (6th Cir. 2009). If the alleged harassment was at the hands of non-supervisors (such as the remaining allegations of harassment in the present case), the employer will not be liable unless the plaintiff points to evidence, which demonstrates that "the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." <u>Id.</u> at 275.

In the present case, Bush only reported two of the seven alleged acts of harassment, both of which happened in approximately 1985, to wit:  Jordan telling Bush that his nickname was "Buckwheat" (Bush reported this to supervisor Kessler, who laughed, but neither Jordan nor any other employee ever called Bush "Buckwheat" after this initial conversation) and Walker telling Bush that "Tom Bird is a nigger but you are not a nigger" (Bush reported this to supervisor Kessler; Bush does not know whether Walker was disciplined for the comment).  Although Bush has set forth evidence indicating that SuperValu knew of the alleged harassment, he has pointed to no evidence to indicate that SuperValu failed to take appropriate remedial action (i.e., testimony from a human resources representative or information from personnel files showing that the alleged harassers were not

36

punished for their misconduct).  Because the Plaintiff has not satisfied his burden to set forth evidence indicating that the employer knew about the harassment but failed to take appropriate remedial action, SuperValu cannot be held liable for the same.

In sum, therefore, the Plaintiff has failed to establish a genuine issue of material fact as to all of the elements of his *prima facie* case of hostile work environment based on race.  Therefore, the Court SUSTAINS the Defendants' Motion for Summary Judgment (Doc. #78), as to Bush's hostile work environment claim, under § 1981 (remaining part of Count II) and Ohio law (Count V).

### C.    Retaliation, in violation of Title VII and/or Ohio law (Count IV)

As Count IV in his Amended Complaint, Bush asserts a claim for retaliation, in violation of Title VII and/or Ohio law (against SuperValu, as to Title VII, and against all Defendants, as to the Ohio claim). Doc. #3 (Am. Compl.) ¶¶ 60-64. These claims are limited to allegations of retaliation that occurred after the filing of Bush's EEO Complaint. Doc. #31.

In order to prove both a federal and state law claim of retaliation, absent direct evidence of retaliatory discrimination, a plaintiff must show the following:

(1) [he] engaged in activity protected by Title VII;

(2) this exercise of protected rights was known to defendant;

(3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and

(4) there was a causal connection between the protected activity and the adverse employment action or harassment.

Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 595 (6th Cir. 2007) (citing Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)); see also Putney v. Contract Bldg. Components, 2009 Ohio App. LEXIS 5634, **30-31, 2009 Ohio 6718 (Ohio 3rd App. Dist. Dec. 21, 2009). In their memorandum in support of their Motion for Summary Judgment, the Defendants state that they are entitled to summary judgment on this claim, because Bush admitted that he experienced no retaliation and also because he has set forth no facts to support his retaliation claim. Doc. #78 at 43.

It is true that Bush conceded that he experienced no retaliation for engaging in activity protected by Title VII. Doc. #73-3 (Bush Dep. at 193-94). It is also true that Bush makes no argument nor presents any facts in support of his retaliation claim. See Doc. #92 (Mem. Opp'n). Because the Plaintiff has pointed to no facts to support his retaliation claim, there is no genuine issue of material fact as to the same and the Defendants' Motion for Summary Judgment (Doc. #78) is SUSTAINED, as to Count IV.

D.    Respondeat Superior (Count VI)

As Count VI in his Amended Complaint, Bush alleges that SuperValu is

liable for the actions of the individual Defendants, under the theory of respondeat superior. Doc. #3 (Am. Compl.) ¶¶ 74-77.  In their memorandum in support of their Motion for Summary Judgment, the Defendants correctly argue that respondeat superior is not a separate theory of recovery, but, rather, is conceptually a component of the various discrimination claims set forth above (e.g., employer liability component of hostile work environment claim).  Therefore, the Defendants' Motion for Summary Judgment (Doc. #78) is SUSTAINED, as to Count VI.

IV.    Conclusion

The Defendants' Motion for Summary Judgment (Doc. #78) is SUSTAINED, in its entirety.  Judgment is ultimately to be entered on behalf of Defendants against Plaintiff Bush, at the conclusion of this litigation.

March 31, 2010

    /s/ Walter Herbert Rice      
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Counsel of record