IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DION BERRYMAN, et al.                    :

    Plaintiffs,                          :
                                               Case No. 3:05cv169

        vs.                          :
                                           JUDGE WALTER HERBERT RICE

SUPERVALU HOLDINGS, INC., et al.,        :

    Defendants.                          :


---

**DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AS TO PLAINTIFF LEROY THOMPSON (DOC.
#80); JUDGMENT TO ULTIMATELY ENTER IN FAVOR OF
DEFENDANTS AGAINST PLAINTIFF LEROY THOMPSON**

---


The Plaintiffs in this litigation are African-American employees of SuperValu

Holdings, Inc. ("SuperValu"). Doc. #3 (Am. Compl.) ¶¶ 3-13. The Plaintiffs

originally brought suit as a class action, but subsequently stipulated to the

dismissal, with prejudice, of all class action claims set forth in the Amended

Complaint, leaving only the eleven individually named Plaintiffs.[1] Doc. #23. The

---

[1]The Amended Complaints lists the Plaintiffs as follows: Dion Berryman,
Robert Bush, Lemenzo Clegg, Andre Hightower, Kevin Huff, Ricardo Hughly,
Ronald Lanton, Roosevelt Leverett, Albert Robinson, Jesse Smith and Leroy
Thompson. Doc. #3 (Am. Compl.). The Deposition of Ricardo "Hughley", which
has been signed by Mr. Hughley, contains a different spelling for that Plaintiff's
name. The Court will, therefore, use the spelling as indicated in Mr. Hughley's
Deposition.

Defendants are SuperValu and several individually named SuperValu employees, all of whom serve in a supervisory capacity.[2] Id. ¶¶ 14-22. The Amended Complaint sets forth six causes of action, to wit: (1) race discrimination, under 42 U.S.C. §§ 2000e - 2000e-17 ("Title VII"); (2) hostile environment and disparate treatment, under 42 U.S.C. § 1981; (3) race discrimination, under Ohio Revised Code §§ 4112.02, 4112.99; (4) retaliation, in violation of Title VII and/or Ohio law; (5) hostile environment, under federal and Ohio law; and (6) respondeat superior. Id. ¶¶ 39-77. The Complaint appears to allege all claims, except the sixth, against all Defendants.[3] The sixth is brought against SuperValu alone.

The Defendants previously moved for dismissal on some of the Plaintiffs' claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. #14. In ruling on that Motion, the Court dismissed the following Title VII claims: (1) race-based harassment; (2) retaliation occurring prior to the filing of the Plaintiffs' EEOC charges, and (3) all claims against the individual Defendants. Doc. #31.

---

[2]The Amended Complaint lists the individual Defendants as follows: Peter Gunderson, Rick Zoll, Fred Dunwoodie, Cindy Keyes, John Schultz, Tim Doran, Sue Zimmerman and Carol Gibson. Doc. #3 (Am. Compl.). The Deposition of John "Schulcz", which has been signed by Mr. Schulcz, contains a different spelling for that Defendant's name. The Court will, therefore, use the spelling as indicated in Mr. Schulcz's Deposition.

[3]The Amended Complaint does not specify against which Defendant(s) each claim is brought, but each cause of action uses the plural word "Defendants." See Doc. #3 (Am. Compl.).

Presently before the Court is a Motion for Summary Judgment, as to the remaining claims brought by Leroy Thompson ("Plaintiff"). Doc. #80. In his response to said Motion, the Plaintiff clarifies that he is not bringing a § 1981 claim against the individual Defendants. Doc. #92 at 4. Thus, at this stage of the litigation, the following claims remain: (1) race discrimination (disparate treatment), under Title VII (against SuperValu) (Count I); (2) hostile environment and disparate treatment, under 42 U.S.C. § 1981 (against SuperValu) (Count II); (3) race discrimination, under Ohio Revised Code §§ 4112.02, 4112.99 (against all Defendants) (Count III); (4) retaliation, in violation of Title VII and/or Ohio law (against SuperValu, as to Title VII, and against all Defendants as to Ohio claim) (Count IV); (5) hostile environment, under Ohio law[4] (against all Defendants) (Count V); and (6) respondeat superior (against SuperValu) (Count VI). The Defendants have moved for summary judgment on all of Thompson's claims. Doc. #80.

The Court will begin its analysis of the Defendants' Motion with an overview of the pertinent facts. It will then turn to a review of the standard that guides its summary judgment decisions, followed by an analysis of the merits of the Defendants' Motion.

_____

[4]As to the Plaintiff's federal hostile environment claim, the Court's earlier opinion (Doc. #31) clarified that the surviving Title VII claim is limited to disparate treatment. Further, the Plaintiff has indicated that it is bringing a hostile environment claim, under 42 U.S.C. § 1981, as Count II. Therefore, in order to reduce redundancy of claims, the Court has removed the reference to federal claims, in Count V.

3

I.     Facts[5]

SuperValu hired Thomspon in 1973. Doc. #62-1 (Thomspon Dep. at 11).

Since that time, Thompson worked in various jobs, including order selector, loader,

forklift operator and custodian. Doc. #80-2 (Schulcz Aff.) ¶ 3.  Thompson retired

from SuperValu in 2006. Doc. #62-1 (Thomspon Dep. at 14).


A.     Collective Bargaining Agreement and Anti Harassment/Discrimination
        Policy

As a member of the local union, Thompson's employment terms are covered

by the collective bargaining agreement ("CBA") between SuperValu and the union.

