IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DION BERRYMAN, et al.                    :

    Plaintiffs,                          :
                                              Case No. 3:05cv169

        vs.                           :
                                              JUDGE WALTER HERBERT RICE

SUPERVALU HOLDINGS, INC., et al.,        :

    Defendants.                          :


---

**DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AS TO PLAINTIFF RICARDO HUGHLEY (DOC.
#82); JUDGMENT TO ULTIMATELY ENTER IN FAVOR OF
DEFENDANTS AGAINST PLAINTIFF RICARDO HUGHLEY**

---


      The Plaintiffs in this litigation are African-American employees of SuperValu

Holdings, Inc. ("SuperValu"). Doc. #3 (Am. Compl.) ¶¶ 3-13. The Plaintiffs

originally brought suit as a class action, but subsequently stipulated to the

dismissal, with prejudice, of all class action claims set forth in the Amended

Complaint, leaving only the eleven individually named Plaintiffs.[1] Doc. #23. The

---

[1] The Amended Complaints lists the Plaintiffs as follows: Dion Berryman,
Robert Bush, Lemenzo Clegg, Andre Hightower, Kevin Huff, Ricardo Hughly,
Ronald Lanton, Roosevelt Leverett, Albert Robinson, Jesse Smith and Leroy
Thompson. Doc. #3 (Am. Compl.). The Deposition of Ricardo "Hughley", which
has been signed by Mr. Hughley, contains a different spelling for that Plaintiff's
name. The Court will, therefore, use the spelling as indicated in Mr. Hughley's
Deposition.

Defendants are SuperValu and several individually named SuperValu employees, all of whom serve in a supervisory capacity.[2] Id. ¶¶ 14-22.  The Amended Complaint sets forth six causes of action, to wit:  (1) race discrimination, under 42 U.S.C. §§ 2000e - 2000e-17 ("Title VII"); (2) hostile environment and disparate treatment, under 42 U.S.C. § 1981; (3) race discrimination, under Ohio Revised Code §§ 4112.02, 4112.99; (4) retaliation, in violation of Title VII and/or Ohio law; (5) hostile environment, under federal and Ohio law; and (6) respondeat superior. Id. ¶¶ 39-77.  The Complaint appears to allege all claims, except the sixth, against all Defendants.[3]  The sixth is brought against SuperValu alone.

The Defendants previously moved for dismissal on some of the Plaintiffs' claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. #14.  In ruling on that Motion, the Court dismissed the following Title VII claims:  (1) race-based harassment; (2) retaliation occurring prior to the filing of the Plaintiffs' EEOC charges, and (3) all claims against the individual Defendants. Doc. #31.

---

[2]The Amended Complaint lists the individual Defendants as follows:  Peter Gunderson, Rick Zoll, Fred Dunwoodie, Cindy Keyes, John Schultz, Tim Doran, Sue Zimmerman and Carol Gibson. Doc. #3 (Am. Compl.).  The Deposition of John "Schulcz", which has been signed by Mr. Schulcz, contains a different spelling for that Defendant's name.  The Court will, therefore, use the spelling as indicated in Mr. Schulcz's Deposition.

[3]The Amended Complaint does not specify against which Defendant(s) each claim is brought, but each cause of action uses the plural word "Defendants." See Doc. #3 (Am. Compl.).

Presently before the Court is a Motion for Summary Judgment, as to the remaining claims brought by Ricardo Hughley ("Plaintiff"). Doc. #82. In his response to said Motion, the Plaintiff clarifies that he is not bringing a § 1981 claim against the individual Defendants. Doc. #92 at 4. Thus, at this stage of the litigation, the following claims remain: (1) race discrimination (disparate treatment), under Title VII (against SuperValu) (Count I); (2) hostile environment and disparate treatment, under 42 U.S.C. § 1981 (against SuperValu) (Count II); (3) race discrimination, under Ohio Revised Code §§ 4112.02, 4112.99 (against all Defendants) (Count III); (4) retaliation, in violation of Title VII and/or Ohio law (against SuperValu, as to Title VII, and against all Defendants as to Ohio claim) (Count IV); (5) hostile environment, under Ohio law[4] (against all Defendants) (Count V); and (6) respondeat superior (against SuperValu) (Count VI). The Defendants have moved for summary judgment on all of Hughley's claims. Doc. #82.

