IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DION BERRYMAN, et al.                    :

    Plaintiffs,                           :
                                         Case No. 3:05cv169

       vs.                               :
                                         JUDGE WALTER HERBERT RICE

SUPERVALU HOLDINGS, INC., et al.,       :

    Defendants.                           :


---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AS TO PLAINTIFF RONALD LANTON (DOC.
#86); JUDGMENT TO ULTIMATELY ENTER IN FAVOR OF
DEFENDANTS AGAINST PLAINTIFF RONALD LANTON

---


      The Plaintiffs in this litigation are African-American employees of SuperValu

Holdings, Inc. ("SuperValu"). Doc. #3 (Am. Compl.) ¶¶ 3-13.  The Plaintiffs

originally brought suit as a class action, but subsequently stipulated to the

dismissal, with prejudice, of all class action claims set forth in the Amended

Complaint, leaving only the eleven individually named Plaintiffs.[1]  Doc. #23.  The

---

[1]The Amended Complaints lists the Plaintiffs as follows:  Dion Berryman,
Robert Bush, Lemenzo Clegg, Andre Hightower, Kevin Huff, Ricardo Hughly,
Ronald Lanton, Roosevelt Leverett, Albert Robinson, Jesse Smith and Leroy
Thompson. Doc. #3 (Am. Compl.).  The Deposition of Ricardo "Hughley", which
has been signed by Mr. Hughley, contains a different spelling for that Plaintiff's
name.  The Court will, therefore, use the spelling as indicated in Mr. Hughley's
Deposition.

Defendants are SuperValu and several individually named SuperValu employees, all of whom serve in a supervisory capacity.[2] Id. ¶¶ 14-22. The Amended Complaint sets forth six causes of action, to wit: (1) race discrimination, under 42 U.S.C. §§ 2000e - 2000e-17 ("Title VII"); (2) hostile environment and disparate treatment, under 42 U.S.C. § 1981; (3) race discrimination, under Ohio Revised Code §§ 4112.02, 4112.99; (4) retaliation, in violation of Title VII and/or Ohio law; (5) hostile environment, under federal and Ohio law; and (6) respondeat superior. Id. ¶¶ 39-77. The Complaint appears to allege all claims, except the sixth, against all Defendants.[3] The sixth is brought against SuperValu alone.

The Defendants previously moved for dismissal on some of the Plaintiffs' claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. #14. In ruling on that Motion, the Court dismissed the following Title VII claims: (1) race-based harassment; (2) retaliation occurring prior to the filing of the Plaintiffs' EEOC charges, and (3) all claims against the individual Defendants. Doc. #31.

---

[2]The Amended Complaint lists the individual Defendants as follows: Peter Gunderson, Rick Zoll, Fred Dunwoodie, Cindy Keyes, John Schultz, Tim Doran, Sue Zimmerman and Carol Gibson. Doc. #3 (Am. Compl.). The Deposition of John "Schulcz", which has been signed by Mr. Schulcz, contains a different spelling for that Defendant's name. The Court will, therefore, use the spelling as indicated in Mr. Schulcz's Deposition.

[3]The Amended Complaint does not specify against which Defendant(s) each claim is brought, but each cause of action uses the plural word "Defendants." See Doc. #3 (Am. Compl.).

Presently before the Court is a Motion for Summary Judgment, as to the remaining claims brought by Ronald Lanton ("Plaintiff"). Doc. #86. In his response to said Motion, the Plaintiff clarifies that he is not bringing a § 1981 claim against the individual Defendants. Doc. #92 at 4. Thus, at this stage of the litigation, the following claims remain: (1) race discrimination (disparate treatment), under Title VII (against SuperValu) (Count I); (2) hostile environment and disparate treatment, under 42 U.S.C. § 1981 (against SuperValu) (Count II); (3) race discrimination, under Ohio Revised Code §§ 4112.02, 4112.99 (against all Defendants) (Count III); (4) retaliation, in violation of Title VII and/or Ohio law (against SuperValu, as to Title VII, and against all Defendants as to Ohio claim) (Count IV); (5) hostile environment, under Ohio law[4] (against all Defendants) (Count V); and (6) respondeat superior (against SuperValu) (Count VI). The Defendants have moved for summary judgment on all of Lanton's claims. Doc. #86.

The Court will begin its analysis of the Defendants' Motion with an overview of the pertinent facts. It will then turn to a review of the standard that guides its summary judgment decisions, followed by an analysis of the merits of the Defendants' Motion.

---

[4]As to the Plaintiff's federal hostile environment claim, the Court's earlier opinion (Doc. #31) clarified that the surviving Title VII claim is limited to disparate treatment. Further, the Plaintiff has indicated that it is bringing a hostile environment claim, under 42 U.S.C. § 1981, as Count II. Therefore, in order to reduce redundancy of claims, the Court has removed the reference to federal claims, in Count V.

3

I.    Facts[5]

SuperValu hired Lanton in 1976. Doc. #68-1 (Lanton Dep. at 9).  Since that time, Lanton has worked in various jobs, including order selector, checker and forklift operator, as well as in recoup and sanitation. Id. at 11.