Doc. #62-1 (Thomspon Dep. at 14); Doc. #62, Ex. #2 (CBA).  Some of the

specifics covered by the CBA include the following:

---

[5]Since this case comes before the Court on the Defendants' Motion for
Summary Judgment, the Court sets forth the facts and circumstances giving rise to
such Motion in the manner most favorable to the Plaintiff, as the party against
whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments,
475 F.3d 783, 790 (6th Cir. 2007).
    The Court has spent an inordinate amount of time organizing the facts, in
this case.  Not only did the Defendants file an excessively long memorandum in
support of their Motion for Summary Judgment (36 pages, not including table of
contents or summary of arguments) (Doc. #80), but they also set forth the majority
of their lengthy factual assertions in single-spaced footnotes, in small font.  In
doing so, the Defendants have set forth far more facts than the Plaintiff.  In
drafting the present Opinion, the Court has relied upon those facts pointed to by
the Plaintiff, in opposition to the Defendants' Motion (Doc. #92), as well as facts
generally set forth in the Amended Complaint (Doc. #3), which have been
expounded upon by the Defendants.  As to the facts raised by the Defendants, but
not relied upon by the Plaintiff in either the Amended Complaint or memorandum in
opposition to the Motion for Summary Judgment, the Court considers those facts
inapplicable to the present case.

- <u>Job Bidding</u>.  Bargaining unit jobs are awarded by seniority.  Job openings are posted for five days and are then filled with the qualified employee with the most seniority. Doc. #62-8 (CBA) at 12.

- <u>Overtime Assignments</u>.  Overtime assignments are made to the most senior employee who volunteers and is qualified.  If an insufficient number of employees volunteer, then the most junior qualified employees are required to work the overtime. Doc. #62-9 (CBA) at 1-2.

- <u>Nondiscrimination</u>. The CBA protects members against discrimination on the basis of race, as well as other protected characteristics. Doc. #62-10 at 4.

- <u>Grievance and Arbitration Procedure</u>. The CBA provides grievance and arbitration procedures, which allow members to file a grievance for complaints arising over the interpretation or application of Agreement." Doc. #62-8 at 17-19.

Besides the CBA's nondiscrimination provision, SuperValu has an Anti Harassment and Discrimination Policy, with reporting requirements for employees who experience harassing or discriminatory behavior. Doc. #80-4.  SuperValu also has conducted training for all employees and distributes periodic memoranda and notices to remind employees that workplace harassment will not be tolerated. Doc. #80-2 (Schulcz Aff.) ¶ 5, Attachs. C-D.

B.    <u>Facts Specific to the Plaintiff's Disparate Treatment Claim</u>

The parties set forth the following facts pertinent to Thompson's disparate treatment claim:

- <u>Alleged Disparate Treatment with Regard to Discipline</u>
  - In the 1970s, SuperValu terminated black co-worker Jones for playing on

5

the intercom system, but did not discipline various white co-workers for the same. Doc. #62-1 (Thompson Dep. at 45-51).

- Between the late 1980s and early 1990s, an unidentified supervisor wrote up Thompson for attendance problems, but Thompson does not believe that white co-worker Morris, who had a different supervisor, was written up for the same misconduct. Doc. #62-2 (Thompson Dep. at 148-51).
- In the early 1990s, black co-worker Lanton was disciplined for running a forklift into a wall, but various white co-workers were not disciplined for the same misconduct. Doc. #62-1 (Thompson Dep. at 53-60).
- In the early 1990s, black co-worker Clegg was written up for "mispicks" while unidentified white employees were not. Doc. #62-3 (Thompson Dep. at 179-81).

- <u>Alleged Disparate Treatment with Regard to Break Times</u>
  - In the early 1990s, supervisor Reibold came into the breakroom and announced, "gentlemen, time for you to get back to work." Doc. #62-1 (Thompson Dep. at 79-80).  Thompson assumes that Reibold was talking only to the black employees because he looked in the direction of the table where the black employees were playing cards, although both white and black employees went back to work after hearing the comment. <u>Id.</u> at 80-82.

- <u>Alleged Disparate Treatment in Job Assignments/Overtime</u>
  - While working as a forklift operator, Thompson was given extra "pull-down" assignments that should have been given to unidentified, junior employees. Doc. #62-2 (Thompson Dep. at 117-18).  At his deposition, Thompson was not asked for a date of this incident, nor did he volunteer one. <u>See</u> <u>id.</u>
  - In the early 1990s, SuperValu began offering fewer upgrades and less overtime to all bargaining unit employees. Doc. #62-2 (Thompson Dep. at 128-31).  Thompson believes SuperValu's actions were motivated by the fact that he and other black employees finally had the seniority needed to be first in line for these desirable assignments. <u>Id.</u> at 125-29.  Thompson never filed a grievance or complained to management about this. <u>Id.</u> at 132.
  - In 2004, an unidentified supervisor held an assignment open for white employee Newton who was in another breakroom at the time the assignments were being offered, rather than offering the same to black co-worker Leverett, who was next on the list and was present. Doc. #62-2 (Thompson Dep. at 156-59).
  - In 2005, supervisor Keyes gave extra work to black co-worker Clegg,

which should have been completed by white co-worker Walker. Doc. #62-3 (Thompson Dep. at 162-67).