The Court will begin its analysis of the Defendants' Motion with an overview of the pertinent facts. It will then turn to a review of the standard that guides its summary judgment decisions, followed by an analysis of the merits of the Defendants' Motion.

---

[4]As to the Plaintiff's federal hostile environment claim, the Court's earlier opinion (Doc. #31) clarified that the surviving Title VII claim is limited to disparate treatment. Further, the Plaintiff has indicated that it is bringing a hostile environment claim, under 42 U.S.C. § 1981, as Count II. Therefore, in order to reduce redundancy of claims, the Court has removed the reference to federal claims, in Count V.

3

I.    <u>Facts</u>[5]

SuperValu hired Hughley in 1978. Doc. #67-1 (Hughley Dep. at 9-10).

Since that time, Hughley has worked in various jobs, including ticket worker,

custodian, loader and forklift operator. Id. at 10-12.


A.    Collective Bargaining Agreement and Anti Harassment/Discrimination
      Policy

As a member of the local union, Hughley's employment terms are covered

by the collective bargaining agreement ("CBA") between SuperValu and the union.

Doc. #67-1 (Hughley Dep. at 12-13); Ex. #2 (CBA). Some of the specifics covered

by the CBA include the following:

- Job Bidding. Bargaining unit jobs are awarded by seniority. Job
  openings are posted for five days and are then filled with the

---

[5]Since this case comes before the Court on the Defendants' Motion for
Summary Judgment, the Court sets forth the facts and circumstances giving rise to
such Motion in the manner most favorable to the Plaintiff, as the party against
whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments,
475 F.3d 783, 790 (6th Cir. 2007).

The Court has spent an inordinate amount of time organizing the facts, in
this case. Not only did the Defendants file a long memorandum in support of their
Motion for Summary Judgment (24 pages, not including table of contents or
summary of arguments) (Doc. #82), but they also set forth the majority of their
lengthy factual assertions in single-spaced footnotes, in small font. In doing so,
the Defendants have set forth far more facts than the Plaintiff. In drafting the
present Opinion, the Court has relied upon those facts pointed to by the Plaintiff, in
opposition to the Defendants' Motion (Doc. #92), as well as facts generally set
forth in the Amended Complaint (Doc. #3), which have been expounded upon by
the Defendants. As to the facts raised by the Defendants, but not relied upon by
the Plaintiff in either the Amended Complaint or memorandum in opposition to the
Motion for Summary Judgment, the Court considers those facts inapplicable to the
present case.

4

qualified employee with the most seniority. Doc. #67-6 (CBA) at 12.

- Overtime Assignments.  Overtime assignments are made to the most senior employee who volunteers and is qualified.  If an insufficient number of employees volunteer, then the most junior qualified employees are required to work the overtime. Doc. #67-7 (CBA) at 1-2.

- Nondiscrimination. The CBA protects members against discrimination on the basis of race, as well as other protected characteristics. Doc. #67-8 at 4.

- Grievance and Arbitration Procedure. The CBA provides grievance and arbitration procedures, which allow members to file a grievance for complaints arising over the interpretation or application of Agreement." Doc. #67-6 at 17-19.

Besides the CBA's nondiscrimination provision, SuperValu has an Anti Harassment and Discrimination Policy, with reporting requirements for employees who experience harassing or discriminatory behavior. Doc. #82-6.  SuperValu also has conducted training for all employees and distributes periodic memoranda and notices to remind employees that workplace harassment will not be tolerated. Doc. #82-4 (Schulcz Aff.) ¶ 4, Attachs. C-D.


B.      Facts Specific to the Plaintiff's Disparate Treatment Claim

The parties set forth the following facts pertinent to Hughley's disparate treatment claim:[6]

_____

[6]Hughley also makes the following allegation, for which he does not provide an exception to the hearsay rule of evidentiary exclusion:

- In August 2004, co-worker Weeks told Hughley that supervisor Hunter told

- In 2005, a performance review was completed on a supervisor Hughley believes was named "Jay", and in this review, the supervisor identified Hughley as the "worst employee on the cold side." Doc. #67-1 (Hughley Dep. at 24-25). Hughley apparently thinks that the supervisor's assertion was based on his race because, in 2003 or 2004, white co-worker Nance told the supervisor that he was not going to "run a pull-down" (implying, perhaps, that Nance should have been named as the "worst employee on the cold side"?).[7] Id. at 26-27.