A.    Collective Bargaining Agreement and Anti Harassment/Discrimination Policy

As a member of the local union, Lanton's employment terms are covered by the collective bargaining agreement ("CBA") between SuperValu and the union. Doc. #68-1 (Lanton Dep. at 11-12); Ex. #2 (CBA).  Some of the specifics covered by the CBA include the following:

- Job Bidding.  Bargaining unit jobs are awarded by seniority.  Job openings are posted for five days and are then filled with the

---

[5]Since this case comes before the Court on the Defendants' Motion for Summary Judgment, the Court sets forth the facts and circumstances giving rise to such Motion in the manner most favorable to the Plaintiff, as the party against whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

The Court has spent an inordinate amount of time organizing the facts, in this case.  Not only did the Defendants file a long memorandum in support of their Motion for Summary Judgment (29 pages, not including table of contents or summary of arguments) (Doc. #86), but they also set forth the majority of their lengthy factual assertions in single-spaced footnotes, in small font.  In doing so, the Defendants have set forth far more facts than the Plaintiff.  In drafting the present Opinion, the Court has relied upon those facts pointed to by the Plaintiff, in opposition to the Defendants' Motion (Doc. #92), as well as facts generally set forth in the Amended Complaint (Doc. #3), which have been expounded upon by the Defendants.  As to the facts raised by the Defendants, but not relied upon by the Plaintiff in either the Amended Complaint or memorandum in opposition to the Motion for Summary Judgment, the Court considers those facts inapplicable to the present case.

qualified employee with the most seniority. Doc. #68-6 (CBA) at 12.

- <u>Overtime Assignments</u>.  Overtime assignments are made to the most senior employee who volunteers and is qualified.  If an insufficient number of employees volunteer, then the most junior qualified employees are required to work the overtime. Doc. #68-7 (CBA) at 1-2.

- <u>Nondiscrimination</u>. The CBA protects members against discrimination on the basis of race, as well as other protected characteristics. Doc. #68-8 at 4.

- <u>Grievance and Arbitration Procedure</u>. The CBA provides grievance and arbitration procedures, which allow members to file a grievance for complaints arising over the interpretation or application of Agreement." Doc. #68-6 at 17-19.

Besides the CBA's nondiscrimination provision, SuperValu has an Anti Harassment and Discrimination Policy, with reporting requirements for employees who experience harassing or discriminatory behavior. Doc. #86-5.  SuperValu also has conducted training for all employees and distributes periodic memoranda and notices to remind employees that workplace harassment will not be tolerated. Doc. #86-3 (Schulcz Aff.) ¶ 4, Attachs. C-D.

B.    <u>Facts Specific to the Plaintiff's Disparate Treatment Claim</u>

The parties set forth the following facts pertinent to Lanton's disparate treatment claim:

- <u>Alleged Disparate Treatment with Regard to Discipline</u>
  - In 1990, either supervisor Cowan or Studley placed Lanton on a three-day paid administrative leave pending a hearing, after he got into a physical altercation with an outside driver, which resulted in the driver having broken bones and "internal problems". Doc. #68-1 (Lanton Dep.

5

at 26-29, 34-35).  SuperValu concluded at the hearing that Lanton had done nothing wrong, in the confrontation. Id at 33-34.  Lanton does not complain about this incident, except as it relates to a later incident involving white co-worker Hixon.  In 2005, Hixon was involved in an altercation with an outside driver, yet the company did not put him on administrative leave and did not subject him to a disciplinary hearing. Id. at 34-35, 39-40.

- In 2005, a supervisor disciplined black co-worker Sanford for lack of production, while white co-workers Vest and Copfer, who were not as productive as Sanford, were not disciplined. Doc. #68-1 (Lanton Dep. at 62-65).

- Alleged Disparate Treatment with Regard to Overtime
  - In 2002, Supervisor Scott offered Lanton overtime to clean up battery acid, rather than the "shuttle job" that Lanton wanted to perform on overtime, so Lanton declined the overtime. Doc. #68-2 (Lanton Dep. at 79, 83-86).

  C.  Facts Specific to the Plaintiff's Hostile Work Environment Claim

The parties set forth the following facts pertinent to Lanton's hostile work

environment claim:

- In 1988, Lanton overhead co-worker Nemer relay a story wherein he used the word "niggers" several times. Doc. #68-1 (Lanton Dep. at 21-24).  Lanton reported the incident to supervisor Chamblee and is unaware of whether Chamblee disciplined Nemer for the misconduct. Id. at 24-25.

- In 1990, Lanton saw the word "nigger" written on a bathroom wall. Doc. #68-1 (Lanton Dep. at 54-57).  Lanton did not report the graffiti, but it was removed the following day. Id. at 55-57.

- In 1990, Lanton saw the word "nigger" written on a wall above a water fountain. Doc. #68-1 (Lanton Dep. at 54-57).  Lanton did not report the graffiti, but it was removed the following day. Id. at 55-57.

- At unknown times, Lanton has heard the words "nigger" and "boy" used, but did not report the same to management. Doc. #68-2 (Lanton Dep. at 100-01).