- <u>Alleged Disparate Treatment with Regard to Training</u>
  - In the early 1980s, an unidentified white co-worker received truck driver training earlier than black co-worker Sanford. Doc. #62-2 (Thompson Dep. at 100-04).[6]

C. <u>Facts Specific to the Plaintiff's Hostile Work Environment Claim</u>

The parties set forth the following facts pertinent to Thompson's hostile work

environment claim:

- In approximately 1992, Thompson saw graffiti on the bathroom walls and on a piece of cardboard in the warehouse, that contained the words "nigger" and "Uncle Tom," and included a drawing of a penis. Doc. #62-1 (Thompson Dep. at 22-32). Thompson did not report the incident to management, but the graffiti was eventually removed. <u>Id.</u> at 34-36.
- In the early 1990s, Thompson overheard white co-worker Thorne say that black co-worker Turner looked like the carton character Magilla Gorilla, and also saw a drawing that seemed to depict Magilla Gorilla with Thorne's name written on it. Doc. #62-2 (Thompson Dep. at 87-89). Thompson did not report these incidents to management, but the drawing was eventually removed. <u>Id.</u> at 89-91; Doc. #92-1 at 3.
- In 2005, white co-worker Copfer stated that blacks did not coach very many professional sports teams because they were "not smart enough," and that white quarterback Joe Montana was superior to black quarterback Doug Williams. Thompson did not report these incidents. Doc. #62-2 (Thompson Dep. at 119-23).

---

[6]Thompson also makes the following allegation, for which he does not provide an exception to the hearsay rule of evidentiary exclusion:

- In the late 1990s, black co-worker Smith complained to Thompson that he (Smith) was getting inappropriate custodial assignments. Doc. #62-3 (Thompson Dep. at 189-92).

Because the Plaintiff points to no exceptions to the hearsay rule, which would allow the Court to consider this assertion, it will not consider the same when ruling herein.

- In 2005, Thompson overheard white co-worker Brown use the word "nigger" while talking to other white co-workers. Thompson did not report this incident. Doc. #62-1 (Thompson Dep. at 65-72).
- In 2006, white co-worker Copfer told Thompson, "[y]ou're not white, that's why you have to do more." Doc. #62-2 (Thompson Dep. at 113-14).


II.  <u>Summary Judgment Standard</u>

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Id.</u> at 323; <u>see also</u> <u>Boretti v. Wiscomb</u>, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." <u>Talley v. Bravo Pitino Rest., Ltd.</u>, 61 F.3d 1241, 1245 (6th Cir. 1995); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. <u>Celotex</u>, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." <u>Mich. Prot. & Advocacy Serv., Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" <u>Hancock v. Dodson</u>, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. <u>Anderson</u>, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining

9

whether there is a genuine issue of material fact), "[a] district court is not . . .

obligated to wade through and search the entire record for some specific facts that

might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889

F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S.

Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v.

Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506

U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift

through the record in search of evidence to support a party's opposition to

summary judgment . . . .").  Thus, a court is entitled to rely, in determining

whether a genuine issue of material fact exists on a particular issue, only upon

those portions of the verified pleadings, depositions, answers to interrogatories and

admissions on file, together with any affidavits submitted, specifically called to its

attention by the parties.


III.    Legal Analysis

    A.    Disparate Treatment, under Title VII (Count I), under 42 U.S.C.
       § 1981 (part of Count II) and under Ohio Law (Count III)

Thompson brings race discrimination claims against SuperValu, based on the

theory of disparate treatment, under Title VII (Count I), § 1981 (part of Count II)

and Ohio law (Count III). Doc. #3 (Am. Compl.).  He also alleges disparate

treatment against the individual Defendants, under Ohio law (Count III). Id.

At the onset, the Court notes that both parties have relied upon certain

10

factual allegations, in support of their arguments for and against Thompson's disparate treatment claim, which pertain to the alleged disparate treatment of other employees, rather than to the alleged disparate treatment of Thompson.  Because a disparate treatment claim, in a non-class action suit, is an individual claim wherein an employee is alleging that his employer discriminated against <u>him</u> because of his race, rather than that the employer discriminated against <u>another employee</u> because of his or her race, see <u>Upshaw v. Ford Motor Co.</u>, 576 F.3d 576, 584 (6th Cir. 2009) (setting forth *prima facie* case of race discrimination claim, which focuses entirely on alleged disparate treatment of plaintiff), the Court will not consider the following factual allegations, in analyzing Thompson's disparate treatment claim:

- Terminating black co-worker Jones for playing on the intercom system

- Disciplining black co-worker Lanton for running a forklift into a wall

- Disciplining black co-worker Clegg for "mispicks"

- Not offering job assignment to black co-worker Leverett

- Giving extra work to black co-worker Clegg

- Untimely offering truck driver training to black co-worker Sanford

The Court will now proceed with an analysis of the Defendants' Motion, as it pertains to the alleged disparate treatment of Thompson, with the remaining applicable factual assertions.