- In August 2004, Hughley saw a copy of supervisor Christian's performance review, wherein, in response to a stated goal of "address[ing] employee break abuse," Christian's supervisor indicated as follows: "[Christian] has addressed some of the tougher employees on this issue. He confronted Rick Hughley and asked him to go back to work." Doc. #82-10 at 3 (Perf. Eval.); see also Doc. #67-1 (Hughley Dep. at 40-45). Hughley took offense to this comment, stating that although he is "not an angel," he thinks that "ten other guys" should have been named on the review with him. Doc. #67-1 (Hughley Dep. at 45). Hughley met with human resources manager Schulcz and Union Steward Garner to discuss this matter. Id. at 48, 51. Schulcz explained that Hughley was only used as an example of how the supervisor was starting to address "some of the tougher employees" on the issue of break times. Doc. #82-4 (Schulcz Aff.) ¶ 7. Hughley did not file a grievance about this. Doc. #67-2 (Hughley Dep. at 52).


C.   Facts Specific to the Plaintiff's Hostile Work Environment Claim

The parties set forth the following allegation pertinent to Hughley's hostile

work environment claim:  in approximately 1992, co-worker Jolly told supervisor

---

him (Weeks) that he (Hunter) was transferring to day shift just to watch Hughley. Doc. #67-1 (Hughley Dep. at 39, 41-43).

The Plaintiff points to no exceptions to the hearsay rule, which would allow the Court to consider this assertion.  Thus, the Court will not consider the same when ruling herein.

[7]According to SuperValu, it has only ever employed one shift supervisor named "Jay" - - Jay Kessler, who retired from the Company in July 2000. Doc. #82-4 (Schulcz Aff.) ¶ 6.  Further, there is no statement in any of Kessler's performance reviews regarding Hughley. Id.

Harding, "I don't take orders from a nigger." Doc. # 67-1 at 20-23.  Hughley did

not report this incident. Id. at 24.


II.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must

present evidence that creates a genuine issue of material fact making it necessary

to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241,

1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

(1986).  Once the burden of production has so shifted, the party opposing

summary judgment cannot rest on its pleadings or merely reassert its previous

allegations, it is not sufficient to "simply show that there is some metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go

beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . .

obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

III.    Legal Analysis

    A.    Disparate Treatment, under Title VII (Count I), under 42 U.S.C. § 1981 (part of Count II) and under Ohio Law (Count III)

Hughley brings race discrimination claims against SuperValu, based on the theory of disparate treatment, under Title VII (Count I), § 1981 (part of Count II) and Ohio law (Count III). Doc. #3 (Am. Compl.). He also alleges disparate treatment against the individual Defendants, under Ohio law (Count III).[8] Id.

_____

[8]The Defendants argue that Hughley's criticism/monitoring claim involving supervisor "Jay" is time barred under Title VII and § 1981 because, although Hughley testified that the incident occurred in 2005, the supervisor in question

Absent direct evidence of discrimination, the Court initially notes that courts analyze all three of the Plaintiff's disparate treatment claims (under Title VII, § 1981 and Ohio law) using the burden shifting framework, as set forth by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). E.g., Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009) (race discrimination claim under Title VII); Amini v. Oberlin College, 440 F.3d 350, 358 (6th Cir. 2006) (race discrimination claim under § 1981); Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm., 66 Ohio St. 2d 192, 197 (Ohio 1981) (race discrimination claim under Ohio Revised Code Chapter 4112). The Sixth Circuit provides the following summary of that analytical framework:

> First, the plaintiff must make out a prima facie case of race discrimination, after which the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its decision. If the employer carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual. Throughout this burden-shifting process, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the

retired from the company in 2000. Doc. #82 at 14; see also supra note 7. However, viewing the facts in the light most favorable to the Plaintiff as the Court must do at this stage of the litigation, the Plaintiff is unsure whether the supervisor in question was named "Jay". See Doc. #67-1 (Hughley Dep. at 25-26) ("I want to say it was something like Jay. I can't remember his last name. . . ."). Thus, it is unclear whether the supervisor in question is Jay Kessler, who retired in 2000. Therefore, the Court will adopt the Plaintiff's position that the incident in question happened in approximately 2005, and, therefore, the issue of the statute of limitations is not relevant.

plaintiff."

Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009) (quoting and citing

DiCarlo v. Potter, 358 F.3d 408, 414-15 (6th Cir. 2004) and citing Dews v. A.B.