II.  <u>Summary Judgment Standard</u>

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Id.</u> at 323; <u>see also</u> <u>Boretti v. Wiscomb</u>, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." <u>Talley v. Bravo Pitino Rest., Ltd.</u>, 61 F.3d 1241, 1245 (6th Cir. 1995); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. <u>Celotex</u>, 477 U.S. at 324.  "The plaintiff must present more

than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." <u>Mich. Prot. & Advocacy Serv., Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" <u>Hancock v. Dodson</u>, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. <u>Anderson</u>, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." <u>InterRoyal Corp. v. Sponseller</u>, 889

F.2d 108, 111 (6th Cir. 1989), <u>cert. denied</u>, 494 U.S. 1091 (1990); <u>see also</u> <u>L.S.</u>

<u>Heath & Son, Inc. v. AT&T Info. Sys., Inc.</u>, 9 F.3d 561 (7th Cir. 1993); <u>Skotak v.</u>

<u>Tenneco Resins, Inc.</u>, 953 F.2d 909, 915 n.7 (5th Cir. 1992), <u>cert. denied</u>, 506

U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift

through the record in search of evidence to support a party's opposition to

summary judgment . . . ."). Thus, a court is entitled to rely, in determining

whether a genuine issue of material fact exists on a particular issue, only upon

those portions of the verified pleadings, depositions, answers to interrogatories and

admissions on file, together with any affidavits submitted, specifically called to its

attention by the parties.


III.    <u>Legal Analysis</u>

    A.    <u>Disparate Treatment, under Title VII (Count I), under 42 U.S.C.</u>
        <u>§ 1981 (part of Count II) and under Ohio Law (Count III)</u>

Lanton brings race discrimination claims against SuperValu, based on the

theory of disparate treatment, under Title VII (Count I), § 1981 (part of Count II)

and Ohio law (Count III). Doc. #3 (Am. Compl.).  He also alleges disparate

treatment against the individual Defendants, under Ohio law (Count III). <u>Id.</u>

At the onset, the Court notes that both parties have relied upon certain

factual allegations, in support of their arguments for and against Lanton's disparate

treatment claim, which pertain to the alleged disparate treatment of other

employees, rather than to the alleged disparate treatment of Lanton.  Because a

disparate treatment claim, in a non-class action suit, is an individual claim wherein

an employee is alleging that his employer discriminated against <u>him</u> because of his

race, rather than that the employer discriminated against <u>another employee</u>

because of his or her race, see <u>Upshaw v. Ford Motor Co.</u>, 576 F.3d 576, 584

(6th Cir. 2009) (setting forth *prima facie* case of race discrimination claim, which

focuses entirely on alleged disparate treatment of plaintiff), the Court will not

consider the following factual allegation, in analyzing Lanton's disparate treatment

claim:

- Black co-worker Sanford being disciplined for lack of production while white co-workers Vest and Copfer, who were not as productive as Sanford, were not disciplined.

The Court will now proceed with an analysis of the Defendants' Motion, as it

pertains to the alleged disparate treatment of Lanton, with the remaining applicable

factual assertions.


### 1. Whether Certain Claims are Time Barred

SuperValu initially argues that certain of the Plaintiff's disparate treatment

claims are time barred. Initially, the Court notes that the proper starting point for

this analysis is the date that each discrete discriminatory act occurred. <u>See</u>

<u>AMTRAK v. Morgan</u>, 536 U.S. 101, 110-11, 122 S. Ct. 2061, 153 L. Ed. 2d 106

(2002). In other words, in a disparate treatment context (as opposed to a hostile

work environment context),[6] a plaintiff may not "convert[] related discrete acts into a single unlawful practice for the purposes of timely filing." Id. at 111.  As to the extent that discrete acts of discrimination that fall outside the applicable statute of limitations are helpful or harmful to a plaintiff's case, the Supreme Court instructs as follows:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act. . . .  The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.  Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

Id. at 113.  Relying on the final sentence quoted above, the Plaintiff correctly argues that this Court may consider, even if untimely, "prior acts as background evidence in support of a timely claim." Id.  In sum, therefore, although the Court

---

[6]In contrast, plaintiffs may convert related discrete acts into an unlawful practice, for purposes of timely filing in the hostile work environment context.  As explained by the Supreme Court,

> Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.  The "unlawful employment practice" therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

Morgan, 536 U.S. at 115 (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-349 (3d ed. 1996); Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)).

will not take outdated acts into consideration for purposes of determining whether those acts constitute disparate treatment, it will take them into consideration as background evidence in considering timely acts of alleged discrimination.  Having established that the starting point for its statute of limitations analysis is each discrete act of discrimination, the Court will proceed with its analysis of the proper time periods within which to examine the allegedly discriminatory conduct.

As to the Title VII claim, the Defendants correctly point out that Title VII requires complainants to file a claim with the Equal Opportunity Employment Commission ("EEOC") within 300 days after each discrete act of alleged discrimination. 42 U.S.C. § 2000e-5(e)(1); see also Russell v. Ohio, 2008 U.S. App. LEXIS 24531, *9, 302 Fed. Appx. 386 (6th Cir. Dec. 3, 2008) (noting that in a "'deferral' state such as Ohio, any instance giving rise to a Title VII claim must have occurred within 300 days of [the filing of the EEOC claim]") (citing Amini v. Oberlin College, 259 F.3d 493, 498 (6th Cir. 2001)).  In the present case, the Plaintiff filed his EEOC claim on August 20, 2004. Doc. #3-7 (Lanton EEOC Charge).  Therefore, as to the Plaintiff's Title VII claim, the Court will not consider allegations of discrete acts of disparate treatment that occurred prior to October 25, 2003 (300 days prior to the filing of the EEOC claim on August 20, 2004).