1.    Whether Certain Claims are Time Barred

SuperValu initially argues that certain of the Plaintiff's disparate treatment claims are time barred.  Initially, the Court notes that the proper starting point for this analysis is the date that each discrete discriminatory act occurred. See AMTRAK v. Morgan, 536 U.S. 101, 110-11, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).  In other words, in a disparate treatment context (as opposed to a hostile work environment context),[7] a plaintiff may not "convert[] related discrete acts into a single unlawful practice for the purposes of timely filing." Id. at 111.  As to the extent that discrete acts of discrimination that fall outside the applicable statute of limitations are helpful or harmful to a plaintiff's case, the Supreme Court instructs as follows:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges

_____

[7]In contrast, plaintiffs may convert related discrete acts into an unlawful practice, for purposes of timely filing in the hostile work environment context.  As explained by the Supreme Court,

> Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.  The "unlawful employment practice" therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

Morgan, 536 U.S. at 115 (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-349 (3d ed. 1996); Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)).

alleging that act. . . .  The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.  Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

Id. at 113.  Relying on the final sentence quoted above, the Plaintiff correctly argues that this Court may consider, even if untimely, "prior acts as background evidence in support of a timely claim." Id.  In sum, therefore, although the Court will not take outdated acts into consideration for purposes of determining whether those acts constitute disparate treatment, it will take them into consideration as background evidence in considering timely acts of alleged discrimination.  Having established that the starting point for its statute of limitations analysis is each discrete act of discrimination, the Court will proceed with its analysis of the proper time periods within which to examine the allegedly discriminatory conduct.

As to the Title VII claim, the Defendants correctly point out that Title VII requires complainants to file a claim with the Equal Opportunity Employment Commission ("EEOC") within 300 days after each discrete act of alleged discrimination. 42 U.S.C. § 2000e-5(e)(1); see also Russell v. Ohio, 2008 U.S. App. LEXIS 24531, *9, 302 Fed. Appx. 386 (6th Cir. Dec. 3, 2008) (noting that in a "'deferral' state such as Ohio, any instance giving rise to a Title VII claim must have occurred within 300 days of [the filing of the EEOC claim]") (citing Amini v. Oberlin College, 259 F.3d 493, 498 (6th Cir. 2001)).  In the present case, the

Plaintiff filed his EEOC claim on August 20, 2004. Doc. #3-11 (Thompson EEOC Charge). Therefore, as to the Plaintiff's Title VII claim, the Court will not consider allegations of discrete acts of disparate treatment that occurred prior to October 25, 2003 (300 days prior to the filing of the EEOC claim on August 20, 2004).

As to the Plaintiff's § 1981 claim, such has a four year statute of limitations.[8] 28 U.S.C. § 1658(a); see also Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004). Thus, for purposes of the Plaintiff's § 1981 claim, the Court will not consider allegations of discrete acts of disparate treatment that occurred prior to May 17, 2001 (four years prior to the

_____

[8]The Defendants argue that claims arising in Ohio, under § 1981, are subject to a two year statute of limitations. Doc. #80 at 15. Such was the law prior to 2004. See Bd. of Regents v. Tomanio, 446 U.S. 478, 483, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980) (noting that when Congress does not establish a statute of limitations, courts typically "borrow" the state law statute of limitations governing analogous causes of action); Nelson v. GE, 2001 U.S. App. LEXIS 1145, **7-8, 2 Fed. Appx. 425 (6th Cir. Jan. 17, 2001) (recognizing two year statute of limitations for such claims). However, in 2004, the Supreme Court decided Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004), which recognized that Congress had enacted 28 U.S.C. § 1658(a), establishing a four year statute of limitations period for "civil action[s] arising under an Act of Congress enacted after the date of the enactment of this section [enacted Dec. 1, 1990]." Id. at 375. The Court further concluded that the plaintiff's claims for hostile work environment, wrongful termination, and failure-to-transfer "'ar[ose] under' the 1991 Act in the sense that petitioners' causes of action were made possible by that Act," given that the 1991 Act overturned case law precedent that previously held that "racial harassment relating to the conditions of employment is not actionable under § 1981." Id. at 383 (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 171, 105 L Ed 2d 132, 109 S Ct 2363 (1989)). Thus, the current Plaintiff's § 1981 claim for race discrimination (as well as hostile work environment) is covered by the § 1658 four year statute of limitations. See also Dandy v. UPS, 388 F.3d 263, 269 (7th Cir. Wis. 2004) (applying § 1658's four year statute of limitations period to disparate treatment and hostile work environment claims, based on Jones).

filing date of May 16, 2005).

Finally, with regard to the Plaintiff's claim under Ohio Revised Code §§ 4112.02, 4112.99, "the statute of limitations for bringing a lawsuit under § 4112 is six years." <u>Harrison v. City of Akron</u>, 2002 U.S. App. LEXIS 16263, *5, 43 Fed. Appx. 903, 905 (6th Cir. Aug. 8, 2002) (citing Ohio Rev. Code §§ 2305.07, 4112.99; <u>Cosgrove v. Williamsburg of Cincinnati Mgmt. Co.</u>, 70 Ohio St. 3d 281, 638 N.E.2d 991, 992 (Ohio 1994)). Thus, for purposes of the Plaintiff's Ohio claim, the Court will not consider allegations of discrete acts of disparate treatment that occurred prior to May 17, 1999 (six years prior to the filing date of May 16, 2005).

In sum, therefore, for purposes of analyzing the Plaintiff's Title VII claim, the Court will only consider allegations of discrete acts of disparate treatment that occurred from and after October 25, 2003. With regard to the § 1981 claim, the Court will only consider allegations of discrete acts of disparate treatment that occurred from and after May 17, 2001, and with regard to the state law claim, from and after May 17, 1999. Thus, the following alleged incidents of disparate treatment are time barred, for purposes of all disparate treatment claims:

- Between the late 1980s and early 1990s, Thompson being written up for attendance problems

- In the early 1990s, supervisor Reibold coming into the breakroom and directing a "back to work" instruction to black workers

- In the early 1990s, SuperValu offering fewer upgrades and less

15

> overtime to all bargaining unit employees, allegedly based on
> the fact that black employees finally had the seniority needed
> for these desirable assignments

Based on the one remaining factual allegation, which is timely, the Court will now turn to a consideration of whether the Plaintiff has pointed to sufficient evidence to create a genuine issue of material fact, as to the various elements of his disparate treatment claim.