Dick Co., 231 F.3d 1016, 1020-21 (6th Cir. 2000)).

In employment discrimination cases, "[t]he prima facie showing is not

intended to be onerous." Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d

405, 412 (6th Cir. 2008) (citation omitted).  The Sixth Circuit instructs that in

order to establish a *prima facie* case of disparate treatment, a plaintiff must show

that 1) she is a member of a protected class; 2) she was qualified for the position;

3) she was subjected to an adverse employment decision; and 4) she was replaced

by a person outside the protected class, or treated differently than similarly

situated non-protected employees. Vaughn v. Louisville Water Co., 2008 U.S. App.

LEXIS 24224, **16-17, 302 Fed. Appx. 337 (6th Cir. Nov. 24, 2008) (citing

Vincent v. Brewer Co., 514 F.3d 489, 494 (6th Cir. 2007)).

In the present case, the Defendants do not argue that the Plaintiff fails either

the first or second prong of his *prima facie* test; rather, they claim that he has not

set forth sufficient proof to create a genuine issue of material fact as to the third

and fourth prongs.  The Court will begin with a consideration of the fourth prong

(whether the Plaintiff was treated differently than similarly situated non-protected

employees) and then, if necessary, turn to the third prong.

The Sixth Circuit states that in order for a plaintiff to demonstrate that a

11

non-protected employee is "similarly situated", he must "prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-protected employee's] employment situation." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)) (alteration in original). Further- more, in order to be deemed similarly situated, "the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

In the present case, the Plaintiff contends that SuperValu discriminated against him, in two ways,[9] to wit: a supervisor indicating on his (the supervisor's) performance review that Hughley was the "worst employee on the cold side,"

_____

[9]The Plaintiff also attempts to argue that he has satisfied the fourth prong of his disparate treatment *prima facie* case, because of the casual attitude of the supervisors toward the alleged racial harassment.

> The supervisors' casual attitude toward harassment, and their own
> use of racial slurs[] is indicative of the atmosphere of the warehouse.
> A general working environment that tolerates this sort of harassment
> is evidence that implies a discriminatory reason for the adverse
> employment actions experienced by the Plaintiffs.

Doc. #92 (Mem. Opp'n) at 16. While this sort of argument is not applicable to a disparate treatment claim, the Court will consider the same when assessing the Plaintiff's hostile work environment claim below.

rather than naming white co-worker Nance as such, since he refused to run a "pull-down"; and a supervisor indicating (on a subordinate supervisor's performance review) that Hughley was one of the "tougher employees" on the issue of break abuses, rather than including "ten other guys" on the review with Hughley.

With regard to the first allegation, the Plaintiff identifies white co-worker Nance as a similarly situated, non-protected employee, who is apparently also supervised by the same supervisor, but offers no other evidence to prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of Nance's (e.g., whether he was subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish his conduct or the employer's treatment of him for it). Furthermore, as to the second allegation, the Plaintiff offers no facts regarding similarly situated employees. Therefore, the Court concludes that the Plaintiff has not set forth sufficient evidence to create a genuine issue of material fact as to whether the individuals with whom he seeks to compare his treatment were similarly situated, with regard to his disparate treatment allegations.

Given that the Plaintiff has not set forth sufficient evidence to create a genuine issue of material fact, as to the fourth prong of his *prima facie* case of race discrimination, the Court finds it unnecessary to determine whether he has pointed to sufficient evidence to satisfy the third prong (whether the alleged actions constituted adverse employment actions). Thus, the Court SUSTAINS the

13

Defendants' Motion for Summary Judgment (Doc. #82), with regard to the disparate treatment claims, under Title VII (Count I), § 1981 (part of Count II) and Ohio law (Count III).

B.    Hostile Environment, under 42 U.S.C. § 1981 (remaining part of Count II) and under Ohio Law (Count V)

Hughley brings hostile work environment claims against all Defendants, under § 1981 (remaining part of Count II) and Ohio law (Count V). Doc. #3 (Am. Compl.).  He submits that he suffered a hostile work environment based on his race, at the hands of a co-worker, to wit:  in approximately 1992, co-worker Jolly told supervisor Harding, "I don't take orders from a nigger."[10]

---

[10]The Court relies only on the acts of harassment that allegedly happened to the Plaintiff or of which the Plaintiff was otherwise aware, and, as to the latter, only for those which one or the other of the parties has pointed to admissible evidence in support thereof.  The Court is aware that the Sixth Circuit has instructed that courts must consider the "totality of circumstances" when deciding cases such as the present. Jackson v. Quanex Corp., 191 F.3d 647, 660 (6th Cir. 1999).