As to the Plaintiff's § 1981 claim, such has a four year statute of limitations.[7] 28 U.S.C. § 1658(a); see also Jones v. R.R. Donnelley & Sons Co.,

---

[7]The Defendants argue that claims arising in Ohio, under § 1981, are subject to a two year statute of limitations. Doc. #86 at 14.  Such was the law prior to

541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004).  Thus, for purposes of

the Plaintiff's § 1981 claim, the Court will not consider allegations of discrete acts

of disparate treatment that occurred prior to May 17, 2001 (four years prior to the

filing date of May 16, 2005).

Finally, with regard to the Plaintiff's claim under Ohio Revised Code

§§ 4112.02, 4112.99, "the statute of limitations for bringing a lawsuit under

§ 4112 is six years." <u>Harrison v. City of Akron</u>, 2002 U.S. App. LEXIS 16263, *5,

43 Fed. Appx. 903, 905 (6th Cir. Aug. 8, 2002) (citing Ohio Rev. Code

§§ 2305.07, 4112.99; <u>Cosgrove v. Williamsburg of Cincinnati Mgmt. Co.</u>, 70 Ohio

St. 3d 281, 638 N.E.2d 991, 992 (Ohio 1994)).  Thus, for purposes of the

---

2004. <u>See</u> <u>Bd. of Regents v. Tomanio</u>, 446 U.S. 478, 483, 100 S. Ct. 1790, 64 L.
Ed. 2d 440  (1980) (noting that when Congress does not establish a statute of
limitations, courts typically "borrow" the state law statute of limitations governing
analogous causes of action); <u>Nelson v. GE</u>, 2001 U.S. App. LEXIS 1145, **7-8, 2
Fed. Appx. 425 (6th Cir. Jan. 17, 2001) (recognizing two year statute of
limitations for such claims).  However, in 2004, the Supreme Court decided <u>Jones
v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645
(2004), which recognized that Congress had enacted 28 U.S.C. § 1658(a),
establishing a four year statute of limitations period for "civil action[s] arising under
an Act of Congress enacted after the date of the enactment of this section
[enacted Dec. 1, 1990]." <u>Id.</u> at 375.  The Court further concluded that the
plaintiff's claims for hostile work environment, wrongful termination, and
failure-to-transfer "'ar[ose] under' the 1991 Act in the sense that petitioners'
causes of action were made possible by that Act," given that the 1991 Act
overturned case law precedent that previously held that "racial harassment relating
to the conditions of employment is not actionable under § 1981." <u>Id.</u> at 383
(quoting <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 171, 105 L Ed 2d 132,
109 S Ct 2363  (1989)).  Thus, the current Plaintiff's § 1981 claim for race
discrimination (as well as hostile work environment) is covered by the § 1658 four
year statute of limitations. <u>See also</u> <u>Dandy v. UPS</u>, 388 F.3d 263, 269 (7th Cir.
Wis. 2004) (applying § 1658's four year statute of limitations period to disparate
treatment and hostile work environment claims, based on <u>Jones</u>).

Plaintiff's Ohio claim, the Court will not consider allegations of discrete acts of disparate treatment that occurred prior to May 17, 1999 (six years prior to the filing date of May 16, 2005).

In sum, therefore, for purposes of analyzing the Plaintiff's Title VII claim, the Court will only consider allegations of discrete acts of disparate treatment that occurred from and after October 25, 2003. With regard to the § 1981 claim, the Court will only consider allegations of discrete acts of disparate treatment that occurred from and after May 17, 2001, and with regard to the state law claim, from and after May 17, 1999. Thus, the following alleged incident of disparate treatment is time barred, for purposes of all disparate treatment claims:

- In 1990, a supervisor placed Lanton on administrative leave, pending a hearing, after he got into a physical altercation with an outside driver, but did not subsequently place co-worker Hixon on administrative leave or subject him to a hearing, for a similar altercation.

Based on the one remaining factual allegation, which is timely, the Court will now turn to a consideration of whether the Plaintiff has pointed to sufficient evidence to create a genuine issue of material fact, as to the various elements of his disparate treatment claim.

### 2.    Disparate Treatment - Burden Shifting Analysis

Absent direct evidence of discrimination, the Court initially notes that courts analyze all three of the Plaintiff's disparate treatment claims (under Title VII,

§ 1981 and Ohio law) using the burden shifting framework, as set forth by the Supreme Court in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). <u>E.g.</u>, <u>Upshaw v. Ford Motor Co.</u>, 576 F.3d 576, 584 (6th Cir. 2009) (race discrimination claim under Title VII); <u>Amini v. Oberlin College</u>, 440 F.3d 350, 358 (6th Cir. 2006) (race discrimination claim under § 1981); <u>Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.</u>, 66 Ohio St. 2d 192, 197 (Ohio 1981) (race discrimination claim under Ohio Revised Code Chapter 4112). The Sixth Circuit provides the following summary of that analytical framework:

> First, the plaintiff must make out a prima facie case of race discrimination, after which the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its decision. If the employer carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual. Throughout this burden-shifting process, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

<u>Upshaw v. Ford Motor Co.</u>, 576 F.3d 576, 584 (6th Cir. 2009) (quoting and citing <u>DiCarlo v. Potter</u>, 358 F.3d 408, 414-15 (6th Cir. 2004) and citing <u>Dews v. A.B. Dick Co.</u>, 231 F.3d 1016, 1020-21 (6th Cir. 2000)).