2.    Disparate Treatment - Burden Shifting Analysis

Absent direct evidence of discrimination, the Court initially notes that courts analyze all three of the Plaintiff's disparate treatment claims (under Title VII, § 1981 and Ohio law) using the burden shifting framework, as set forth by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). E.g., Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009) (race discrimination claim under Title VII); Amini v. Oberlin College, 440 F.3d 350, 358 (6th Cir. 2006) (race discrimination claim under § 1981); Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm., 66 Ohio St. 2d 192, 197 (Ohio 1981) (race discrimination claim under Ohio Revised Code Chapter 4112).  The Sixth Circuit provides the following summary of that analytical framework:

> First, the plaintiff must make out a prima facie case of race
> discrimination, after which the burden shifts to the employer to proffer

a legitimate, nondiscriminatory reason for its decision.  If the employer carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual.  Throughout this burden-shifting process, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009) (quoting and citing

DiCarlo v. Potter, 358 F.3d 408, 414-15 (6th Cir. 2004) and citing Dews v. A.B.

Dick Co., 231 F.3d 1016, 1020-21 (6th Cir. 2000)).

In employment discrimination cases, "[t]he prima facie showing is not

intended to be onerous." Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d

405, 412 (6th Cir. 2008) (citation omitted).  The Sixth Circuit instructs that in

order to establish a *prima facie* case of disparate treatment, a plaintiff must show

that 1) she is a member of a protected class; 2) she was qualified for the position;

3) she was subjected to an adverse employment decision; and 4) she was replaced

by a person outside the protected class, or treated differently than similarly

situated non-protected employees. Vaughn v. Louisville Water Co., 2008 U.S. App.

LEXIS 24224, **16-17, 302 Fed. Appx. 337 (6th Cir. Nov. 24, 2008) (citing

Vincent v. Brewer Co., 514 F.3d 489, 494 (6th Cir. 2007)).

In the present case, the Defendants do not argue that the Plaintiff fails either

the first or second prong of his *prima facie* test; rather, they claim that he has not

set forth sufficient proof to create a genuine issue of material fact as to the third

and fourth prongs.  The Court will begin with a consideration of the fourth prong

17

(whether the Plaintiff was treated differently than similarly situated non-protected employees) and then, if necessary, turn to a consideration of the third prong.

The Sixth Circuit states that in order for a plaintiff to demonstrate that a non-protected employee is "similarly situated", he must "prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-protected employee's] employment situation." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)) (alteration in original). Further-more, in order to be deemed similarly situated, "the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

In the present case, the Plaintiff contends that SuperValu discriminated against him by giving him extra "pull-down" assignments, which should have been given to unidentified, junior employees.[9]  The Plaintiff points to no facts regarding

---

[9]The Plaintiff also attempts to argue that he has satisfied the fourth prong of his disparate treatment *prima facie* case, because of the casual attitude of the supervisors toward the alleged racial harassment.

The supervisors' casual attitude toward harassment, and their own use of racial slurs[] is indicative of the atmosphere of the warehouse. A general working environment that tolerates this sort of harassment

the similarly situated employees, with regard to this allegation.  Because the

Plaintiff has not pointed to sufficient evidence to create a genuine issue of material

fact as to whether the individuals with whom he seeks to compare his treatment

were similarly situated, the Defendants' Motion for Summary Judgment (Doc.

#80), with regard to the disparate treatment claims, under Title VII (Count I),

§ 1981 (part of Count II) and Ohio law (Count III), is SUSTAINED.


      B.    <u>Hostile Environment, under 42 U.S.C. § 1981 (remaining part of
Count II) and under Ohio Law (Count V)</u>

Thompson brings hostile work environment claims against all Defendants,

under § 1981 (remaining part of Count II) and Ohio law (Count V). Doc. #3 (Am.

Compl.).  He submits that he suffered a hostile work environment based on his

race, at the hands of co-workers and unknown perpetrators, to wit:[10]  in

---

is evidence that implies a discriminatory reason for the adverse
employment actions experienced by the Plaintiffs.

Doc. #92 (Mem. Opp'n) at 16.  While this sort of argument is not applicable to a
disparate treatment claim, the Court will consider the same when assessing the
Plaintiff's hostile work environment claim below.

[10]The Court relies only on the acts of harassment that allegedly happened to
the Plaintiff or of which the Plaintiff was otherwise aware, and, as to the latter,
only for those which one or the other of the parties has pointed to admissible
evidence in support thereof.  The Court is aware that the Sixth Circuit has
instructed that courts must consider the "totality of circumstances" when deciding
cases such as the present. <u>Jackson v. Quanex Corp.</u>, 191 F.3d 647, 660 (6th Cir.
1999).