In Jackson v. Quanex Corp., the Appellate Court directed that the "totality of circumstances" approach necessitates aggregating alleged acts of harassment towards minority employees, in cases such as the present one. Id.  In so doing, the Appellate Court pointed to the Supreme Court's decision in Meritor Savings Bank v. Vinson, in stating that "an employer may create a hostile environment for an employee even where it directs its discriminatory acts or practices at the protected group of which the plaintiff is a member, and not just at the plaintiff herself." Jackson, 191 F.3d at 661 (citing Meritor, 477 U.S. 57, 65-66, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)).  Implicit in such a consideration, however, is that the plaintiff in question was aware of the incidents of harassment that were allegedly directed toward other minority employees.  "Evidence of racist conduct affecting African-American employees certainly mattered as to whether the work environment at Quanex was objectively hostile to African Americans, and evidence that Jackson learned of these incidents clearly demonstrated that, as an African

The Sixth Circuit instructs that courts are to use the same standard when evaluating hostile work environment claims under Title VII, § 1981 and Ohio Revised Code Chapter 4112. <u>Noble v. Brinker Int'l, Inc.</u>, 391 F.3d 715, 720 (6th Cir. 2004). To establish a *prima facie* case of hostile work environment, racial harassment, a plaintiff must point to evidence demonstrating the following:

> (1) [He] is a member of a protected class . . . ; (2) [he] was subjected to harassment, either through words or actions, based on [his protected class]; (3) the harassment had the effect of unreasonably interfering with [his] work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

<u>Gallagher v. C.H. Robinson Worldwide, Inc.</u>, 567 F.3d 263, 270 (6th Cir. 2009)

---

American, she subjectively perceived that her work environment was one hostile to her." <u>Id.</u> (emphasis added); <u>see also</u> <u>id.</u> ("We have also credited evidence of racial harassment directed at someone other than the plaintiff <u>when the plaintiff knew a derogatory term had been used</u>." (emphasis added)).

In the present case, the Plaintiff points to nothing to indicate that he was aware of any of the acts of harassment alleged by the other Plaintiffs in this litigation, other than those set forth above. Nor can the Court infer that this Plaintiff worked in such close proximity with some or all of the other Plaintiffs that he necessarily would have been aware of the acts of harassment alleged to have happened to one or more of them. The Plaintiff states only that the Plaintiffs were "employed, in different capacities, as warehouse workers in SuperValu's Xenia, Ohio facility" (Doc. #92 at 1), yet the Defendants point out that employees at the Xenia facility are assigned to either the "grocery warehouse" or the "perishable warehouse", with different supervisors and on different shifts. Doc. #70 (Gunderson Dep. at 17); Doc. #77-4 (Doran Aff.) ¶ 3. Given that the Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim," <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989), the Court is constricted to considering only those facts pertinent to the present Plaintiff, which are set forth above.

15

(quoting Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008)).[11]  As to the final

prong, whether there is a basis for employer liability, such depends on whether the

plaintiff is alleging harassment by supervisors or co-workers.  Quoting from a

Second Circuit case, the Sixth Circuit recently summarized the appropriate analyses

as follows:

> The Supreme Court has ruled that employers are not automatically
> liable for [] harassment perpetrated by their employees. See Burlington
> Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L. Ed.2d
> 633 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct.
> 2275, 141 L. Ed.2d 662 (1998).  Where an employee is the victim of
> [] harassment, including harassment in the form of a hostile work
> environment, by non-supervisory co-workers, an employer's vicarious
> liability depends on the plaintiff showing that the employer knew (or
> reasonably should have known) about the harassment but failed to
> take appropriate remedial action. See Faragher v. City of Boca Raton,
> 524 U.S. at 789; accord Whidbee v. Garzarelli Food Specialties, Inc.,
> 223 F.3d 62, 72 (2d Cir.2000).  Where the harassment is attributed
> to a supervisor with immediate or successively higher authority over
> the employee, a court looks first to whether the supervisor's behavior
> "culminate[d] in a tangible employment action" against the employee,
> Burlington Indus., Inc. v. Ellerth, 524 U.S. at 765, 118 S. Ct. 2257; if
> it did, "the employer will, ipso facto, be vicariously liable," Mack v.
> Otis Elevator Co., 326 F.3d at 124 [(2d Cir. 2003)].  In the absence
> of such tangible action, an employer will still be liable for a hostile
> work environment created by its supervisors unless it successfully
> establishes as an affirmative defense that (a) it "exercised reasonable
> care to prevent and correct promptly any sexually harassing behavior,"
> and (b) "the plaintiff employee unreasonably failed to take advantage
> of any preventive or corrective opportunities provided by the employer
> or to avoid harm otherwise." Burlington Indus., Inc. v. Ellerth, 524
> U.S. at 765, 118 S. Ct. 2257; accord Faragher v. City of Boca Raton,