In employment discrimination cases, "[t]he prima facie showing is not intended to be onerous." <u>Martin v. Toledo Cardiology Consultants, Inc.</u>, 548 F.3d 405, 412 (6th Cir. 2008) (citation omitted). The Sixth Circuit instructs that in

order to establish a *prima facie* case of disparate treatment, a plaintiff must show that 1) she is a member of a protected class; 2) she was qualified for the position; 3) she was subjected to an adverse employment decision; and 4) she was replaced by a person outside the protected class, or treated differently than similarly situated non-protected employees. Vaughn v. Louisville Water Co., 2008 U.S. App. LEXIS 24224, **16-17, 302 Fed. Appx. 337 (6th Cir. Nov. 24, 2008) (citing Vincent v. Brewer Co., 514 F.3d 489, 494 (6th Cir. 2007)).

In the present case, the Defendants do not argue that the Plaintiff fails either the first or second prong of his *prima facie* test; rather, they claim that he has not set forth sufficient proof to create a genuine issue of material fact as to the third and fourth prongs. The Court will begin with a consideration of the fourth prong (whether the Plaintiff was treated differently than similarly situated non-protected employees) and then turn to the third prong, if necessary.

The Sixth Circuit states that in order for a plaintiff to demonstrate that a non-protected employee is "similarly situated", he must "prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-protected employee's] employment situation." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)) (alteration in original). Further-more, in order to be deemed similarly situated, "the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same

16

supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

In the present case, the Plaintiff contends that SuperValu discriminated against him when supervisor Scott offered him overtime to clean up battery acid, rather than the "shuttle job" that Lanton wanted to perform on overtime.[8]  The Plaintiff points to no facts regarding similarly situated employees, with regard to this allegation.  Because the Plaintiff has not pointed to sufficient evidence to create a genuine issue of material fact, as to this allegation, the Defendants' Motion for Summary Judgment (Doc. #86), with regard to the disparate treatment claims, under Title VII (Count I), § 1981 (part of Count II) and Ohio law (Count III), is SUSTAINED.

---

[8]The Plaintiff also attempts to argue that he has satisfied the fourth prong of his disparate treatment *prima facie* case, because of the casual attitude of the supervisors toward the alleged racial harassment.

> The supervisors' casual attitude toward harassment, and their own use of racial slurs[] is indicative of the atmosphere of the warehouse. A general working environment that tolerates this sort of harassment is evidence that implies a discriminatory reason for the adverse employment actions experienced by the Plaintiffs.

Doc. #92 (Mem. Opp'n) at 16.  While this sort of argument is not applicable to a disparate treatment claim, the Court will consider the same when assessing the Plaintiff's hostile work environment claim below.

B.  Hostile Environment, under 42 U.S.C. § 1981 (remaining part of Count II) and under Ohio Law (Count V)

Lanton brings hostile work environment claims against all Defendants, under § 1981 (remaining part of Count II) and Ohio law (Count V). Doc. #3 (Am. Compl.).  He submits that he suffered a hostile work environment based on his race, at the hands of co-workers and unknown perpetrators, to wit:  in 1988, hearing co-worker Nemer relay a story wherein he used the word "niggers" several times (co-worker harassment); in 1990, seeing the word "nigger" written on a bathroom wall (harassment by unknown perpetrators); in 1990, seeing the word "nigger" written on a wall above a water fountain (harassment by unknown perpetrators); and at unknown times, hearing the words "nigger" and "boy" (harassment by unknown perpetrators).[9]

─────────────

[9]The Court relies only on the acts of harassment that allegedly happened to the Plaintiff or of which the Plaintiff was otherwise aware, and, as to the latter, only for those which one or the other of the parties has pointed to admissible evidence in support thereof.  The Court is aware that the Sixth Circuit has instructed that courts must consider the "totality of circumstances" when deciding cases such as the present. Jackson v. Quanex Corp., 191 F.3d 647, 660 (6th Cir. 1999).
        In Jackson v. Quanex Corp., the Appellate Court directed that the "totality of circumstances" approach necessitates aggregating alleged acts of harassment towards minority employees, in cases such as the present one. Id.  In so doing, the Appellate Court pointed to the Supreme Court's decision in Meritor Savings Bank v. Vinson, in stating that "an employer may create a hostile environment for an employee even where it directs its discriminatory acts or practices at the protected group of which the plaintiff is a member, and not just at the plaintiff herself." Jackson, 191 F.3d at 661 (citing Meritor, 477 U.S. 57, 65-66, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)).  Implicit in such a consideration, however, is that the plaintiff in question was aware of the incidents of harassment that were allegedly directed toward other minority employees.  "Evidence of racist conduct affecting

18

The Sixth Circuit instructs that courts are to use the same standard when evaluating hostile work environment claims under Title VII, § 1981 and Ohio Revised Code Chapter 4112. Noble v. Brinker Int'l, Inc., 391 F.3d 715, 720 (6th Cir. 2004). To establish a *prima facie* case of hostile work environment, racial harassment, a plaintiff must point to evidence demonstrating the following:

> (1) [He] is a member of a protected class . . . ; (2) [he] was subjected to harassment, either through words or actions, based on [his protected class]; (3) the harassment had the effect of unreasonably interfering with [his] work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 270 (6th Cir. 2009)

---

African-American employees certainly mattered as to whether the work environment at Quanex was objectively hostile to African Americans, and evidence that Jackson learned of these incidents clearly demonstrated that, as an African American, she subjectively perceived that her work environment was one hostile to her." Id. (emphasis added); see also id. ("We have also credited evidence of racial harassment directed at someone other than the plaintiff when the plaintiff knew a derogatory term had been used." (emphasis added)).