In <u>Jackson v. Quanex Corp.</u>, the Appellate Court directed that the "totality
of circumstances" approach necessitates aggregating alleged acts of harassment

approximately 1992, seeing graffiti on the bathroom walls and on a piece of

cardboard in the warehouse, that contained the words "nigger" and "Uncle Tom,"

and included a drawing of a penis (harassment by unknown perpetrator); in the

early 1990s, hearing white co-worker Thorne say that black co-worker Turner

looked like the carton character Magilla Gorilla and also seeing a drawing that

---

towards minority employees, in cases such as the present one. Id.  In so doing, the Appellate Court pointed to the Supreme Court's decision in Meritor Savings Bank v. Vinson, in stating that "an employer may create a hostile environment for an employee even where it directs its discriminatory acts or practices at the protected group of which the plaintiff is a member, and not just at the plaintiff herself." Jackson, 191 F.3d at 661 (citing Meritor, 477 U.S. 57, 65-66, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)).  Implicit in such a consideration, however, is that the plaintiff in question was aware of the incidents of harassment that were allegedly directed toward other minority employees.  "Evidence of racist conduct affecting African-American employees certainly mattered as to whether the work environment at Quanex was objectively hostile to African Americans, and evidence that Jackson learned of these incidents clearly demonstrated that, as an African American, she subjectively perceived that her work environment was one hostile to her." Id. (emphasis added); see also id. ("We have also credited evidence of racial harassment directed at someone other than the plaintiff when the plaintiff knew a derogatory term had been used." (emphasis added)).

In the present case, the Plaintiff points to nothing to indicate that he was aware of any of the acts of harassment alleged by the other Plaintiffs in this litigation, other than those set forth above.  Nor can the Court infer that this Plaintiff worked in such close proximity with some or all of the other Plaintiffs that he necessarily would have been aware of the acts of harassment alleged to have happened to one or more of them.  The Plaintiff states only that the Plaintiffs were "employed, in different capacities, as warehouse workers in SuperValu's Xenia, Ohio facility" (Doc. #92 at 1), yet the Defendants point out that employees at the Xenia facility are assigned to either the "grocery warehouse" or the "perishable warehouse", with different supervisors and on different shifts. Doc. #70 (Gunderson Dep. at 17); Doc. #77-4 (Doran Aff.) ¶ 3.  Given that the Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim," InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), the Court is constricted to considering only those facts pertinent to the present Plaintiff, which are set forth above.

seemed to depict Magilla Gorilla with Thorne's name written on it (harassment by co-worker and unknown perpetrator); in 2005, white co-worker Copfer stating that blacks did not coach very many professional sports teams because they were "not smart enough," and that white quarterback Joe Montana was superior to black quarterback Doug Williams (harassment by co-worker); in 2005, hearing white co-worker Brown use the word "nigger" while talking to other white co-workers (harassment by co-worker); and in 2006, white co-worker Al Copfer telling Thompson, "[y]ou're not white, that's why you have to do more" (harassment by co-worker).

The Sixth Circuit instructs that courts are to use the same standard when evaluating hostile work environment claims under Title VII, § 1981 and Ohio Revised Code Chapter 4112. Noble v. Brinker Int'l, Inc., 391 F.3d 715, 720 (6th Cir. 2004).  To establish a *prima facie* case of hostile work environment, racial harassment, a plaintiff must point to evidence demonstrating the following:

> (1) [He] is a member of a protected class . . . ; (2) [he] was subjected to harassment, either through words or actions, based on [his protected class]; (3) the harassment had the effect of unreasonably interfering with [his] work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 270 (6th Cir. 2009) (quoting Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008)).[11]  As to the final

---

[11]Gallagher was a hostile work environment case, based on sexual harassment, as opposed to racial harassment.  The Sixth Circuit applies the same

prong, whether there is a basis for employer liability, such depends on whether the plaintiff is alleging harassment by supervisors or co-workers. Quoting from a Second Circuit case, the Sixth Circuit recently summarized the appropriate analyses as follows:

> The Supreme Court has ruled that employers are not automatically liable for [] harassment perpetrated by their employees. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L. Ed.2d 633 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L. Ed.2d 662 (1998). Where an employee is the victim of [] harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action. See Faragher v. City of Boca Raton, 524 U.S. at 789; accord Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir.2000). Where the harassment is attributed to a supervisor with immediate or successively higher authority over the employee, a court looks first to whether the supervisor's behavior "culminate[d] in a tangible employment action" against the employee, Burlington Indus., Inc. v. Ellerth, 524 U.S. at 765, 118 S. Ct. 2257; if it did, "the employer will, ipso facto, be vicariously liable," Mack v. Otis Elevator Co., 326 F.3d at 124 [(2d Cir. 2003)]. In the absence of such tangible action, an employer will still be liable for a hostile work environment created by its supervisors unless it successfully establishes as an affirmative defense that (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington Indus., Inc. v. Ellerth, 524 U.S. at 765, 118 S. Ct. 2257; accord Faragher v. City of Boca Raton, 524 U.S. at 807, 118 S. Ct. 2275; Mack v. Otis Elevator Co., 326 F.3d at 125.

Gallagher, 567 F.3d at 275 (quoting Petrosino v. Bell Atl., 385 F.3d 210, 225 (2d

---

legal standard to both sorts of claims, however. See Ladd v. Grand Trunk Western R.R., 552 F.3d 495, 500 (6th Cir. 2009).

Cir. 2004)).

The Defendants, in the present action, do not contest the first or second prongs of the *prima facie* case.[12] They do, however, assert that Thompson has failed to set forth sufficient proof as to the third and fourth prongs for all of his assertions.[13]

The Sixth Circuit has identified the governing standard for the third prong of a plaintiff's *prima facie* case of harassment as follows:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 273 (6th Cir. 2009) (quoting Williams v. GMC, 187 F.3d 553, 566 (6th Cir. 1999) (which quoted

---

[12]In their memorandum in support of their Motion for Summary Judgment, the Defendants actually do argue that certain of the Plaintiff's anticipated allegations do not satisfy the second prong of his *prima facie* case (i.e., they are not based on race), but the Plaintiff does not ultimately rely on any of those stated allegations. Doc. #80 at 28; Doc. #92 at 5-13; Doc. #92-1 at 3.