---

[11]Gallagher was a hostile work environment case, based on sexual
harassment, as opposed to racial harassment.  The Sixth Circuit applies the same
legal standard to both sorts of claims, however. See Ladd v. Grand Trunk Western
R.R., 552 F.3d 495, 500 (6th Cir. 2009).

> 524 U.S. at 807, 118 S. Ct. 2275; <u>Mack v. Otis Elevator Co.</u>, 326
> F.3d at 125.

<u>Gallagher</u>, 567 F.3d at 275 (quoting <u>Petrosino v. Bell Atl.</u>, 385 F.3d 210, 225 (2d

Cir. 2004)).

The Defendants, in the present action, do not contest the first or second

prong of the *prima facie* case. They do, however, assert that Hughley has failed to

set forth sufficient proof as to the third and fourth prongs for his assertion of

harassment. The Court will turn first to an analysis of the third prong and then, if

necessary, to the fourth.[12]

The Sixth Circuit has identified the governing standard for the third prong of

a plaintiff's *prima facie* case of harassment as follows:

> Conduct that is not severe or pervasive enough to create an
> objectively hostile or abusive work environment--an environment that
> a reasonable person would find hostile or abusive--is beyond Title VII's
> purview. Likewise, if the victim does not subjectively perceive the
> environment to be abusive, the conduct has not actually altered the
> conditions of the victim's employment, and there is no Title VII
> violation.

<u>Gallagher v. C.H. Robinson Worldwide, Inc.</u>, 567 F.3d 263, 273 (6th Cir. 2009)

---

[12]The Defendants also argue that some of the Plaintiff's allegations of harassment were not "sufficiently related" to the allegations of harassment occurring within the limitations period so as to form one continuous hostile work environment claim. Doc. #82 at 22 n.8. The Court having concluded that the Plaintiff has not set forth sufficient evidence to create a genuine issue of material fact on his *prima facie* case of harassment, assuming all of the alleged incidents did form one continuous hostile work environment, need not consider the Defendants' argument, on this point. Thus, the Court does not reach the statute of limitations issue on the allegations constituting the hostile work environment claims.

(quoting <u>Williams v. GMC</u>, 187 F.3d 553, 566 (6th Cir. 1999) (which quoted

<u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21-22, 114 S. Ct. 367, 126 L. Ed.

2d 295 (1993)).  The Supreme Court states that, in making these assessments,

courts must consider "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's work performance."

<u>Harris</u>, 510 U.S. at 23.  Further, in order to constitute a "change in the terms and

conditions of employment", conduct must be "extreme".  <u>Faragher v. City of Boca

Raton</u>, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

In the present case, SuperValu contends that the one incident that Hughley

alleges was harassment was not severe and pervasive enough to alter the terms

and conditions of his employment.  As to the objective view of the facts,

SuperValu argues that the one alleged incident of harassment occurred in 1992,

was not directed at Hughley and was not physically threatening.  As to the

subjective view of the facts, SuperValu asserts that Hughley did not regard the

workplace as hostile or abusive, as evidenced by his concession that he has always

been able to effectively perform his job. Doc. #67-2 (Hughley Dep. at 65).  In

response, Hughley argues that it is the decades-long history of regular harassment

that defines his treatment as severe and pervasive.  Further, Hughley argues that

his filing of the present lawsuit, along with the fact that he recalls the incidents in

question years after they happened, is evidence that he subjectively considered his

mistreatment to be severe and pervasive.