In the present case, the Plaintiff points to nothing to indicate that he was aware of any of the acts of harassment alleged by the other Plaintiffs in this litigation, other than those set forth above. Nor can the Court infer that this Plaintiff worked in such close proximity with some or all of the other Plaintiffs that he necessarily would have been aware of the acts of harassment alleged to have happened to one or more of them. The Plaintiff states only that the Plaintiffs were "employed, in different capacities, as warehouse workers in SuperValu's Xenia, Ohio facility" (Doc. #92 at 1), yet the Defendants point out that employees at the Xenia facility are assigned to either the "grocery warehouse" or the "perishable warehouse", with different supervisors and on different shifts. Doc. #70 (Gunderson Dep. at 17); Doc. #77-4 (Doran Aff.) ¶ 3. Given that the Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim," InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), the Court is constricted to considering only those facts pertinent to the present Plaintiff, which are set forth above.

(quoting <u>Grace v. USCAR</u>, 521 F.3d 655, 678 (6th Cir. 2008)).[10]  As to the final

prong, whether there is a basis for employer liability, such depends on whether the

plaintiff is alleging harassment by supervisors or co-workers.  Quoting from a

Second Circuit case, the Sixth Circuit recently summarized the appropriate analyses

as follows:

> The Supreme Court has ruled that employers are not automatically
> liable for [] harassment perpetrated by their employees. <u>See</u> <u>Burlington</u>
> <u>Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 118 S.Ct. 2257, 141 L. Ed.2d
> 633 (1998); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S.Ct.
> 2275, 141 L. Ed.2d 662 (1998).  Where an employee is the victim of
> [] harassment, including harassment in the form of a hostile work
> environment, by non-supervisory co-workers, an employer's vicarious
> liability depends on the plaintiff showing that the employer knew (or
> reasonably should have known) about the harassment but failed to
> take appropriate remedial action. <u>See</u> <u>Faragher v. City of Boca Raton</u>,
> 524 U.S. at 789; <u>accord</u> <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>,
> 223 F.3d 62, 72 (2d Cir.2000).  Where the harassment is attributed
> to a supervisor with immediate or successively higher authority over
> the employee, a court looks first to whether the supervisor's behavior
> "culminate[d] in a tangible employment action" against the employee,
> <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. at 765, 118 S. Ct. 2257; if
> it did, "the employer will, ipso facto, be vicariously liable," <u>Mack v.</u>
> <u>Otis Elevator Co.</u>, 326 F.3d at 124 [(2d Cir. 2003)].  In the absence
> of such tangible action, an employer will still be liable for a hostile
> work environment created by its supervisors unless it successfully
> establishes as an affirmative defense that (a) it "exercised reasonable
> care to prevent and correct promptly any sexually harassing behavior,"
> and (b) "the plaintiff employee unreasonably failed to take advantage
> of any preventive or corrective opportunities provided by the employer
> or to avoid harm otherwise." <u>Burlington Indus., Inc. v. Ellerth</u>, 524
> U.S. at 765, 118 S. Ct. 2257; <u>accord</u> <u>Faragher v. City of Boca Raton</u>,

---

[10]<u>Gallagher</u> was a hostile work environment case, based on sexual
harassment, as opposed to racial harassment.  The Sixth Circuit applies the same
legal standard to both sorts of claims, however. <u>See</u> <u>Ladd v. Grand Trunk Western</u>
<u>R.R.</u>, 552 F.3d 495, 500 (6th Cir. 2009).

> 524 U.S. at 807, 118 S. Ct. 2275; <u>Mack v. Otis Elevator Co.</u>, 326
> F.3d at 125.

<u>Gallagher</u>, 567 F.3d at 275 (quoting <u>Petrosino v. Bell Atl.</u>, 385 F.3d 210, 225 (2d

Cir. 2004)).

The Defendants, in the present action, do not contest the first or second

prong of the *prima facie* case.[11]  They do, however, assert that Lanton has failed to

set forth sufficient proof as to the third and fourth prongs for all of his assertions.[12]

The Sixth Circuit has identified the governing standard for the third prong of

a plaintiff's *prima facie* case of harassment as follows:

> Conduct that is not severe or pervasive enough to create an
> objectively hostile or abusive work environment--an environment that
> a reasonable person would find hostile or abusive--is beyond Title VII's
> purview.  Likewise, if the victim does not subjectively perceive the
> environment to be abusive, the conduct has not actually altered the
> conditions of the victim's employment, and there is no Title VII
> violation.

<u>Gallagher v. C.H. Robinson Worldwide, Inc.</u>, 567 F.3d 263, 273 (6th Cir. 2009)

---

[11]In their memorandum in support of their Motion for Summary Judgment,
the Defendants actually do argue that certain of the Plaintiff's anticipated
allegations do not satisfy the second prong of his *prima facie* case (i.e., they are
not based on race), but the Plaintiff does not ultimately rely on any of those stated
allegations. Doc. #86 at 28-29; Doc. #92 at 5-13; Doc. #92-1 at 1.