[13]The Defendants also argue that some of the Plaintiff's allegations of harassment were not "sufficiently related" to the allegations of harassment occurring within the limitations period so as to form one continuous hostile work environment claim. Doc. #80 at 25 n.19.  The Court having concluded that the Plaintiff has not set forth sufficient evidence to create a genuine issue of material fact on his *prima facie* case of harassment, assuming all of the alleged incidents did form one continuous hostile work environment, need not consider the Defendants' argument, on this point.  Thus, the Court does not reach the statute of limitations issue on the allegations constituting the hostile work environment claims.

<u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21-22, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).  The Supreme Court states that, in making these assessments, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  <u>Harris</u>, 510 U.S. at 23.  Further, in order to constitute a "change in the terms and conditions of employment", conduct must be "extreme".  <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

In the present case, SuperValu contends that the incidents that arguably reflect racial animus were not severe and pervasive enough to alter the terms and conditions of Thompson's employment.  As to the objective view of the facts, SuperValu argues that the alleged incidents of harassment occurred over a span of greater than twenty years, most were not directed at Thompson and none of them was physically threatening.  As to the subjective view of the facts, SuperValu asserts that Thompson did not regard the workplace as hostile or abusive, as evidenced by his concession that he has always been able to effectively perform his job. Doc. #62-3 (Thompson Dep. at 194).  In response, Thompson argues that it is the decades-long history of regular harassment that defines his treatment as severe and pervasive.  Further, Thompson argues that his filing of the present lawsuit, along with the fact that he recalls the incidents in question years after they happened, is evidence that he subjectively considered his mistreatment to be

severe and pervasive.

In resolving the question presently before it, the Court will turn to factually similar cases decided by the Sixth Circuit.  In Smith v. Leggett Wire Co., the Appellate Court found that the following facts were not "severe or pervasive enough" to create an objectively hostile work environment:  "a racial slur in 1974 by an unknown co-worker, a racially offensive and obscene cartoon passed around in the late 1980's or early 1990's by one who was not involved in Smith's termination decision, Bobby Guy's racist joke sometime after 1993, and supervisor Ronnie Curry's reference to a black employee as 'gorilla'." Smith, 220 F.3d 752, 760 (6th Cir. 2000) ("Racial animus cannot be inferred from a handful of discriminatory comments by low-level employees, most of which were not directed at Smith, over a twenty-year span of time.").

Conversely, in Jackson v. Quanex Corp., the Appellate Court found the following facts probative of a severe and pervasively hostile work environment: the "persistent use" of racial slurs, by supervisors (including supervisors regularly referring to black employees as "colored" or "boys", a supervisor stating that the company "did not want blacks inside of the electric shop", another supervisor telling a new hire "you're working for a nigger now, boy did you get screwed" and a supervisor opening a meeting with the comment "we are up to our asses in nigger sludge"), the pervasive presence of graffiti in the workplace (including graffiti in the women's restroom "depicting a male and a female and accompanied

25

by comments comparing the penis sizes of white and black males," graffiti in the men's restroom "depicting lynchings accompanied by the phrase, 'KKK is back'," graffiti on the back door that said "blacks out back," graffiti in the seam grinding area that "depicted the lynching of African-American men," graffiti in the restrooms on 25-30 occasions and graffiti on worker's lockers); and incidents of extreme racial misconduct (including calling a new hire "nigger" and "motherfucker", and after he reported these comments, telling him, "Nigger, we want you to quit your job . . . ."; defacing a work shirt with the words "Nigger Sucker"; hanging "Black O'Lantern" and "Sambo" drawings near a worker's machine; tampering with acid valves in an attempt to create a safety hazard that would appear to be attributable to a minority worker, and a co-worker calling another co-worker a "nigger bitch" and physically assaulting her). Jackson,191 F.3d 647, 651-55, 62 (6th Cir. 1999).

SuperValu also points the Court to the Sixth Circuit's unpublished opinion in Kelly v. Senior Centers, Inc., wherein the Court found that the following incidents of misconduct, which occurred over four months, did not amount to actionable harassment: "two staff members' use of the pejorative slur word 'nigger' referring to the foster grandparents; Dangelo's description of a Board Member as a 'token black' and her comments that the foster grandparents were slovenly or were 'pigs' at meals, and her alleged tolerance of others' conduct; Gee's three racist 'jokes'; and comments about an African-American staff member's bathroom habits." Kelly,

2006 U.S. App. LEXIS 3139, **16, 32, 169 Fed. Appx. 423 (6th Cir. Feb. 8, 2006).  In concluding its findings, the Court stated, "[w]hile we believe that a single utterance of a deeply offensive word is, as a matter of social conscience, a single time too many, it is clear from the record that such conduct in front of Kelly was not a daily or even a weekly event." Id. at *17.