In resolving the question presently before it, the Court will turn to factually similar cases decided by the Sixth Circuit. In <u>Smith v. Leggett Wire Co.</u>, the Appellate Court found that the following facts were not "severe or pervasive enough" to create an objectively hostile work environment:  "a racial slur in 1974 by an unknown co-worker, a racially offensive and obscene cartoon passed around in the late 1980's or early 1990's by one who was not involved in Smith's termination decision, Bobby Guy's racist joke sometime after 1993, and supervisor Ronnie Curry's reference to a black employee as 'gorilla'." <u>Smith</u>, 220 F.3d 752, 760 (6th Cir. 2000) ("Racial animus cannot be inferred from a handful of discriminatory comments by low-level employees, most of which were not directed at Smith, over a twenty-year span of time.").

Conversely, in <u>Jackson v. Quanex Corp.</u>, the Appellate Court found the following facts probative of a severe and pervasively hostile work environment: the "persistent use" of racial slurs, by supervisors (including supervisors regularly referring to black employees as "colored" or "boys", a supervisor stating that the company "did not want blacks inside of the electric shop", another supervisor telling a new hire "you're working for a nigger now, boy did you get screwed" and a supervisor opening a meeting with the comment "we are up to our asses in nigger sludge"), the pervasive presence of graffiti in the workplace (including graffiti in the women's restroom "depicting a male and a female and accompanied

by comments comparing the penis sizes of white and black males," graffiti in the men's restroom "depicting lynchings accompanied by the phrase, 'KKK is back'," graffiti on the back door that said "blacks out back," graffiti in the seam grinding area that "depicted the lynching of African-American men," graffiti in the restrooms on 25-30 occasions and graffiti on worker's lockers); and incidents of extreme racial misconduct (including calling a new hire "nigger" and "motherfucker", and after he reported these comments, telling him, "Nigger, we want you to quit your job . . . ."; defacing a work shirt with the words "Nigger Sucker"; hanging "Black O'Lantern" and "Sambo" drawings near a worker's machine; tampering with acid valves in an attempt to create a safety hazard that would appear to be attributable to a minority worker, and a co-worker calling another co-worker a "nigger bitch" and physically assaulting her). <u>Jackson</u>,191 F.3d 647, 651-55, 62 (6th Cir. 1999).

SuperValu also points the Court to the Sixth Circuit's unpublished opinion in <u>Kelly v. Senior Centers, Inc.</u>, wherein the Court found that the following incidents of misconduct, which occurred over four months, did not amount to actionable harassment: "two staff members' use of the pejorative slur word 'nigger' referring to the foster grandparents; Dangelo's description of a Board Member as a 'token black' and her comments that the foster grandparents were slovenly or were 'pigs' at meals, and her alleged tolerance of others' conduct; Gee's three racist 'jokes'; and comments about an African-American staff member's bathroom habits." <u>Kelly</u>,

20

2006 U.S. App. LEXIS 3139, **16, 32, 169 Fed. Appx. 423 (6th Cir. Feb. 8, 2006). In concluding its findings, the Court stated, "[w]hile we believe that a single utterance of a deeply offensive word is, as a matter of social conscience, a single time too many, it is clear from the record that such conduct in front of Kelly was not a daily or even a weekly event." Id. at *17.

SuperValu also cites Bourini v. Bridgestone/Firestone North American Tire, L.L.C., 2005 U.S. App. LEXIS 5194, 136 Fed. Appx. 747 (6th Cir. Mar. 30, 2005), in support of its position. In Bourini, a Muslim employee alleged that the following incidents of national origin and religious harassment took place at his place of employment: (1) a co-worker said, "I don't want to … see your camel tied to my wheels;" (2) a co-worker called him a "camel jockey;" (3) soon after the September 11 attacks, a co-worker attempted to back over him while reversing a forklift; (4) a co-worker said, "If it were up to [me], they would . . . put [plaintiff] in a box and send [him] back to [his] country;" (5) a co-worker said, "If you'd get the sand out of your ears you'll hear me better;" (6) a co-worker mocked plaintiff's voice over the intercom system; (7) someone painted Islamic slurs on the restroom wall; (8) someone left a Christian pamphlet at plaintiff's work station entitled, "For my Muslim Friend;" and (9) the human resources department sent an email relating to plaintiff's immigration status to all employees. Id. at **2-5. The Appellate Court concluded that these incidents "were not sufficiently pervasive to establish an abusive working environment." Id. at *10. Because the incidents were spread

out over a five year period, the Court found them to be "relatively infrequent and isolated incidents" that were "insufficient to constitute discriminatory changes in the terms and conditions of employment." Id.