[12]The Defendants also argue that some of the Plaintiff's allegations of
harassment were not "sufficiently related" to the allegations of harassment
occurring within the limitations period so as to form one continuous hostile work
environment claim. Doc. #86 at 27 n.8.  The Court having concluded that the
Plaintiff has not set forth sufficient evidence to create a genuine issue of material
fact on his *prima facie* case of harassment, assuming all of the alleged incidents did
form one continuous hostile work environment, need not consider the Defendants'
argument, on this point.  Thus, the Court does not reach the statute of limitations
issue on the allegations constituting the hostile work environment claims.

21

(quoting <u>Williams v. GMC</u>, 187 F.3d 553, 566 (6th Cir. 1999) (which quoted

<u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21-22, 114 S. Ct. 367, 126 L. Ed.

2d 295 (1993)).  The Supreme Court states that, in making these assessments,

courts must consider "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's work performance."

<u>Harris</u>, 510 U.S. at 23.  Further, in order to constitute a "change in the terms and

conditions of employment", conduct must be "extreme".  <u>Faragher v. City of Boca

Raton</u>, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

In the present case, SuperValu contends that the incidents that arguably

reflect racial animus were not severe and pervasive enough to alter the terms and

conditions of Lanton's employment.  As to the objective view of the facts,

SuperValu argues that most of the alleged incidents of harassment occurred over

fifteen years ago, were not directed at Lanton and were not physically threatening.

As to the subjective view of the facts, SuperValu asserts that Lanton did not

regard the workplace as hostile or abusive, as evidenced by his concession that he

has always been able to effectively perform his job.  Doc. #68-2 (Lanton Dep. at

122).  In response, Lanton argues that it is the decades-long history of regular

harassment that defines his treatment as severe and pervasive.  Further, Lanton

argues that his filing of the present lawsuit, along with the fact that he recalls the

incidents in question years after they happened, is evidence that he subjectively

considered his mistreatment to be severe and pervasive.

In resolving the question presently before it, the Court will turn to factually similar cases decided by the Sixth Circuit.  In Smith v. Leggett Wire Co., the Appellate Court found that the following facts were not "severe or pervasive enough" to create an objectively hostile work environment:  "a racial slur in 1974 by an unknown co-worker, a racially offensive and obscene cartoon passed around in the late 1980's or early 1990's by one who was not involved in Smith's termination decision, Bobby Guy's racist joke sometime after 1993, and supervisor Ronnie Curry's reference to a black employee as a 'gorilla'." Smith, 220 F.3d 752, 760 (6th Cir. 2000) ("Racial animus cannot be inferred from a handful of discriminatory comments by low-level employees, most of which were not directed at Smith, over a twenty-year span of time.").

Conversely, in Jackson v. Quanex Corp., the Appellate Court found the following facts probative of a severe and pervasively hostile work environment: the "persistent use" of racial slurs, by supervisors (including supervisors regularly referring to black employees as "colored" or "boys", a supervisor stating that the company "did not want blacks inside of the electric shop", another supervisor telling a new hire "you're working for a nigger now, boy did you get screwed" and a supervisor opening a meeting with the comment "we are up to our asses in nigger sludge"), the pervasive presence of graffiti in the workplace (including graffiti in the women's restroom "depicting a male and a female and accompanied

by comments comparing the penis sizes of white and black males," graffiti in the men's restroom "depicting lynchings accompanied by the phrase, 'KKK is back'," graffiti on the back door that said "blacks out back," graffiti in the seam grinding area that "depicted the lynching of African-American men," graffiti in the restrooms on 25-30 occasions and graffiti on worker's lockers); and incidents of extreme racial misconduct (including calling a new hire "nigger" and "motherfucker", and after he reported these comments, telling him, "Nigger, we want you to quit your job . . . ."; defacing a work shirt with the words "Nigger Sucker"; hanging "Black O'Lantern" and "Sambo" drawings near a worker's machine; tampering with acid valves in an attempt to create a safety hazard that would appear to be attributable to a minority worker, and a co-worker calling another co-worker a "nigger bitch" and physically assaulting her). <u>Jackson</u>,191 F.3d 647, 651-55, 62 (6th Cir. 1999).

SuperValu also points the Court to the Sixth Circuit's unpublished opinion in <u>Kelly v. Senior Centers, Inc.</u>, wherein the Court found that the following incidents of misconduct, which occurred over four months, did not amount to actionable harassment: "two staff members' use of the pejorative slur word 'nigger' referring to the foster grandparents; Dangelo's description of a Board Member as a 'token black' and her comments that the foster grandparents were slovenly or were 'pigs' at meals, and her alleged tolerance of others' conduct; Gee's three racist 'jokes'; and comments about an African-American staff member's bathroom habits." <u>Kelly</u>,

2006 U.S. App. LEXIS 3139, \*\*16, 32, 169 Fed. Appx. 423 (6th Cir. Feb. 8, 2006).  In concluding its findings, the Court stated, "[w]hile we believe that a single utterance of a deeply offensive word is, as a matter of social conscience, a single time too many, it is clear from the record that such conduct in front of Kelly was not a daily or even a weekly event." Id. at \*17.