SuperValu also cites Bourini v. Bridgestone/Firestone North American Tire, L.L.C., 2005 U.S. App. LEXIS 5194, 136 Fed. Appx. 747 (6th Cir. Mar. 30, 2005), in support of its position.  In Bourini, a Muslim employee alleged that the following incidents of national origin and religious harassment took place at his place of employment:  (1) a co-worker said, "I don't want to … see your camel tied to my wheels;" (2) a co-worker called him a "camel jockey;" (3) soon after the September 11 attacks, a co-worker attempted to back over him while reversing a forklift; (4) a co-worker said, "If it were up to [me], they would . . . put [plaintiff] in a box and send [him] back to [his] country;" (5) a co-worker said, "If you'd get the sand out of your ears you'll hear me better;" (6) a co-worker mocked plaintiff's voice over the intercom system; (7) someone painted Islamic slurs on the restroom wall; (8) someone left a Christian pamphlet at plaintiff's work station entitled, "For my Muslim Friend;" and (9) the human resources department sent an email relating to plaintiff's immigration status to all employees. Id. at **2-5.  The Appellate Court concluded that these incidents "were not sufficiently pervasive to establish an abusive working environment." Id. at *10.  Because the incidents were spread

out over a five year period, the Court found them to be "relatively infrequent and isolated incidents" that were "insufficient to constitute discriminatory changes in the terms and conditions of employment." Id.

In the present case, Thompson alleges several incidents of misconduct, some of which occurred in the early 1990s (i.e., racial graffiti in bathroom and warehouse; Magilla Gorilla comment and drawing) and some of which occurred in 2005 and 2006 (racially offensive comments pertaining to black sports figures; use of word "nigger" by co-worker; co-worker's statement that "[y]ou're not white, that's why you have to do more"). While this conduct is reprehensible, the Court cannot conclude that it is sufficiently severe and pervasive, as a matter of law, to be said to have altered the conditions of Thompson's employment. The incidents are not nearly as severe or pervasive as those in Bourini v. Bridgestone/Firestone North American Tire, L.L.C., *supra*, which the Sixth Circuit found to be insufficient to constitute discriminatory changes in the terms and conditions of employment, as explained above. Thus, regardless of whether he subjectively found that the alleged incidents created a hostile work environment, Thompson has failed to set forth sufficient facts to create a genuine issue of material fact as to the objective component of the third prong of his *prima facie* case of race-based harassment. Given that the Plaintiff has not satisfied the third prong of his *prima facie* case of harassment, the Court finds it unnecessary to determine whether he has pointed to sufficient evidence to satisfy the fourth prong (whether there exists some basis for

liability on the part of the employer).

In sum, therefore, the Plaintiff has failed to establish a genuine issue of material fact as to all of the elements of his *prima facie* case of hostile work environment based on race. Therefore, the Court SUSTAINS the Defendants' Motion for Summary Judgment (Doc. #80), as to Thompson's hostile work environment claim, under § 1981 (remaining part of Count II) and Ohio law (Count V).

C.     Retaliation, in violation of Title VII and/or Ohio law (Count IV)

As Count IV in his Amended Complaint, Thompson asserts a claim for retaliation, in violation of Title VII and/or Ohio law (against SuperValu, as to Title VII, and against all Defendants, as to the Ohio claim). Doc. #3 (Am. Compl.) ¶¶ 60-64. These claims are limited to allegations of retaliation that occurred after the filing of Thompson's EEO Complaint. Doc. #31.

In order to prove both a federal and state law claim of retaliation, absent direct evidence of retaliatory discrimination, a plaintiff must show the following:

(1) [he] engaged in activity protected by Title VII;

(2) this exercise of protected rights was known to defendant;

(3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and

(4) there was a causal connection between the protected activity and the adverse employment action or harassment.

Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 595 (6th Cir. 2007) (citing

Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)); see

also Putney v. Contract Bldg. Components, 2009 Ohio App. LEXIS 5634, **30-

31, 2009 Ohio 6718 (Ohio 3rd App. Dist. Dec. 21, 2009).  In their memorandum in

support of their Motion for Summary Judgment, the Defendants state that they are

entitled to summary judgment on this claim, because Thompson admitted that he

experienced no retaliation and also because he has set forth no facts to support his

retaliation claim. Doc. #80 at 41-42.

It is true that Thompson conceded that he experienced no retaliation for

engaging in activity protected by Title VII. Doc. #62-3 (Thompson Dep. at 206).  It

is also true that Thompson makes no argument nor presents any facts in support of

his retaliation claim. See Doc. #92 (Mem. Opp'n).  Because the Plaintiff has

pointed to no facts to support his retaliation claim, there is no genuine issue of

material fact as to the same and the Defendants' Motion for Summary Judgment

(Doc. #80) is SUSTAINED, as to Count IV.


D.    Respondeat Superior (Count VI)

As Count VI in his Amended Complaint, Thompson alleges that SuperValu is

liable for the actions of the individual Defendants, under the theory of respondeat

superior. Doc. #3 (Am. Compl.) ¶¶ 74-77.  In their memorandum in support of

their Motion for Summary Judgment, the Defendants correctly argue that respondeat superior is not a separate theory of recovery, but, rather, is conceptually a component of the various discrimination claims set forth above (e.g., employer liability component of hostile work environment claim). Therefore, the Defendants' Motion for Summary Judgment (Doc. #80) is SUSTAINED, as to Count VI.

IV. Conclusion

The Defendants' Motion for Summary Judgment (Doc. #80) is SUSTAINED, in its entirety. Judgment is ultimately to be entered on behalf of Defendants against Plaintiff Thompson, at the conclusion of this litigation.

March 31, 2010

        ___/s/ Walter Herbert Rice_____
        WALTER HERBERT RICE, JUDGE
Copies to:        UNITED STATES DISTRICT COURT
Counsel of record