In the present case, Hughley alleges one incident of misconduct over a 15 year period (co-worker Jolly saying to supervisor Harding, "I don't take orders from a nigger"). While this conduct is reprehensible, the Court cannot conclude that it is sufficiently severe and pervasive, as a matter of law, to be said to have altered the conditions of Hughley's employment. This incident is far less severe than the incidents which the Sixth Circuit found to be insufficient to constitute discriminatory changes in the terms and conditions of employment in Smith v. Leggett Wire Co., 220 F.3d 752 (6th Cir. 2000), as explained above. Thus, regardless of whether he subjectively found that the alleged incidents created a hostile work environment, Hughley has failed to set forth sufficient facts to create a genuine issue of material fact as to the objective component of the third prong of his *prima facie* case of race-based harassment. Given that the Plaintiff has not satisfied the third prong of his *prima facie* case of harassment, the Court finds it unnecessary to determine whether he has pointed to sufficient evidence to satisfy the fourth prong (whether there exists some basis for liability on the part of the employer).

In sum, therefore, the Plaintiff has failed to establish a genuine issue of

material fact as to the elements of his *prima facie* case of hostile work environment based on race. Therefore, the Court SUSTAINS the Defendants' Motion for Summary Judgment (Doc. #82), as to Hughley's hostile work environment claim, under § 1981 (remaining part of Count II) and Ohio law (Count V).


      C.      <u>Retaliation, in violation of Title VII and/or Ohio law (Count IV)</u>

      As Count IV in his Amended Complaint, Hughley asserts a claim for retaliation, in violation of Title VII and/or Ohio law (against SuperValu, as to Title VII, and against all Defendants, as to the Ohio claim). Doc. #3 (Am. Compl.) ¶¶ 60-64. These claims are limited to allegations of retaliation that occurred after the filing of Hughley's EEO Complaint. Doc. #31.

      In order to prove both a federal and state law claim of retaliation, absent direct evidence of retaliatory discrimination, a plaintiff must show the following:

      (1) [he] engaged in activity protected by Title VII;

      (2) this exercise of protected rights was known to defendant;

      (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and

      (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

<u>Michael v. Caterpillar Fin. Servs. Corp.</u>, 496 F.3d 584, 595 (6th Cir. 2007) (citing <u>Morris v. Oldham County Fiscal Court</u>, 201 F.3d 784, 792 (6th Cir. 2000)); <u>see also</u> <u>Putney v. Contract Bldg. Components</u>, 2009 Ohio App. LEXIS 5634, **30-

31, 2009 Ohio 6718 (Ohio 3rd App. Dist. Dec. 21, 2009).  In their memorandum in

support of their Motion for Summary Judgment, the Defendants state that they are

entitled to summary judgment on this claim, because Hughley admitted that he

experienced no retaliation and also because he has set forth no facts to support his

retaliation claim. Doc. #82 at 30.

It is true that Hughley conceded that he experienced no retaliation for

engaging in activity protected by Title VII. Doc. #67-2 (Hughley Dep. at 68-69).  It

is also true that Hughley makes no argument nor presents any facts in support of

his retaliation claim. See Doc. #92 (Mem. Opp'n).  Because the Plaintiff has

pointed to no facts to support his retaliation claim, there is no genuine issue of

material fact as to the same and the Defendants' Motion for Summary Judgment

(Doc. #82) is SUSTAINED, as to Count IV.


     D.    <u>Respondeat Superior (Count VI)</u>

As Count VI in his Amended Complaint, Hughley alleges that SuperValu is

liable for the actions of the individual Defendants, under the theory of respondeat

superior. Doc. #3 (Am. Compl.) ¶¶ 74-77.  In their memorandum in support of

their Motion for Summary Judgment, the Defendants correctly argue that

respondeat superior is not a separate theory of recovery, but, rather, is

conceptually a component of the various discrimination claims set forth above

(e.g., employer liability component of hostile work environment claim).  Therefore,

the Defendants' Motion for Summary Judgment (Doc. #82) is SUSTAINED, as to Count VI.

IV.     Conclusion

The Defendants' Motion for Summary Judgment (Doc. #82) is SUSTAINED, in its entirety.  Judgment is ultimately to be entered on behalf of Defendants against Plaintiff Hughley, at the conclusion of this litigation.

March 31, 2010

_____/s/ Walter Herbert Rice_____
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Counsel of record