SuperValu also cites Bourini v. Bridgestone/Firestone North American Tire, L.L.C., 2005 U.S. App. LEXIS 5194, 136 Fed. Appx. 747 (6th Cir. Mar. 30, 2005), in support of its position.  In Bourini, a Muslim employee alleged that the following incidents of national origin and religious harassment took place at his place of employment:  (1) a co-worker said, "I don't want to … see your camel tied to my wheels;" (2) a co-worker called him a "camel jockey;" (3) soon after the September 11 attacks, a co-worker attempted to back over him while reversing a forklift; (4) a co-worker said, "If it were up to [me], they would . . . put [plaintiff] in a box and send [him] back to [his] country;" (5) a co-worker said, "If you'd get the sand out of your ears you'll hear me better;" (6) a co-worker mocked plaintiff's voice over the intercom system; (7) someone painted Islamic slurs on the restroom wall; (8) someone left a Christian pamphlet at plaintiff's work station entitled, "For my Muslim Friend;" and (9) the human resources department sent an email relating to plaintiff's immigration status to all employees. Id. at \*\*2-5.  The Appellate Court concluded that these incidents "were not sufficiently pervasive to establish an abusive working environment." Id. at \*10.  Because the incidents were spread

out over a five year period, the Court found them to be "relatively infrequent and isolated incidents" that were "insufficient to constitute discriminatory changes in the terms and conditions of employment." Id.

In the present case, Lanton alleges the following incidents of harassment, since he began employment with SuperValu in 1976: in 1988, hearing Nemer relay a story wherein he used the word "niggers" several times; in 1990, seeing the word "nigger" written on a bathroom wall; in 1990, seeing the word "nigger" written on a wall above a water fountain; and at unknown times, hearing the words "nigger" and "boy". While this conduct is reprehensible, the Court cannot conclude that it is sufficiently severe and pervasive, as a matter of law, to be said to have altered the conditions of Lanton's employment. The incidents are significantly less severe and pervasive than those in Bourini v. Bridgestone/ Firestone North American Tire, L.L.C., *supra*, which the Sixth Circuit found to be insufficient to constitute discriminatory changes in the terms and conditions of employment, as explained above. Thus, regardless of whether he subjectively found that the alleged incidents created a hostile work environment, Lanton has failed to set forth sufficient facts to create a genuine issue of material fact as to the objective component of the third prong of his *prima facie* case of race-based harassment. Given that the Plaintiff has not satisfied the third prong of his *prima facie* case of harassment, the Court finds it unnecessary to determine whether he has pointed to sufficient evidence to satisfy the fourth prong (whether there exists

26

some basis for liability on the part of the employer).

In sum, therefore, the Plaintiff has failed to establish a genuine issue of material fact as to all of the elements of his *prima facie* case of hostile work environment based on race. Therefore, the Court SUSTAINS the Defendants' Motion for Summary Judgment (Doc. #86), as to Lanton's hostile work environment claim, under § 1981 (remaining part of Count II) and Ohio law (Count V).

### C. Retaliation, in violation of Title VII and/or Ohio law (Count IV)

As Count IV in his Amended Complaint, Lanton asserts a claim for retaliation, in violation of Title VII and/or Ohio law (against SuperValu, as to Title VII, and against all Defendants, as to the Ohio claim). Doc. #3 (Am. Compl.) ¶¶ 60-64. These claims are limited to allegations of retaliation that occurred after the filing of Lanton's EEO Complaint. Doc. #31.

In order to prove both a federal and state law claim of retaliation, absent direct evidence of retaliatory discrimination, a plaintiff must show the following:

(1) [he] engaged in activity protected by Title VII;

(2) this exercise of protected rights was known to defendant;

(3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and

(4) there was a causal connection between the protected activity and the adverse employment action or harassment.

Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 595 (6th Cir. 2007) (citing Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)); see also Putney v. Contract Bldg. Components, 2009 Ohio App. LEXIS 5634, **30-31, 2009 Ohio 6718 (Ohio 3rd App. Dist. Dec. 21, 2009).  In their memorandum in support of their Motion for Summary Judgment, the Defendants state that they are entitled to summary judgment on this claim, because Lanton admitted that he experienced no retaliation and also because he has set forth no facts to support his retaliation claim. Doc. #86 at 35.

It is true that Lanton conceded that he experienced no retaliation for engaging in activity protected by Title VII. Doc. #68-2 (Lanton Dep. at 125).  It is also true that Lanton makes no argument nor presents any facts in support of his retaliation claim. See Doc. #92 (Mem. Opp'n).  Because the Plaintiff has pointed to no facts to support his retaliation claim, there is no genuine issue of material fact as to the same and the Defendants' Motion for Summary Judgment (Doc. #86) is SUSTAINED, as to Count IV.


D.    Respondeat Superior (Count VI)

As Count VI in his Amended Complaint, Lanton alleges that SuperValu is liable for the actions of the individual Defendants, under the theory of respondeat superior. Doc. #3 (Am. Compl.) ¶¶ 74-77.  In their memorandum in support of

their Motion for Summary Judgment, the Defendants correctly argue that respondeat superior is not a separate theory of recovery, but, rather, is conceptually a component of the various discrimination claims set forth above (e.g., employer liability component of hostile work environment claim). Therefore, the Defendants' Motion for Summary Judgment (Doc. #86) is SUSTAINED, as to Count VI.

IV.    Conclusion

The Defendants' Motion for Summary Judgment (Doc. #86) is SUSTAINED, in its entirety. Judgment is ultimately to be entered on behalf of Defendants against Plaintiff Lanton, at the conclusion of this litigation.

March 31, 2010

　　　　　　　　　　　　　　    /s/ Walter Herbert Rice
　　　　　　　　　　　　　　WALTER HERBERT RICE, JUDGE
　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT
Copies to:
Counsel of record